*Suffolk Superior Civil #04-3137*



# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMONWEALTH ELECTRIC COMPANY D/B/A NSTAR ELECTRIC,<br><br>Plaintiff,<br><br>vs.<br><br>THE OKONITE COMPANY,<br><br>Defendant. | Civil Action No.<br><br>**04-11681 RCL** |

## NOTICE OF REMOVAL

**TO THE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS:**

Pursuant to 28 U.S.C. §§ 1441(b) and 1446, defendant The Okonite Company ("Okonite") hereby gives notice of the removal to this Court of the above-captioned civil action, commenced in the Commonwealth of Massachusetts Superior Court, Suffolk County, Civil Action No. 04-3137-BLS. As grounds for the removal, Defendants state:

1. The Complaint in Suffolk County, Civil Action No. 2004-1978E, was served on Defendants on or about July 15, 2004. A copy of the Complaint, the Summons, and Civil Action Cover Sheet from that matter are attached hereto as Exhibits 1, 2, and 3, respectively.

2. Okonite is entitled to remove the plaintiff's action to this Court pursuant to 28 U.S.C. § 1441 because this Court has original diversity jurisdiction over this matter under the provisions of 28 U.S.C. §1332(a):

    a. Defendant Okonite is a New Jersey corporation with its principal place of business in New Jersey. (Complaint, ¶ 3)

b. Plaintiff is a Massachusetts corporation with its principal place of business in Massachusetts. (Complaint, ¶ 2)

c. The amount in controversy, exclusive of interest and costs, exceeds $75,000. (Exhibit 3, Civil Action Cover Sheet)

3. Pursuant to 28 U.S.C. §1446(a), copies of all process and pleadings served on Defendants in this action are attached hereto as Exhibit 1, 2, and 3.

I HEREBY ATTEST AND CERTIFY ON
AUGUST 3, 2004, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY *[signature]*

ASSISTANT CLERK.

THE OKONITE COMPANY
By their attorney,

*[signature]*
Robert E. Sullivan, BBO # 487820
Scott A. Roberts, BBO #550732
Andrea C. Kramer, BBO #632584
Sullivan Weinstein & McQuay, P.C.
Two Park Plaza, Suite 610
Boston, MA 02116-3902
617-348-4300

Dated: July 29, 2004

## CERTIFICATE OF SERVICE

I, Andrea C. Kramer, hereby certify that a copy of the foregoing document was served by mailing same, postage prepaid, first class mail to Theodore Folkman, Hanify & King, P.C., One Beacon Street, Boston, Massachusetts, on July 29, 2004.

*[signature]*
Andrea C. Kramer

**Commonwealth of Massachusetts**
SUFFOLK SUPERIOR COURT
Case Summary
Civil Docket

## SUCV2004-03137
### Commonwealth Electric Company, dba v Okonite Company

| | | | | | |
|---|---|---|---|---|---|
| **File Date** | 07/15/2004 | **Status** | Disposed: transfered to other court (dtrans) | | |
| **Status Date** | 08/02/2004 | **Session** | BLS2 - CtRm 20 | | |
| **Origin** | 1 | **Case Type** | BF1 - Complex UCC issues | | |
| **Lead Case** | | **Track** | B | | |

| | | | | |
|---|---|---|---|---|
| **Service** | | **Answer** | | **Rule12/19/20** |
| **Rule 15** | | **Discovery** | | **Rule 56** |
| **Final PTC** | | **Disposition** | | **Jury Trial**  Yes |

### PARTIES

**Plaintiff**
Commonwealth Electric Company, dba
Active 07/15/2004

**Private Counsel 309290**
Daniel J Lyne
Hanify & King
1 Beacon St.
21st Floor
Boston, MA 02108-3107
Phone: 617-423-0400
Fax: 617-423-0498
Active 07/15/2004 Notify

**Private Counsel 647642**
Theodore J Folkman
Hanify & King
1 Beacon Street
21st Floor
Boston, MA 02108
Phone: 617-423-0400
Fax: 617-423-0498
Active 07/15/2004 Notify

**Doing busnss as (alias)**
NStar Electric
Active 07/15/2004

**Private Counsel 309290**
Daniel J Lyne
Hanify & King
1 Beacon St.
21st Floor
Boston, MA 02108-3107
Phone: 617-423-0400
Fax: 617-423-0498
Active 07/15/2004 Notify

