UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMONWEALTH ENERGY CO., d/b/a NSTAR ELECTRIC,<br><br>      Plaintiff,<br><br>vs.<br><br>THE OKONITE CO.,<br><br>      Defendant | Civ. A. No. 1:04-CV-11681-RCL |

**PARTIES' JOINT SCHEDULING STATEMENT**

Pursuant to Local Rule 16.1(D), the plaintiff ("NSTAR") and the defendant ("Okonite") submit this joint statement and proposed pretrial schedule:

1.  Initial Disclosures.  The parties have already made their initial disclosures.

2.  Motions to Amend.  Motions to amend shall be filed on or before December 31, 2004.

3.  Fact Discovery.  Fact discovery shall be completed by July 31, 2005.

    a.  Document Requests.  NSTAR proposes that each party may serve three separate document requests without further leave of court. Its position is that a third document request is necessary and appropriate given the complex set of facts involved in this dispute and the likelihood that discovery conducted early in the case will suggest additional lines of relevant discovery.

    Okonite proposes that each party may serve two separate document requests without further leave of the court, as provided for in the rules.  Its position is that the discovery event limitations set out in Rule 26.1(C) are sufficient in this case because the

facts are not complex, the main dispute concerns expert testimony, and if additional lines of discovery arise in the course of discovery, which is unlikely, they can be dealt with at that time.

      b.    <u>Interrogatories.</u>    The parties propose that each party may serve forty interrogatories, including discrete sub-parts, without further leave of court.

      c.    <u>Depositions.</u>   NSTAR proposes that each party may notice 15 depositions without leave of court, that each party agrees to produce current employee witnesses for examination in Boston, and that the parties shall negotiate the venue for non-party witnesses on an individual basis. Its position is that additional depositions are likely to be necessary given the complex nature of the case and the potentially large number of Okonite personnel and non-party witnesses who may have knowledge regarding cable performance, environmental conditions, and the many other issues likely to arise in this litigation. NSTAR also believes that depositions of party witnesses in Boston will permit the litigation to proceed more efficiently and at a lower cost to the litigants.

      Okonite proposes that each party may notice 10 depositions without leave of court, as provided for in the rules. Its position is that the discovery event limitations set out in Rule 26.1(C) are sufficient in this case and that if it seems that more depositions are needed, the issue can be revisited later in discovery. Okonite has proposed, and NSTAR has rejected, 12 depositions as a compromise. Okonite also proposes that the parties follow the federal rules as to venue of depositions and that should a dispute arise, the parties shall attempt to negotiate a resolution. Further, it does not necessarily reduce the costs or inconvenience to all litigants to have all depositions in Massachusetts, particularly given that Okonite is an ongoing business in New Jersey such that bringing

up to 15 employees, as NStar believes it needs 15 depositions, to Boston can be both quite expensive and significantly disruptive to its business.

    4.    <u>Expert Discovery.</u>    The plaintiff shall serve its expert report pursuant to Rule 26(a)(2)(B) on or before August 31, 2005. The defendant shall serve its expert report pursuant to Rule 26(a)(2)(B) on or before September 30, 2005. Expert depositions shall be completed by December 31, 2005.

NSTAR proposes that expert depositions shall take place in Boston on an alternating basis (i.e., plaintiff's expert, then defendant's expert, then plaintiff's expert, etc.). Its position is that alternation of experts fairly allocates the burden of expert discovery and does not prejudice either party.

Okonite's position is that the depositions will take place at a venue in accordance with the federal rules or elsewhere by agreement of the parties and that NStar, as plaintiff, will make its experts available first and then Okonite will make its experts available, with rebuttal witnesses, if any, following.

    5.    <u>Dispositive Motions.</u>  Dispositive motions shall be filed on or before January 31, 2006.

    6.    <u>Pre-Trial Conference.</u> To be determined.

