# COM:Electric

Commonwealth Electric Company
2421 Cranberry Highway
Wareham, Massachusetts 02571
Telephone (508) 291-0950

The Okonite Company
Five Commerce Park North
Bedford, New Hampshire 03102-8147
Attn: Mr John Bachhuber, District Manager

August 3, 1994

Re: Commonwealth Electric Inquiry No. CV-424
Martha's Vineyard Submarine Cable Project

Dear John:

Commonwealth Electric would like to invite The Okonite Company to come to their corporate offices, in Wareham, Massachusetts, to discuss Okonite's proposal for the above referenced project. I would suggest a meeting, at a mutual agreeable date, during the week of August 15th.

In preparation for the meeting Commonwealth Electric Company would like an answer, at least three (3) days in advance of the meeting, to the following questions:

1.  The Okonite Company offered many options and alternatives in it's proposal for The Martha's Vineyard Submarine Cable Project. Commonwealth Electric, after careful review, has decided on a "Hybrid" cable design which is a combination of several of the alternatives offered, and thus not priced directly, plus a selection of several alternatives that were offered as additional cost options.

    Would The Okonite Company price out a single, lump sum, fixed price, for a "Total Turnkey Package", in accordance with the detailed specifications as modified by the following:

    a. A Submarine Cable, as per specification, with the following modifications:

    I      Without the LEAD Jacket on the neutral Conductors.

    II     With 44 - #4 BWG Armor wires with 40 mils, minimum average thickness, Polyethylene Jacket on each wire.

    III    With Two (2), 8 channel, single mode, Fiber optic Cables in the interstices of the submarine cable.

- 1 -

OK00729

AUG-03-94  14:18  FROM:COM.ELEC.PURCHASING          ID:6172264288          PAGE    2

IV    A composite cable with 500 kcmil at the shore landing ends to utilize the full current rating of the 350 kcmil submarine cable.

V    With a filled strand system that will retard water penetration along the power cable conductors interstices, in case of cable severance.

VI    If the fiber optic cable in the interstices of the submarine power cable is not filled with a moisture resistant material to prevent water penetration, include such a system in the firm, lump sum price. (see question #12)

b.    In calculating the firm, lump sum price use the **installed cost** of: 34,000 feet of the above modified design of Submarine power cable, 38,000 feet of 1/c underground power cable and 14,000 feet of terrestrial fiber optic cable, as described in 1.c below.

c.    For the terrestrial fiber optic land cable use one (1) 8 channel, Single Mode, Simplex No. SL-1001 fiber optic cable, as quoted, with steel tape and black PE jacket.

d.    An as-laid video, taken within one week of the submarine cable installation, to be used as a base for the as-laid condition of the submarine cable.

e.    An alternate storage site, other than Commonwealth Electric's Falmouth Substation or any other Company property, for the storage of cable reels, splicing materials and trucks.

f.    With 2,000 feet of spare submarine cable, as modified above, on two (2) 1,000 foot steel reels with ends sealed and wooden lagging.

2.    Cost per foot of: The above modified design submarine cable, the 1/c underground land cable, and the above referenced terrestrial fiber optic cable. Note: The lump sum firm price will be adjusted $\pm$ to account for variances in the actual footage of cables purchased, which will be determined by mutual agreement from plans and/or surveys.

3.    Provide sectional drawings showing the construction, nominal cable outside diameter, and for the submarine cable the weight in air and sea water in lbs/ft, for the following cables:

a.    The 350 kcmil above modified design submarine cable.

b.    The 500 kcmil shore landing sections of the above modified design submarine cable.

- 2 -

OK00730

     c. The above referenced terrestrial fiber optic cable.

     d. The fiber optic cables which are included in the interstices of the submarine power cable.

4. Price to seal the ends, suitable for long term storage and to prevent water penetration, of one (1) of the 8 channel, Single Mode, Fiber Optic Cables, which was in the interstices of the Submarine Power Cable, leaving a 20 foot coil of slack in each shore end manhole. This cable may be set aside for future use.

5. Per Specification 2-0494 section 4.5, will The Okonite Company be Supplying the requested drawings on Mylar or Electronic Copy?

6. Does The Okonite Company agree to the requirements of Sections 5.2 and 5.3 of Specification 2-0494?

7. Reason why The Okonite Company will not comply with the requirements of Section 6.3 of Specification 2-0494?

8. In what factory(s) will the EPR Submarine, EPR Land Cables and Fiber Optic Cables be manufactured?

9. Length of each shore end section of 500 kcmil Submarine Cable. Will any Field Splices be required?

10. Provide revised data sheets and ampacity tables, per the specifications, for the above modified submarine cable design.

11. After the route is surveyed, and the actual cable length determined, how much additional cable is necessary to cover for installation contingencies? Give an answer either in additional feet or as a percentage of the actual cable route.

