UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMONWEALTH ELECTRIC CO., d/b/a NSTAR ELECTRIC,<br><br>       Plaintiff,<br><br>v.<br><br>THE OKONITE CO.,<br><br>       Defendant. | No. 04-11681-RCL |

## **DECLARATION OF DOUGLAS FOLEY.**

I, Douglas Foley, depose and say as follows:

1.      I am the Manager of Maintenance & Construction for the Cape & Vineyard District for Commonwealth Electric Co. ("NSTAR Electric"). I have held that position at all times relevant to the facts at issue in this case.

2.      I have 15 years of field and management experience with NSTAR Electric and its predecessor companies.   I currently have responsibility for the operation, maintenance and construction of the distribution system for the Cape & Vineyard Division for NSTAR.  I have a Bachelor of Science in Electronic Engineering Technology from Wentworth Institute of Technology, and an MBA from Anna Maria College.

Background

3.      Because Martha's Vineyard is an island, there are only two possible methods for supplying electricity to customers living on Martha's Vineyard. First, NSTAR Electric's normal source of supply are undersea power cables to transmit electricity from the mainland. Second,

NSTAR Electric can use on-island generators, owned by Mirant, as a backup source of supply during peak conditions or emergency situations.

4. NSTAR Electric relies on both sources of supply. Prior to the installation of the undersea cables at issue in the present litigation, NSTAR Electric had two undersea cables in service between Martha's Vineyard and the mainland. The #91 cable, a 17-megawatt ("MW") cable, was installed in 1986. The #97 cable, a second 17-MW, was installed in 1990. NSTAR Electric also makes use of five older diesel generators on the island, owned by Mirant, with a combined capacity of 12.5 MW. Thus the total capacity prior to installation of the cables at issue in this litigation was 46.5 MW.

5. State regulators require NSTAR Electric to possess sufficient "firm capacity" to meet the Vineyard's electricity demands. "Firm capacity" means the remaining capacity available after the largest power supply source element supplying the Vineyard is lost. Because of these firm capacity requirements, it was and is critical that NSTAR Electric have a highly reliable source of electricity to its customers, including those on Martha's Vineyard. Prior to installation of the cables at issue in this case, the firm capacity requirement for the Vineyard was 27.5 MW (46.5 total megawatt capacity, less one of the 17-megawatt cables, less 2 MW to account for the contract between NSTAR Electric and Mirant, which required Mirant to provide only 10MW of firm capacity).

6. During the 1990s, electricity consumption increased dramatically on Martha's Vineyard. For example, the peak load (or demand) during the summer of 1995 increased to 36.1 MW. In response, NSTAR Electric determined that it was necessary to install an additional undersea cable from the mainland to the Vineyard. Indeed, without a new undersea cable, NSTAR Electric would have been unable to satisfy demand in the event one of the existing

2

cables failed. NSTAR Electric projected that the situation would become worse as demand on the Vineyard, particularly in the summer and winter months, continued to increase.

<u>The #99 Cable Failures</u>

7.      Okonite installed an undersea electricity and data transmission cable, known as the #99 cable, for NSTAR Electric in 1996. The #99 cable first failed on August 16, 1997, only nine months after installation. More than five thousand NSTAR Electric customers lost power. The outage lasted for more than one hour.

8.      The #99 cable next failed on November 25, 1999. Again, more than five thousand NSTAR Electric customers lost power. The outage lasted for more than one-half hour.

9.      The #99 cable next failed on October 26, 2003. Nearly four thousand NSTAR Electric customers lost power. The outage lasted for approximately 1.5 hours.

10.     The #99 cable failed most recently on March 7, 2004. More than 3,800 NSTAR Electric customers lost power. The outage lasted for more than one hour.

11.     Each of the failures occurred at or directly adjacent to one of Okonite's factory splices. After each failure, Okonite "repaired" the #99 cable by cutting out an Okonite factory splice and replacing it with six repair splices (referred to herein as "field splices") encased in a "coffin box", or metal box surrounding the repair. All of the field splices were performed at sea on the deck of a barge. The net result is that the #99 cable, which was intended to consist of cable joined at fifteen factory splices, now consists of eight factory splices and thirteen field splices. If Okonite had bid a cable that consisted of 65% field splices, it would never have been picked by NSTAR Electric as the successful bidder.

12.     In addition to outage time, during the October 2003 outage, NSTAR Electric's firm capacity fell below the amount necessary to meet the summer peak demand on Martha's

Vineyard. In response to each cable outage, NSTAR Electric had to mobilize temporary portable generation. The repairs following the failures took significantly more time than it took NSTAR Electric to restore electricity service. For example, after the November 1999 failure, the necessary repairs and testing were not complete until February 2000, almost three months later.

13. NSTAR Electric cannot accept a situation where its largest power cable to the island is susceptible to repeated failures. NSTAR Electric supplies energy to customers, such as police, hospitals and local businesses, which demand uninterrupted power. Because of the repeated failures in the #99 cable, and because the #99 cable now has multiple field splices that are inherently less reliable than the two remaining sets of factory splices, NSTAR Electric believes that it can no longer rely on the #99 cable, and that it must be replaced to insure a continuous supply of electricity to NSTAR Electric customers on Martha's Vineyard.

14. NSTAR Electric's contract with Mirant expires in 2008, and thereafter, NSTAR Electric has no guarantee that it will be able to continue to rely on the 10MW of firm capacity that Mirant's generators now supply. This fact, taken together with the steadily increase in peak demand on Martha's Vineyard, means that in the future, an unreliable #99 cable will make it much more likely that NSTAR Electric will be unable to meet its firm capacity requirements if the Okonite cable continues to experience failures.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 4, 2005.

/s/ Douglas Foley
Douglas Foley

427298

4