UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

COMMONWEALTH ELECTRIC
COMPANY D/B/A NSTAR ELECTRIC,

Plaintiff,

vs.                                                    Civil Action No. 04-cv-11681-RCL

THE OKONITE COMPANY,

Defendant.

## OKONITE'S RESPONSE TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS

Defendant The Okonite Company ("Okonite") responds to Plaintiff's First Set of Requests for Production of Documents and Things as follows:

### General Objections and Definitions

The following general objections are applicable to, and are incorporated by reference into, each of Okonite's specific responses to each request.

1.      Okonite objects to Plaintiff's definitions and instructions to the extent that they purport to impose obligations on Okonite in excess of, different from, or inconsistent with those contained in the Federal Rules of Civil Procedure.

2.      Okonite objects to Plaintiff's requests to the extent that they seek privileged information, including but not limited to information protected by attorney-client privilege or the attorney work product rule.

3.      For purposes of its responses to these document requests, Okonite defines and uses the term "1995 cable" to mean the submarine cable that was energized in May 1995 and the term "1996 cable" to mean the submarine cable that was energized in December 1996.

4.    Okonite objects to the definition of the term "System" insofar as it includes the 1995 cable. The reasons why the 1995 cable failed and why it was replaced, which have nothing to do with the splices in that cable, are unrelated to the Splice Failures. Moreover, Okonite repaired the failure in the 1995 cable, NStar still uses the 1995 cable, and after ascertaining and then acknowledging that the 1995 cable did not perform as warranted, Okonite fully replaced the 1995 cable with the 1996 cable at its own expense. Furthermore, the parties negotiated and agreed to apply the original Contract, including the ten-year warranty, to the 1996 cable. As such, the 1995 cable is not relevant to this case. Without waiving this objection, Okonite will respond to any request that includes the phrase "System" as if it the phrase means the 1996 cable.

5.    Okonite objects to the use of the term "System Failure." Plaintiff's First Request for Production of Documents and Things defines "Systems" as the "Submarine, Land and Optical Fiber Cable System." Based on that definition, there were no system failures: The land cable did not fail, the optical fiber cable did not fail, and the submarine cable itself did not fail. Rather, Splices 2, 3, and 4 of the five factory splices in the 1996 submarine cable each failed once at different times over approximately seven years, and the repair of Splice 4 failed. Okonite replaced each of these splices. Furthermore, to the extent that the term "System Failure" is meant to encompass the failure in the 1995 cable, Okonite objects because the failure of the 1995 cable is irrelevant to this case as discussed above. Instead of using the term "System Failure," Okonite will use the term "Splice Failures," which it defines as "the incidents to Splices 2, 3, and 4, and the Splice 4 repair that Okonite has not contested and is not contesting required repair or replacement under the warranty." Without waiving this objection, Okonite will respond to any request that includes the phrase "System Failure" as if, and only to the extent that the phrase, is defined to mean "Splice Failures."

2

6.      Okonite objects to the definition of "Contract" on the ground that it is vague.  For purposes of its responses to these document requests, Okonite defines and uses the term "Contract" to mean the document entitled "Section 1 – Contract" and the accompanying document entitled "Section 2 – General Terms and Conditions."

## Responses

### REQUEST NO. 1

The Contract (including attachments and exhibits thereto), and all drafts and amendments thereto.

### RESPONSE:

Okonite objects to this request on the grounds that it is vague, incomprehensible, overbroad, potentially unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence.

Without waiving these objections or any of the general objections, Okonite will produce the Contract in executed form; the exhibits to the Contract in their final form; all drafts of the Contract in its possession, custody, or control; and all amendments to the Contract and drafts of the amendments that it has in its possession, custody, or control.

### REQUEST NO. 2

All documents concerning the negotiation and execution of the Contract, including, but not limited to, all documents concerning the negotiation of th contents of the general terms and conditions and Exhibits A-I to the Contract.