**Private Counsel 647642**
Theodore J Folkman
Hanify & King
1 Beacon Street
21st Floor
Boston, MA 02108
Phone: 617-423-0400
Fax: 617-423-0498
Active 07/15/2004 Notify

MAS-20030912 Case 1:04-cv-11681-RCL    Document 5    Filed 08/25/2004    Page 4 of 15
guen                                                                                          08/02/2004
                         Commonwealth of Massachusetts                                        03:17 PM
                              SUFFOLK SUPERIOR COURT
                                    Case Summary
                                    Civil Docket

## SUCV2004-03137
### Commonwealth Electric Company, dba v Okonite Company

| Defendant | |
|---|---|
| Okonite Company<br>Served: 07/19/2004<br>Served (answr pending) 07/21/2004 | **Private Counsel 487820**<br>Robert Eugene Sullivan<br>Sullivan Weinstein & McQuay<br>2 Park Plaza<br>Suite 610<br>Boston, MA 02116-3902<br>Phone: 617-348-4300<br>Fax: 617-348-4343<br>Active 08/02/2004 Notify<br><br>**Private Counsel 550732**<br>Scott A Roberts<br>Sullivan Weinstein & McQuay<br>2 Park Plaza<br>Suite 610<br>Boston, MA 02116<br>Phone: 617-348-4300<br>Fax: 617-348-4343<br>Active 08/02/2004 Notify<br><br>**Private Counsel 632584**<br>Andrea C Kramer<br>Sullivan Weinstein & McQuay<br>2 Park Plaza<br>Suite 610<br>Boston, MA 02116<br>Phone: 617-348-4300<br>Fax: 617-348-4300<br>Active 08/02/2004 Notify |

### ENTRIES

| Date | Paper | Text |
|---|---|---|
| 07/15/2004 | 1.0 | Complaint (Business) filed & jury demand on complaint (all issues) |
| 07/15/2004 | | Origin 1, Type BF1, Track B. |
| 07/15/2004 | 2.0 | Civil action cover sheet filed |
| 07/21/2004 | 3.0 | Affidavit of compliance with long-arm statute with proof of service on out of state defendant Okonite Company |
| 07/26/2004 | 4.0 | Notice of Acceptance into Business Litigation session (van Gestel,J)  Notice Sent 7/21/04  (entered 7/19/04) |
| 08/02/2004 | | Certified copy of petition for removal to U. S. Dist. Court of Deft. The Okonite Company U. S. Dist.#(04-11681RCL). |
| 08/02/2004 | | Case REMOVED this date to US District Court of Massachusetts |

### EVENTS

I HEREBY ATTEST AND CERTIFY ON
AUGUST 3, 2004 THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____

ASSISTANT CLERK.

**1**

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                           SUPERIOR COURT
                                                       Department of the Trial Court

                                                       04-3137-BLS

| | |
|---|---|
| COMMONWEALTH ELECTRIC COMPANY d/b/a NSTAR ELECTRIC<br><br>Plaintiff,<br><br>v.<br><br>THE OKONITE COMPANY,<br><br>Defendant. | Civil Action No. |

## COMPLAINT
(Jury Trial Demanded)

Now comes the plaintiff, Commonwealth Electric Company d/b/a NSTAR Electric ("NSTAR") and complains of the defendant, The Okonite Company ("Okonite") as follows:

### INTRODUCTION

1.  This is an action for breach of contract, misrepresentation, and breach of express and implied warranties arising out of Okonite's sale of a defective undersea cable system to NSTAR. The cable system runs between the town of Falmouth and Martha's Vineyard, and transmits electricity and high-speed Internet service to thousands of NSTAR customers. The defective cable was designed, manufactured and installed by Okonite and/or its agents pursuant to the terms of a written agreement executed by the parties in 1994 (the "Agreement"). Under the terms of the Agreement, Okonite promised, *inter alia*, to provide NSTAR with a cable system "free of defects," and to perform all work under the Agreement in a "good, acceptable and workman like manner." Okonite failed to keep its promises, and the cable system has failed on four separate occasions. Each of these failures was caused by cable defects. The failures have

resulted in prolonged service interruptions to NSTAR's customers, and have caused NSTAR to incur extraordinary expenses. Moreover, repeated repair work has weakened the cable and diminished its life expectancy. As a result, NSTAR is left with a defective cable system that cannot be relied upon to provide critical electric and data transmission capacity to Martha's Vineyard. Because additional repairs would not provide NSTAR with an as-warranted cable system, NSTAR seeks recovery of the costs associated with replacing the defective cable with conforming cable with an accompanying ten-year warranty.