    7.    <u>Summary of Positions.</u>

    A.    <u>NSTAR's position.</u> This case involves a defective undersea cable that NSTAR purchased from Okonite in 1994. The cable supplies electrical power and high-speed internet service to NSTAR customers on Martha's Vineyard. NSTAR selected Okonite as the cable supplier because Okonite represented that its cables had performed "flawlessly" in prior submarine applications and offered "reliability," among other features. The contract between

NSTAR and Okonite called for the use of state of the art methods, trained personnel, etc., such that NSTAR could expect up to forty years of reliable service. Okonite represented that it could manufacture the cable in sections and that all necessary splices would not degrade cable performance during its effective life. Okonite warranted its material and workmanship, including the design and manufacture of the splices, for ten years from the date of installation and final field acceptance testing. The Okonite warranty contains a "repair or replace" clause giving Okonite the option to repair or replace the cable in the event of a breach of the warranty.

Almost immediately after the cable was installed, the cable armor and insulation began to unravel. Okonite was forced to replace the cable with a new cable, which itself has failed on four occasions. Three of the four failures occurred at or in the immediate area of splices. NSTAR expects the evidence to show that these splices were defective in design, manufacture, or installation

Okonite repaired the cable after each of the four failures, but each time it was forced to make multiple "field splices" on a cable barge. The cable had fifteen factory splices at installation. It now has twenty-three splices, most of which are field splices. NSTAR expects the evidence to show that the process of repeatedly repairing the cable has degraded its performance and shortened its expected life span.

NSTAR has asserted several breach of warranty counts under the Uniform Commercial Code and at common law, as well as claims for fraudulent and negligent misrepresentations and violations of c. 93A stemming from the misleading misrepresentations Okonite used to induce NSTAR to make the purchase.

NSTAR expects to demonstrate that the warranty has failed of its essential purpose, and therefore, that Okonite should be required to replace the cable (or to pay to have it replaced),

particularly because the repeated failures have shown that additional repairs are likely to be futile and because the repairs themselves will further decrease the life of the cable, thus depriving NSTAR of the benefit of its bargain.

      B.  <u>Okonite's Position.</u> This case arises out of the purchase by plaintiff Commonwealth Electric Company d/b/a NStar Electric ("NStar") of an undersea cable system from defendant Okonite Company ("Okonite"). Over the eight years since the cable was installed in 1996, the cable has failed and been fully repaired by Okonite, at expense to Okonite, on three occasions, and recently a repair failed but Okonite likewise fully repaired it. There is no dispute that Okonite has been responsive and willing to repair the cable and has in fact repaired the cable. There is likewise no dispute that the first two repairs have worked without any further incident, as has the third repair after its initial, aberrational failure. Thus, the only dispute is whether the cable has been diminished by the repairs such that the contractual limitation of remedy provision fails of its essential purpose. Okonite's position is that it has conscientiously and in good faith fulfilled the provisions of the warranty, which limit the NStar's remedies in case of breach of warranty to repair or replacement of the defect, and that the repairs have not diminished the cable, which is in fact better than what NStar thought it purchased. As such, there has been no breach of contract or breach of warranty. NStar further claims that Okonite made fraudulent or negligent misrepresentations concerning the quality of the cable's insulation system. Okonite's position is that there has not been a failure in the cable's insulation system and to the extent that the splices in the cable have failed, they have been repaired fully as

provided for in the contract between the parties.

|  |  |
|---|---|
|  | Respectfully submitted, |
| COMMONWEALTH ENERGY CO. d/b/a NSTAR ELECTRIC | THE OKONITE CO. |
| By its attorneys: | By its attorneys: |
| /s/ Theodore J. Folkman<br>Daniel J. Lyne (BBO No. 309290)<br>Theodore J. Folkman (BBO No. 647642)<br>HANIFY & KING, P.C.<br>One Beacon Street<br>Boston, Mass. 02108<br>(617) 423-0400 | /s/ Andrea C. Kramer<br>Robert E. Sullivan (BBO No. 487820)<br>Andrea C. Kramer (BBO No. 632584)<br>SULLIVAN, WEINSTEIN & McQUAY, P.C.<br>Two Park Plaza<br>Boston, Mass. 02116<br>(617) 348-4300 |

Dated: October 27, 2004
416802