12. With the Optical Fibers installed in the interstices of the Submarine Cable, what method is to be utilized to prevent sea water penetration into the fibers due to the contingency of cutting the power cable to make a repair?   Will sea water penetration of the Fiber Optic Cable necessitate the cutting back of the Fiber Optic Cable until a dry section, on both ends, is found? Will sea water penetration affect the operation of the fiber optic cable? Experience with the cutting of Fiber Optic Cables under sea water? Will sea water react negatively with any of the components in the fiber optic cable's construction, which is planned for inclusion in the submarine cable.

13. If The Okonite Company is awarded the contract will you supply the information requested in Sections #2, #3 & #4 of Commonwealth Specification # 4-0494? How long after award of contract to receive the requested information?

14. The Okonite Company has provided for progress payments in their proposal. Please provide a matrix showing the effect of accelerated progress payments

- 3 -

OK00731

being made in December 1994 and/or January 1995, with 10% being left as a final payment upon completion of contract, on the fixed, lump sum price given above.

Any questions, with regards to the above, will be answered by Harold W. Eklund. He can be reached at (508) 291-0950 ext. 3216.

In preparing your fixed, lump sum price the original terms, conditions and warranties, as outlined in your proposal, will apply to the above modified design, more specifically:

A.  The Okonite Company is offering a ten (10) year warranty, per specifications, Pothead to Pothead or terminal to terminal , on the Martha's Vineyard cable systems.

B.  The Okonite Company accepts all the Commercial Terms and Conditions as outlined in COM/Electric Specifications.

C.  The Okonite Company will be the "Prime Contractor" and as such will be responsible for the "Total Installed Cable System" and also for the long-term warranty coverage of the "Total Installed Cable System" per specifications. The "Total Installed Cable System" is defined as the installed submarine cable, the underground power cable and the terrestrial fiber optic cable.

D.  Except as modified above, The Okonite Company's proposal is in accordance with COM/Electric's Inquiry # CV-424 Specifications, Plans, Terms and Conditions.

E.  The Okonite Company will not be supplying and/or installing the "40 foot outfall pipes" as requested in the specifications.

F.  The Okonite will provide monthly written reports showing the progress of the cable project. A monthly Gantt Chart, showing project milestones acheived will also be provided. Will The Okonite Company be using Scitor's PS-6 project management software to prepare the Gantt chart?

Please contact me at your earliest convenience so that we may set up a date for your presentation to Commonwealth Electric Company.

Sincerely;

Robert A. Doyle
Senior Technical Buyer

cc:  W.H. Gill
     P.J. Szatek
     H.W. Eklund

·4·

# COMElectric

**Commonwealth Electric Company**
2421 Cranberry Highway
Wareham, Massachusetts 02571
Telephone (508) 291-0950

October 24, 1994

Mr. John Bachuber
District Manager
THE OKONITE COMPANY
5 Commerce Park North
Bedford, New Hampshire    03102

Dear John,

Attached for your review are two copies of the contract covering the Martha's Vineyard Cable Project.

It is rather voluminous, but in this way we will incorporate all of the pertinent issues and written communication into one document "the contract".

After your review if there are no changes please have both contracts signed, returning same to me. I will have Jim Keane sign and we'll return an original to you for your records.

Should you find that you, or your attorney want to make any changes please contact me to discuss same.

Very truly yours,

*Bill*

William H. Gill, C.P.M.
Director
Materials Management

WHG/es
Enclosures

cc:    J. J. Keane
       H. W. Eklund
       R. J. Morrison
       P. J. Szatek

OK00741

K.    SIGNS

The Contractor shall see that the construction site is maintained free from any and all advertising and Contractor's sign boards of any kind.

L.    USE OF ROADWAYS

The Contractor shall use only established roads and such temporary roads as may be necessary for the Work and as authorized by the Company. When necessary to cross curbings, sidewalks, or similar preconstructions, such preconstructions must be properly protected and, if damaged, must be restored to their previous condition at the Contractor's expense.

M.    CUTTING AND PATCHING

The Contractor shall be responsible for all cutting, fitting, or patching of the Work that may be required to make its several parts fit together properly, and fit it to receive the apparatus, material, or Work of all Sub-Contractors or of other Contractors as outlined in the Specifications. Any cost caused by defective or illtimed Work shall be borne to completed Work party responsible therefor. Any damage done to completed Work shall be repaired, and the cost of repairs charged against the party who is responsible for the damage, or who has employed the person causing the damage.

N.    WARRANTY

The Contractor warrants to the Company, for a ten (10) year period commencing with the Date of Acceptance ("Warranty Period"), all of the Submarine/Land/Optical Fiber Cable System ("System") from terminal to terminal, will be free from defects in material and workmanship provided the System is employed under conditions contemplated and covered by the design specifications, and provided further that the System is maintained and operated in accordance with the Contractor's recommended standards and procedures. The Date of Acceptance shall be deemed as that date when successful final Field Acceptance Tests are completed as provided for in the Specifications.