RESPONSE:

Okonite objects to this request on the grounds that it is vague, incomprehensible, overbroad, potentially unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence.

Without waiving these objections or any of the general objections, Okonite will produce NStar's Request for Proposal; Okonite's Proposal and two addenda; NStar's purchase order; Okonite's invoice; the Contract in executed form; the exhibits to the Contract in their final form; all communications in its possession, custody, or control between NStar and Okonite concerning the negotiation or execution of the Contract and any amendments to the Contract; and all non-privileged documents in its possession, custody, or control concerning communications between NStar and Okonite concerning the negotiation or execution of the Contract and any amendments to the Contract.

REQUEST NO. 3

All documents concerning communications between you and any person, including NSTAR, concerning the Contract.

RESPONSE:

Okonite objects to this request on the grounds that it is vague, incomprehensible, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence.

Without waiving these objections or any of the general objections, Okonite will produce NStar's Request for Proposal; Okonite's Proposal and two addenda; NStar's purchase order; Okonite's invoice; the Contract in executed form; the exhibits to the Contract in their final form;

all communications in its possession, custody, or control between NStar and Okonite concerning the 1995 and 1996 cables; all communications in its possession, custody, or control between NStar and Okonite concerning the 1995 cable or the 1996 cable, the negotiation or execution of the Contract and any amendments to the Contract; and all non-privileged documents in its possession, custody, or control concerning communications between NStar and Okonite concerning the 1995 cable or the 1996 cable or negotiation or execution of the Contract and any amendments to the Contract.  In addition, Okonite will permit NStar (or its representatives or attorneys) to inspect and copy at Okonite's headquarters in Ramsey, New Jersey all communications in its possession, custody, or control between NStar and Okonite concerning the Splice Failures or Okonite's replacement of Splices 2, 3, and 4 and the Splice 4 repair; all non-privileged documents in its possession, custody, and control concerning communications between NStar and Okonite concerning the Splice Failures or Okonite's replacement of Splices 2, 3, and 4 and the Splice 4 repair; and the records in its possession, custody, or control of Okonite's replacement of Splices 2, 3, and 4 and the Splice 4 repair.

REQUEST NO. 4

All documents concerning communications between you and any person, including NSTAR, concerning the negotiation of the Contract, including all documents concerning the negotiation of the contents of the general terms and conditions and Exhibits A-1 to the Contract.

RESPONSE:

Okonite objects to this request on the grounds that it is vague, incomprehensible, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence.

Without waiving these objections or any of the general objections, Okonite will produce all communications in its possession, custody, or control between NStar and Okonite concerning the negotiation of the Contract and any amendments to the Contract and all non-privileged documents in its possession, custody, or control concerning communications between NStar and Okonite concerning the negotiation or execution of the Contract and any amendments to the Contract.

REQUEST NO. 5

All documents concerning the design of the System, or proposals, ideas, or alternatives for the design of the System.

RESPONSE:

Okonite objects to this request on the grounds that it is vague, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence. The design of the System is not an issue in this case. Not only has NStar not claimed design defect as a cause of the Splice Failures, which it cannot given that NStar participated in and knew of the design of the 1996 cable from the beginning, but also the cause of the Splice Failures is not an issue in this case. Okonite admits that the Splice Failures occurred, and Okonite replaced Splices 2, 3, and 4 and the Splice 4 repair, in accordance with and as anticipated by the Contract.

Without waiving these objections or any of the general objections, Okonite will produce NStar's originally requested design as contained in its Request for Proposal, Okonite's proposed original design as contained in its Proposal, and the final design for the 1995 cable. Okonite will also produce all communications in its possession, custody, or control between NStar and Okonite concerning the changes and/or modifications of the design of the cable that led to the final design for the 1996 cable and all non-privileged documents in its possession, custody, or control concerning communications between NStar and Okonite concerning the final design for the 1996 cable.

REQUEST NO. 6

All documents concerning communications between you and any person, including NSTAR, concerning the design of the System, or proposals, ideas, or alternatives for the design of the System.