## PARTIES

2. The plaintiff, Commonwealth Electric Company, is a Massachusetts corporation with its principal place of business located at 800 Boylston Street, Boston, Massachusetts. Commonwealth Electric Company currently conducts its business under the name NSTAR Electric. For purposes of this Complaint, the names Commonwealth Electric and NSTAR are synonymous.

3. The defendant, Okonite, is a New Jersey corporation with its principal place of business located at 100 Hilltop Road, Ramsey, New Jersey.

## FACTS

4. In April 1994, Commonwealth Electric Company issued a Request for Quote ("RFQ") on a three-phase 34.5kv armored submarine cable and fiber optic system that was intended to supply electricity and data transmission services to the residents and businesses of Martha's Vineyard, Massachusetts ("the System").

5. Okonite responded to the RFQ on July 1, 1994, offering to act as the prime contractor for the entire project. Okonite's proposal stated, in relevant part,

> Our proposal incorporates The Okonite Company as Prime Contractor for the entire project, with Simplex Technologies, Inc. of Portsmouth, New

Hampshire providing cable armoring services and fiber optic cables, Caldwell's Diving Company, Inc. performing submarine cable installation and Power Line Constructors providing land installation services. This unique combination offers Commonwealth Electric Company the opportunity of contracting directly with The Okonite Company for full project responsibility, while obtaining the extensive submarine cable design and installation experience of Simplex Technologies and Caldwell's Diving.

6. Okonite's proposal repeatedly represented that its cables were of the highest quality. Okonite represented with respect to its cable insulation system, that,

> The Okonite [cable insulation] system has performed flawlessly in a multiplicity of applications and in various types of installations, i.e., submarine cables...
>
> ...
>
> With over twenty-five years of service life experience in submarine applications, Okogard provides a balance of properties that include reliability, flexibility, high ampacity rating and retained dielectric strength.

7. Okonite's proposal called for lengths of armored cable to be spliced together, rather than using a single run of armored cable. Upon information and belief, Okonite proposed a System that included splices because Okonite lacked the technology to produce a continuous run of cable of the length required for the System.

8. Okonite represented that the proposed splices would tie the individual cable lengths together flawlessly, and that the splices would not degrade the System or diminish the life expectancy of the System in any material respect.

9. Okonite proposed to perform all of the necessary splicing operations at the factory ("factory splices"), rather than splicing the cables together during the cable laying operation ("field splices"). This representation was important to NSTAR because factory splices are performed in a controlled and clean environment.

10. Further to its proposal, Okonite personnel met with NSTAR on August 19, 1994. Prior to and during the meeting, Okonite repeatedly represented that field splices would not be required at any location in the System, and that the cable circuit requirement would be supplied in one continuous length tied with factory splices only.

11. On or about August 19, 1994, NSTAR and Okonite entered into an agreement ("the Agreement") for the purchase and installation of a +/- 38,000-foot submarine, land and optical fiber cable system connecting Falmouth, MA and Martha's Vineyard, MA for a purchase price of $3,122,106.

12. The Agreement obligated Okonite to install the System in accordance with best construction practice. The Agreement obligated Okonite to provide COM/Energy with a complete and fully operable System at the end of the project. The Agreement obligated Okonite to provide all of the materials, supplies, labor and equipment necessary to complete the System. The Agreement obligated Okonite to install the System using state of the art methods, procedures, equipment and specifically trained personnel such that a long period (40 years) of reliable service could be expected.

13. The Agreement contained an express warranty provision that provided, in pertinent part:

> The Contractor [Okonite] warrants to the Company [Commonwealth Electric], for a ten (10) year period commencing with the Date of Acceptance ("Warranty Period"), all of the Submarine/Land/Optical Fiber Cable System ("System") from terminal to terminal, will be free from defects in material and workmanship provided the System is employed under conditions contemplated and covered by the design specifications, and provided further that the System is maintained and operated in accordance with the Contractor's recommended standards and procedures. The Date of Acceptance shall be deemed as that date when successful final Field Acceptance Tests are completed as provided for in the Specifications.

14. Okonite thereafter designed, manufactured and installed the System, representing that it had done so in accordance with the contract specifications and its oral and written representations and warranties.