The Contractor's sole responsibility under this Warranty shall be to repair or replace any and all defects within the System due to material and workmanship, without charge to the Company. In the event of either repair or replacement of the defective System under this Warranty, the Contractor shall be responsible for all costs associated therewith, including if necessary marine equipment, labor and materials. The Contractor will not be responsible for any damage or failure caused solely by the Company or any third party (excluding Sub-Contractors), including without limitation, acts of God. All expenses for any failure incurred in the repair or replacement of the System shall initially be borne by the Contractor until it is conclusively determined it is the Company's responsibility, in which case, all succeeding bills will be paid for by the Company as well as retroactive bills within the Company's normal course of processing.

From the end of the tenth (10th) through the fortieth (40th) year any failure that occurs due to defective material and/or workmanship, will be remedied by the Contractor providing replacement cable of the same Specification as defined in this Contract. The Company will absorb all remaining cost.

Should the failure be determined to be due to external cause, then the Company will be responsible for all costs associated with the failure.

The Contractor will not be responsible for any defects or repairs to, or replacement of, adjacent or connected equipment to which the System may supply electrical power or from which it may take electrical power, or with which it may, in any manner, be associated. The Contractor will not be responsible for any incidental or consequential damages whatsoever, either direct or indirect, resulting from a failure of the System.

## ARBITRATION:

In the event of a system failure that cannot be determined as to external cause or defective material and/or workmanship, then the parties agree to immediately enter into good faith negotiations, in an effort to determine the specific cause of the system failure.

Should the parties find they are unable to reach a resolution as to system failure causation, then the parties agree to submit the matter to a mutually agreeable 3rd party for binding arbitration, in accordance with the rules of the American Arbitration Association.

## ACCEPTANCE DATE:

The Acceptance Date will be set forth by the parties in a writing similar to that set forth in Exhibit 1.

Acceptance testing will commence at the earliest possible time after installation of Cable System.

Upon completion of successful testing the Company will expeditiously sign the acceptance document.

O.    SUBMARINE/LAND/OPTICAL FIBER CABLE ("SYSTEM") REPAIR

Under the Warranty, as described above, the Contractor is responsible for the mobilization of materials, equipment and personnel to effect both a Warranty and Non-Warranty repair of the cable System after the In-Service Date.

The Contractor is to supply a detailed schedule and narrative of the procedures he will follow in the event of any cable System failure. The schedule will show the time required for the mobilization of materials, equipment, and labor, from the date of



## INTER-OFFICE CORRESPONDENCE

Office: **Ramsey**  To: **Boston**

Attention: **J. Bachhuber**  Date: **November 28, 1994**

Subject: **Commonwealth Electric Company**
**Purchase Order Number CV31889N**
**"Martha's Vineyard Submarine Cable Project"**

Copies to:
V.A. Viggiano
A.C. Coppola
E.J. Soares
J.V. Fitzgerald
K.R. Kuchler

We have reviewed the contract submitted by ComElectric for the subject Purchase Order. The following changes are necessary.

**RE: General Terms and Conditions - Section 2**
**Article 11.0 Obligations of the Contractor**

I.  **Clause N - Warranty**
    Delete third (3rd) paragraph of this article to eliminate reference to a warranty period greater than ten (10) years. The original bid request, under "Specification No. 2-0494 - Article 8.0" and "General Terms and Conditions - Article N" required a ten (10) year term of warranty. Our proposal confirmed our compliance with the ten (10) year period. The forty (40) year language is not acceptable.

II. **Clause P - Procedure In The Event of Any Failure**
    **Paragraph 7.** - This paragraph covers payment of charges incurred in the event that Okonite (as Contractor) makes a repair that is determined to be externally caused, i.e. a "non-warranty" repair. Under these conditions, our charges as the repair contractor to Com Electric, will be on a cost plus twenty percent (20%) basis. This paragraph should be corrected to allow for this mark-up.

    **Paragraph 9.** - Delete this paragraph in its entirety to eliminate any reference to a warranty period greater than ten (10) years. See discussion on Warranty above.

Let me know if you have any questions. Also let me know if you want me to return the two contract copies for purpose of making these changes.

                    William D. Turner

kmm                                                   9502

OK00770

12/15/94
AC Coppola / W Gill (Commonwealth Electric)

Re: 1994/95 Martha's Vineyard Submarine Cable

Cable Warranty

Bid Basis    10 years - everything
Gill Asking For - Extension through 40 yrs
          (yrs > 10 - 40    cable only)
RCC

- We were told during negotiations/award that
  we were the only bidder that did not
  take exception to 10 yrs

- Our warranty tied to partner Simplex

- Simplex thinks OKO is crazy to extend 10 yrs

- Simplex upset at 10 yrs on F0. - not done anywhere

∴

1- F.0.?  < 10 years    trade?

2 - 1986  Extended warranty - we charged $25000
        for  > 10 yrs - Simplex did not care to
        participate

3 - Today a go to  1986 Format (ie 0-2, 2-5,
        5-10, 10-40)

OK00775