RESPONSE:

[Copy from No. 5 once approved]

REQUEST NO. 7

All documents concerning any System Failure, including documents concerning the causes or suspected causes of such failure(s).

RESPONSE:

Okonite objects to this request on the grounds that it is vague, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence. The cause of the Splice Failures is not an issue in this case. Okonite admits that the

Splice Failures occurred, and Okonite replaced Splices 2, 3, and 4 and the Splice 4 repair, in accordance with and as anticipated by the Contract.

Without waiving these objections or any of the general objections, Okonite will permit NStar (or its representatives or attorneys) to inspect and copy at Okonite's headquarters in Ramsey, New Jersey all communications in its possession, custody, or control between NStar and Okonite concerning the Splice Failures or Okonite's replacement of Splices 2, 3, and 4 and the Splice 4 repair; all non-privileged documents concerning communications between NStar and Okonite concerning the Splice Failures or Okonite's replacement of Splices 2, 3, and 4 and the Splice 4 repair; the records in its possession, custody, or control of Okonite's replacement of Splices 2, 3, and 4 and the Splice 4 repair; all non-privileged documents in its possession, custody, or control representing the results of testing, inspection, or examination of removed splices; all communications in its possession, custody, or control between NStar and Okonite concerning any testing, inspection, or examination of the removed splices; and all non-privileged documents in its possession, custody, or control concerning communications between NStar and Okonite concerning any testing, inspection, or examination of the removed splices.


REQUEST NO. 8

All documents concerning communications between you and any person, including NSTAR, concerning any System Failures, including communications concerning the causes or suspected causes of such failure(s).

RESPONSE:

[Copy from No. 7 once approved]

8

REQUEST NO. 9

All documents concerning environmental, underwater and/or seabed conditions in the Vineyard Sound in the location of the System.

RESPONSE:

Okonite objects to this request on the grounds that it is vague, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence.

REQUEST NO. 10

All documents concerning communications between you and any person, including NSTAR, concerning environmental, underwater and/or seabed conditions in the Vineyard Sound in the location of the System.

RESPONSE:

Okonite objects to this request on the grounds that it is vague, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence.

REQUEST NO. 11

All documents concerning any repairs or replacements, or proposed repairs or replacements, to the System.

RESPONSE:

Okonite objects to this request on the grounds that it is vague as to what is meant by "proposed repairs or replacements" and overbroad to the extent that it seeks documents about

any proposed repairs or replacements that were not implemented. Okonite further objects to this request on the grounds that it is vague and overbroad as to the phrase "to the System." Okonite also objects to this request on the grounds that it is unduly burdensome and not reasonably calculated to lead to the discovery of relevant or admissible evidence.

Without waiving these objections or any of the general objections, Okonite will permit NStar (or its representatives or attorneys) to inspect and copy at Okonite's headquarters in Ramsey, New Jersey all communications in its possession, custody, or control between NStar and Okonite concerning the Splice Failures or Okonite's replacement of Splices 2, 3, and 4 and the Splice 4 repair; all non-privileged documents in its possession, custody, or control concerning communications between NStar and Okonite concerning the Splice Failures or Okonite's replacement of Splices 2, 3, and 4 and the Splice 4 repair; the records in its possession, custody, or control of Okonite's replacement of Splices 2, 3, and 4 and the Splice 4 repair; all non-privileged documents in its possession, custody, or control representing the results of testing, inspection, or examination of removed splices; all communications in its possession, custody, or control between NStar and Okonite concerning any testing, inspection, or examination of the removed splices; and all non-privileged documents in its possession, custody, or control concerning communications between NStar and Okonite concerning any testing, inspection, or examination of the removed splices.


## REQUEST NO. 12

All documents concerning communications between you and any person, including NSTAR, concerning repairs or replacements, or proposed repairs or replacements, to the System.

RESPONSE:

[Copy from No. 11.]