15. Almost immediately after installation, the Okonite cable began to "birdcage," a phenomenon whereby the cable armor and insulation begins to unravel as a result of defective manufacturing. Okonite was forced to immediately replace the cable with a second cable ("the Cable"), which is the subject of this Complaint.

16. As originally installed, the Cable had 15 single-phase factory splices. The fifteen factory splices were grouped in staggered threes (one for each phase) in five separate locations under Vineyard Sound.

17. Since its installation, the Cable has failed on four separate occasions (August 15, 1997, November 25, 2000, October 25, 2003, and March 7, 2004). The first three failures occurred in the transition zone between the factory splice and the Cable. The most recent failure occurred within the splicing enclosure and adjacent to a field splice installed by Okonite during the course of a November 2003 repair to a faulty factory splice. Thus, both the nature and location of these failures are indicative of a defect in the design, manufacture and/or installation of both the original factory splices and the replacement field splices.

18. In each instance where there has been a failure, Okonite has removed a factory splice and replaced it with multiple field splices. Thus, a submarine cable which originally had 15 factory splices now has 23 splices, of which 8 are original factory splices and 15 are field splices that are bunched in unstaggered pairs of three inside of coffin boxes.

19. The System failures have resulted in significant interruptions of service to NSTAR's customers, and caused NSTAR and its customers to incur extraordinary expenses associated with responding to these failures, and in purchasing replacement power.

20. These failures have also required NSTAR to test the entire length of the submarine cable to locate faults on multiple occasions. The testing required NSTAR to run high voltages through the Cable, lessening the Cable's useful life.

21. Further attempts to repair the Cable would be futile because Okonite's proposed solution (to replace splices as needed during the remaining warranty period) will not address the fact that the System itself is failing to perform in the manner warranted by Okonite, and that continued testing, cable raising, and field splicing will inevitably result in further damage and loss of useful life to an already defective System.

22. Moreover, further attempts to repair will also cause NSTAR customers to incur repeated power and data losses, including potentially serious interruptions to critical public services for Martha's Vineyard residents.

23. NSTAR has not received the benefit of its bargain with Okonite. Instead of a System that was reasonably expected to remain in operation for forty or more years, NSTAR is left with a defective System that cannot be adequately repaired. Because additional repairs would be futile, NSTAR seeks recovery of the costs associated with replacing the Cable with a new cable of good and merchantable quality, and an accompanying ten-year warranty, together with such other costs as NSTAR has suffered as a result of Okonite's multiple breaches.

24. NSTAR has made all payments and performed all of its duties under the Contract and satisfied all conditions precedent necessary to the prosecution of this action.

## COUNT ONE
(Breach of Express Warranty—U.C.C. §§ 2-313 & 2-714(2))

25. NSTAR incorporates by reference the allegations of paragraphs 1 through 26.

26. The transaction contemplated in the Agreement is a transaction in goods.

27. The warranty contained in the Agreement provides, inter alia, that for a ten (10) year period commencing with the Date of Acceptance ("Warranty Period"), all of the Submarine/Land/Optical Fiber Cable System ("System") from terminal to terminal will be free from defects.

28. Okonite breached its express warranty obligations to NSTAR.

29. NSTAR and its customers have suffered significant damages as a direct result of Okonite's breach of its express warranty obligations to NSTAR.

## COUNT TWO
(Breach of Implied Warranty of Merchantability—U.C.C. §§ 2-314(1) & 2-714(2).)

30. NSTAR incorporates by reference the allegations of paragraphs 1 to 31.

31. At all relevant times, Okonite was a merchant with respect to the goods of the kind it sold to NSTAR pursuant to the Agreement.

32. The goods Okonite sold to NSTAR pursuant to the Agreement were not of merchantable quality insofar as they would not pass without objection in the trade under the contract description.

33. The goods Okonite sold to NSTAR pursuant to the Agreement were not merchantable insofar as they were not fit for the ordinary purposes for which such goods are used.

34. NSTAR and its customers have suffered significant damages as a direct result of Okonite's breach of the implied warranty of merchantability.

## COUNT THREE
(Implied Warranty of Fitness for a Particular Purpose – U.C.C. §§ 2-315 & 2-714(2).)

35. NSTAR incorporates by reference the allegations of paragraphs 1 to 36.

36. At the time of contracting, Okonite had reason to know that NSTAR required the goods it sold for the particular purpose of use as an undersea cable to transmit electricity and telecommunications.