REQUEST NO. 13[a]

All documents concerning any communications with Simplex, Caldwell or PLC concerning the System Failures or payment, indemnification or contribution to the cost of repairing or replacing any or all of the System due to System Failures.

RESPONSE:

Okonite objects to this request on the grounds that it is vague, overbroad, unduly burdensome, and not reasonably calculated to lead to discovery of relevant or admissible evidence. Whether or not Okonite seeks or receives payment, indemnification, or contribution for the cost of replacing Splices 2, 3, and 4 and the Splice 4 repair is irrelevant to any issue in this case. Likewise, the cause of the Splice Failures is not an issue in this case. Okonite admits that the Splice Failures occurred, and Okonite replaced Splices 2, 3, and 4 and the Splice 4 repair, in accordance with and as anticipated by the Contract.


REQUEST NO. 13[b]

All documents that discuss or identify the reason(s) that Okonite replaced the submarine cable in 1996.

RESPONSE:

Okonite objects to this request on the grounds that it is vague, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence. The replacement of the 1995 cable is irrelevant to this case. The reasons why Okonite

replaced the 1995 cable, which have nothing to do with the splices, are unrelated to the Splice Failures in the 1996 cable.  Moreover, Okonite repaired the failure in the 1995 cable, NStar still uses the 1995 cable, Okonite fully replaced the 1995 cable with the 1996 cable at its own expense, and the parties negotiated and agreed to apply the original Contract, including the ten-year warranty, to the 1996 cable.

Without waiving these objections or any of the general objections, Okonite will produce all communications in its possession, custody, or control between NStar and Okonite concerning the 1995 cable, including the failure and replacement of the 1995 cable and all non-privileged documents in its possession, custody, or control concerning communications between NStar and Okonite concerning the 1995 cable, including the failure and replacement of the 1995 cable.

REQUEST NO. 14

All documents concerning communications between you and any person, including NSTAR, concerning replacements of part or all of the System, including but not limited to the replacement of a submarine cable in 1996.

RESPONSE:

Okonite objects to this request on the grounds that it is vague, overbroad, duplicative of other requests, and not reasonably calculated to lead to the discovery of relevant or admissible evidence.  The replacement of the 1995 cable is irrelevant to this case.  The reasons why Okonite replaced the 1995 cable, which have nothing to do with the splices, are unrelated to the Splice Failures in the 1996 cable.  Moreover, Okonite repaired the failure in the 1995 cable, NStar still uses the 1995 cable, Okonite fully replaced the 1995 cable with the 1996 cable at its own

expense, and the parties negotiated and agreed to apply the original Contract, including the ten-year warranty, to the 1996 cable.

Without waiving these objections or any of the general objections, Okonite will produce all communications in its possession, custody, or control between NStar and Okonite concerning replacement of the 1995 cable and all non-privileged documents in its possession custody, or control concerning communications between NStar and Okonite concerning replacement of the 1995 cable. In addition, Okonite will permit NStar (or its representatives or attorneys) to inspect and copy at Okonite's headquarters in Ramsey, New Jersey all communications in its possession, custody, or control between NStar and Okonite concerning the Splice Failures or Okonite's replacement of Splices 2, 3, and 4 and the Splice 4 repair; all non-privileged documents in its possession, custody, and control concerning communications between NStar and Okonite concerning the Splice Failures or Okonite's replacement of Splices 2, 3, and 4 and the Splice 4 repair; and the records in its possession, custody, or control of Okonite's replacement of Splices 2, 3, and 4 and the Splice 4 repair.

## REQUEST NO. 15

All documents concerning costs you have incurred in making repairs or replacements to the System.

## RESPONSE:

Okonite objects to this request to the extent that it is duplicative of Request No. 30 and, in that regard, on the ground that it is vague as to what "repair or replacements to the System" encompasses. To the extent that this request seeks documents concerning costs other than those Okonite incurred to replace Splices 2, 3, and 4 and the Splice 4 repair, Okonite objects to this

request on the grounds that it is overbroad and not reasonably calculated to lead to the discovery of relevant or admissible evidence.