37. At the time of contracting, Okonite had reason to know that NSTAR was relying on its skill or judgment to select or furnish suitable goods.

38. The goods provided by Okonite to NSTAR are not fit for such purposes.

39. NSTAR and its customers have suffered significant damages as a result of Okonite's breach of the implied warranty of fitness for a particular purpose.

## COUNT FOUR
(Breach of Express Warranty—Common Law)

40. NSTAR incorporates by reference the allegations of paragraphs 1 to 41.

41. The Contract is a valid contract between NSTAR and Okonite.

42. By supplying NSTAR with a defective cable, Okonite breached its warranty obligations to NSTAR.

43. NSTAR and its customers have suffered significant damages as a result of Okonite's breach of warranty.

## COUNT FIVE
(Fraud)

44. NSTAR incorporates by reference the allegations of paragraphs 1 to 45.

45. On or about July 1, 1994, Okonite, in its response to the RFQ, represented to NSTAR that "The Okonite [cable insulation] system has performed flawlessly in a multiplicity of applications and in various types of installations, i.e., submarine cables..." and that "With

over twenty-five years of service life experience in submarine applications, Okogard provides a balance of properties that include reliability, flexibility, high ampacity rating and retained dielectric strength."

46. These representations were false.

47. The representations were material to NSTAR's decision to accept Okonite's proposal.

48. Okonite made the representations with knowledge of their falsity for the purpose of inducing NSTAR to enter into the Agreement.

49. NSTAR relied on the representations to its detriment.

## COUNT SIX
(Negligent Misrepresentation)

50. NSTAR incorporates by reference the allegations of paragraphs 1 to 51.

51. Okonite made the representations alleged above in the course of its business for the guidance of NSTAR in its business transactions.

52. NSTAR justifiably relied on those representations to its detriment.

53. Okonite failed to exercise reasonable care or competence in obtaining or communicating the information.

## COUNT SEVEN
(Breach of Contract)

54. NSTAR incorporates by reference the allegations of paragraphs 1 to 55.

55. The Agreement is a valid contract supported by good and valuable consideration.

56. Okonite has breached the Agreement.

57. NSTAR has been injured by Okonite's breach.

58. NSTAR has performed all of its obligations under the Agreement and all conditions precedent to a claim for breach of contract.

## COUNT EIGHT
(Violation of G.L. c. 93A)

59. NSTAR incorporates by reference the allegations contained in paragraphs 1 to 60.

60. Both NSTAR and Okonite are engaged in commerce as defined by M.G.L. c.93A.

61. By reason of the foregoing, the Defendant has engaged in unfair or deceptive acts or practices in violation of M.G.L. c.93A, Section.2. Further, the Defendant's violations of G.L. c. 93A, Section 2 were willful and knowing, entitling NSTAR to treble damages, costs and attorney's fees under Section 11.

## PRAYER FOR RELIEF

Wherefore NSTAR prays that this Court enter judgment in its favor for the following relief:

(1) Damages in an amount to be determined by a jury after a trial on the merits;

(2) Treble damages and attorney's fees pursuant to Count Eight;

(3) Costs and pre-judgment interest at the statutory rate and

(4) Such other relief as is appropriate and just under the circumstances.

## DEMAND FOR TRIAL BY JURY

NSTAR demands a trial by jury on all counts so triable.

>Respectfully submitted,
>
>COMMONWEALTH ELECTRIC
>COMPANY d/b/a NSTAR ELECTRIC
>By its attorneys,
>
>*[signature]*
>
>Daniel J. Lyne (BBO No. 309290)
>Theodore J. Folkman (BBO No. 647642)
>HANIFY & KING, P.C.
>One Beacon Street
>Boston, Mass. 02108
>(617) 423-0400

Dated: July 15, 2004
407732v1A

> I HEREBY ATTEST AND CERTIFY ON
> AUGUST 3, 2004, THAT THE
> FOREGOING DOCUMENT IS A FULL,
> TRUE AND CORRECT COPY OF THE
> ORIGINAL ON FILE IN MY OFFICE,
> AND IN MY LEGAL CUSTODY.
>
> MICHAEL JOSEPH DONOVAN
> CLERK / MAGISTRATE
> SUFFOLK SUPERIOR CIVIL COURT
> DEPARTMENT OF THE TRIAL COURT
>
> BY: *[signature]*
>
> ASSISTANT CLERK.