Without waiving these objections or any of the general objections, Okonite will produce documents sufficient to identify and quantify the dollar amounts that Okonite paid to third parties in connection its replacement of Splices 2, 3, and 4 and the Splice 4 repair.

## REQUEST NO. 16

All documents concerning inspections or examinations of the System, or of any part thereof, made after a fault or failure.

## RESPONSE:

Okonite objects to this request on the grounds that it is vague, overbroad, and not reasonably calculated to lead to the discovery of relevant or admissible evidence.

Without waiving these objections or any of the general objections, Okonite will permit NStar (or its representatives or attorneys) to inspect and copy at Okonite's headquarters in Ramsey, New Jersey all non-privileged documents in its possession, custody, or control representing the results of inspections or examinations of the removed splices; all communications in its possession, custody, or control between NStar and Okonite concerning any inspections or examinations of the removed splices; and all non-privileged documents in its possession, custody, or control concerning communications between NStar and Okonite concerning any inspections or examinations of the removed splices.

REQUEST NO. 17

All documents concerning communications between you and any person, including NSTAR, concerning inspections or examinations of the System, or of any part thereof, made after a fault or failure.

RESPONSE:

[Copy from No. 16, once approved]


REQUEST NO. 18

All documents concerning offers by you to NSTAR to repair or replace any portion of the System, including factory splices.

RESPONSE:

Okonite objects to this request on the grounds that it is vague, overbroad, and not reasonably calculated to lead to the discovery of relevant or admissible evidence.

Without waiving these objections or any of the general objections, Okonite will permit NStar (or its representatives or attorneys) to inspect and copy at Okonite's headquarters in Ramsey, New Jersey all communications in its possession, custody, or control between NStar and Okonite concerning Okonite's replacement of Splices 2, 3, and 4 and the Splice 4 repair and all non-privileged documents in its possession, custody, or control concerning communications between NStar and Okonite concerning Okonite's replacement of Splices 2, 3, and 4 and the Splice 4 repair.

REQUEST NO. 19

All documents concerning the advisability of replacing single-phase factory splices with "coffins" containing three splices.

RESPONSE:

Okonite objects to this request on the grounds that it is vague and incomprehensible as to what is meant by the terms "advisability" or "coffins." Okonite also objects to the use of the term "coffins." Okonite further objects to this request on the grounds that it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence. NStar knew of, consented to, and observed the use of the splice repair kits on Splices 2, 3, and 4 and the Splice 4 repair, and the splice repair kits that Okonite used in its replacement of those splices are the same kits NStar itself uses in its repairs of other cables it owns.

Without waiving these objections or any of the general objections, Okonite will permit NStar (or its representatives or attorneys) to inspect and copy at Okonite's headquarters in Ramsey, New Jersey all non-privileged documents in its possession, custody, or control, if any, concerning the type of splice repair kits used in Okonite's replacement of Splices 2, 3, and 4 and the Splice 4 repair.


REQUEST NO. 20

All documents concerning communications between you and any person, including NSTAR, concerning the decision to replace single-phase factory splices with "coffins" containing three splices.

RESPONSE:

[Copy objections from No. 19, once approved]

## REQUEST NO. 21

All factory splice quality control records for the System cable.

**RESPONSE:**

Okonite objects to this request on the grounds that it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence. Okonite admits that the Splice Failures occurred, and Okonite replaced Splices 2, 3, and 4 and the Splice 4 repair, in accordance with and as anticipated by the Contract.

## REQUEST NO. 22[a]

All field splice quality control records for the System cable.

**RESPONSE:**

Okonite objects to this request on the grounds that it is vague, potentially overbroad, and not reasonably calculated to lead to the discovery of relevant or admissible evidence.

Without waiving these objections or any of the general objections, Okonite will permit NStar (or its representatives or attorneys) to inspect and copy at Okonite's headquarters in Ramsey, New Jersey the records in its possession, custody, or control of the testing of the replacements of Splices 2, 3, and 4 and the Splice 4 repair and the records in its possession, custody, or control of Okonite's replacement of Splices 2, 3, and 4 and the Splice 4 repair.

## REQUEST NO. 23[a]

All documents concerning the advisability of laying the System cable on the sea floor rather than beneath the sea floor.

RESPONSE:

Okonite objects to this request on the grounds that it is vague as to what is meant by "advisability," overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence. Whether the 1996 cable was buried or not is irrelevant to any issues in this case.

Without waiving these objections or any of the general objections, Okonite will produce all communications in its possession, custody, and control between NStar and Okonite concerning the burial of the 1996 cable, all non-privileged documents in its possession, custody, or control concerning communications between NStar and Okonite concerning the burial of the 1996 cable, and documents sufficient to show that Okonite paid for the burial.

REQUEST NO. 22[b]

All documents concerning communications between you and any person, including NSTAR, concerning the advisability of laying System cable on the sea floor rather than beneath the sea floor.

RESPONSE:

[Copy from No. 23[a] once approved]

REQUEST NO. 23[b]

All documents concerning occasions on which the current running through the System has exceeded the System's designed tolerance.

RESPONSE:

Okonite objects to this request on the grounds that it is vague in terms of what is meant by "designed tolerance." Okonite further objects to this request on the grounds that it is not reasonably calculated to lead to the discovery of relevant or admissible evidence.

Without waiving these objections or any of the general objections, Okonite states that it has no documents in its possession, custody, or control concerning the current that NStar runs through the 1996 cable other than those that NStar has provided to Okonite.

REQUEST NO. 24

All documents concerning communications between you and any person, including NSTAR, concerning occasions on which the current running through the System has exceeded the System's designed tolerance.

RESPONSE:

[Copy from No. 23[b]]

REQUEST NO. 25

All documents concerning the decision to use cable with splices rather than a continuous run cable in the System.

RESPONSE:

Okonite objects to the request to the extent that it is vague as to whose decision the request is being referred to. To the extent it is referring to Okonite's purported "decision," Okonite objects to this request on the grounds that it is incomprehensible. Okonite never "decided" to use a cable with splices rather than a continuous run cable. Because of the

manufacturing capabilities of Okonite's factories, Okonite contemplated from the beginning that the 1996 cable would have splices, and Okonite only ever proposed a cable with splices. Moreover, from the beginning of the process, NStar knew and accepted that the cable would be made with splices.

Without waiving these objections or the general objections, Okonite responds that to the extent the request seeks documents concerning NStar's decision to use Okonite's cable, which it knew would contain splices, any such documents would be produced in response to other requests.

## REQUEST NO. 26

All documents concerning communications between you and any person, including NSTAR, concerning the decision to use a cable with splices rather than a continuous run cable in the System.

RESPONSE:

[Copy from No. 25, once approved]

## REQUEST NO. 27

All documents concerning errors or defects in the design, materials, workmanship or installation of the System.

RESPONSE:

Okonite objects to this request on the grounds that it is vague, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence. The cause of the Splice Failures is not an issue in this case. Okonite admits that the

Splice Failures occurred, and Okonite replaced Splices 2, 3, and 4 and the Splice 4 repair, in accordance with and as anticipated by the Contract.

## REQUEST NO. 28

All documents concerning communications between you and any person, including, but not limited to, NSTAR, concerning errors or defects in the design, materials, workmanship, or installation of the System.

RESPONSE:

[Copy from No. 27, once approved]

## REQUEST NO. 29

All documents concerning any errors or defects in the maintenance of the System.

RESPONSE:

Okonite objects to this request on the grounds that it is vague, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence.

Without waiving these objections or any of the general objections, Okonite states that it has no documents in its possession, custody, or control responsive to this request.

## REQUEST NO. 30

All documents concerning the costs you incurred to repair the System Failures.

RESPONSE:

Okonite objects to this request to the extent that it is duplicative of Request No. 15 and, in that regard, on the ground that it is vague as to what "repair the System Failures" encompasses. To the extent that this request seeks documents concerning costs other than those Okonite incurred to replace Splices 2, 3, and 4 and the Splice 4 repair, Okonite objects to this request on the grounds that it is overbroad and not reasonably calculated to lead to the discovery of relevant or admissible evidence.

Without waiving these objections or any of the general objections, Okonite will produce documents sufficient to identify and quantify the dollar amounts that Okonite paid to third parties in connection with its replacement of Splices 2, 3, and 4 and the Splice 4 repair.

REQUEST NO. 31[a]

All documents concerning the estimated costs of future repairs of the System or of replacement of the System cable.

RESPONSE:

Okonite objects to this request on the grounds that it speculates that there will be future repairs or replacement of the 1996 cable. Okonite further objects on the grounds that this request is vague, overbroad, and not reasonably calculated to lead to the discovery of admissible evidence.

Without waiving these objections or any of the general objections, and without admitting that the 1996 cable will require any additional repairs or a replacement, Okonite states that it has no documents in its possession, custody, or control concerning the estimated costs of such hypothetical future replacements in the 1996 cable other than documents concerning the costs

22

incurred by Okonite in paying third parties in connection with Okonite's replacement of Splices 2, 3, and 4 and the Splice 4 repair, which are being produced in response to other requests.

## REQUEST NO. 32[a]

All documents concerning any warranties provided to you by any third party for any piece, portion or component of the System.

## RESPONSE:

Not applicable.

## REQUEST NO. 33[a]

All documents concerning claims you have made under any insurance agreement concerning the System Failures.

## RESPONSE:

Not applicable.

## REQUEST NO. 31[b]

All documents concerning any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment that may be entered in this action or to indemnify or reimburse for payments made to satisfy such a judgment.

## RESPONSE:

Not applicable.

REQUEST NO. 31[c]

All quality assurance exception reports, or similar documents, for the manufacturing facility or facilities that manufactured the submarine cable used in the System from 1994 through the present date.

RESPONSE:

Okonite objects to this request on the grounds that it is vague, overbroad, and not reasonably calculated to lead to the discovery of relevant or admissible evidence. Okonite admits that the Splice Failures occurred, and Okonite replaced Splices 2, 3, and 4 and the Splice 4 repair, in accordance with and as anticipated by the Contract. Okonite further objects on the ground that this request seeks proprietary, confidential, and trade secret information.

REQUEST NO. 32[b]

All quality assurance audits prepared for the manufacturing facility or facilities that manufactured the submarine cable used in the System from 1994 through the present date.

RESPONSE:

[Copy from No. 31[c] once approved]

REQUEST NO. 33[b]

All corrective action reports, or similar documents, prepared for the manufacturing facility or facilities that manufactured the submarine cable used in the System from 1994 through the present date.

RESPONSE:

[Copy from No. 31[c] once approved]

REQUEST NO. 34

All pieces or portions of the System that have been removed for repair, replacement, testing, or for any other purpose, within your possession, custody or control.

RESPONSE:

Okonite objects to this request on the grounds that it is overbroad and not reasonably calculated to lead to the discovery of relevant or admissible evidence.

Without waiving these or the general objections, Okonite will permit NStar (or its representatives or attorneys) to inspect any pieces or portions of the 1996 cable that have been removed for repair, replacement, or testing that are in its possession, custody, or control.

THE OKONITE COMPANY
By its attorney,

Robert E. Sullivan, BBO # 487820
sulli@swmlawyers.com
Andrea C. Kramer, BBO #632584
akramer@swmlawyers.com
Sullivan Weinstein & McQuay, P.C.
Two Park Plaza, Suite 610
Boston, MA  02116-3902
617-348-4300

Dated:  November 23, 2004