UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMONWEALTH ELECTRIC COMPANY D/B/A NSTAR ELECTRIC,<br><br>Plaintiff,<br><br>vs.<br><br>THE OKONITE COMPANY,<br><br>Defendant. | Civil Action No. 04-cv-11681-RCL |

## OKONITE'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Defendant The Okonite Company ("Okonite") responds to Plaintiff's First Set of Interrogatories as follows:

### General Objections

The following general objections are applicable to, and are incorporated by reference into, each of Okonite's specific responses to each interrogatory.

1. Okonite objects to Plaintiff's definitions and instructions to the extent that they purport to impose obligations on Okonite in excess of, different from, or inconsistent with those contained in the Federal Rules of Civil Procedure.

2. Okonite objects to Plaintiff's interrogatories to the extent that they seek privileged information, including but not limited to information protected by attorney-client privilege or the attorney work product rule.

3. For purposes of its responses to these interrogatories, Okonite defines and uses the term "1995 cable" to mean the submarine cable that was energized in May 1995 and the term "1996 cable" to mean the submarine cable that was energized in December 1996.

4.  Okonite objects to the definition of the term "System" insofar as it includes the 1995 cable. The reasons why the 1995 cable failed and why it was replaced, which have nothing to do with the splices in that cable, are unrelated to the Splice Failures. Moreover, Okonite repaired the failure in the 1995 cable, NStar still uses the 1995 cable, and after ascertaining and then acknowledging that the 1995 cable did not perform as warranted, Okonite replaced the 1995 cable with the 1996 cable at its own expense. Furthermore, the parties negotiated and agreed to apply the original Contract, including the ten-year warranty, to the 1996 cable. As such, the 1995 cable is not relevant to this case. Without waiving this objection, Okonite will respond to any interrogatory that includes the phrase "System" as if it the phrase means the 1996 cable.

5.  Okonite objects to the use of the term "System Failure." Plaintiff's First Set of Interrogatories defines "Systems" as the "Submarine, Land and Optical Fiber Cable System." Based on that definition, there were no system failures: The land cable did not fail, the optical fiber cable did not fail, and the submarine cable itself did not fail. Rather, Splices 2, 3, and 4 of the five factory splices in the 1996 submarine cable each failed once at different times over approximately seven years, and the repair of Splice 4 failed. Okonite replaced each of these splices. Furthermore, to the extent that the term "System Failure" is meant to encompass the failure in the 1995 cable, Okonite objects because the failure of the 1995 cable is irrelevant to this case as discussed above. Instead of using the term "System Failure," Okonite will use the term "Splice Failures," which it defines as "the incidents to Splices 2, 3, and 4, and the Splice 4 repair that Okonite has not contested and is not contesting required repair or replacement under the warranty." Without waiving this objection, Okonite will respond to any interrogatory that includes the phrase "System Failure" as if, and only to the extent that the phrase, is defined to mean "Splice Failures."

2

6. Okonite objects to the definition of "Contract" on the ground that it is vague. For purposes of its responses to these interrogatories, Okonite defines and uses the term "Contract" to mean the document entitled "Section 1 – Contract" and the accompanying document entitled "Section 2 – General Terms and Conditions."

**Responses**

INTERROGATORY NO. 1:

For each of the System Failures, state the cause of the failure and state the basis for your belief that it was in fact the cause.

RESPONSE:

Okonite objects to this interrogatory on the grounds that it is vague, overbroad, and seeks information not reasonably calculated to lead to the discovery of relevant or admissible evidence. Okonite admits that the Splice Failures occurred, and Okonite replaced Splices 2, 3, and 4 and the Splice 4 repair, in accordance with and as anticipated by the Contract.

Without waiving these objections or any of the general objections, Okonite answers that at this point, despite extensive investigation, Okonite does not know the cause(s) of the Splice Failures, and it believes that the actual cause(s) of the splice failures cannot be determined.

INTERROGATORY NO. 2:

If you contend that no defects in construction, manufacture, or installation contributed to the System Failures, state the basis for your contention.

RESPONSE:

[Copy from No. 1.]

## INTERROGATORY NO. 3:

If you contend that the method used to repair the System Failures does not shorten the expected working life of the System or reduce the carrying capacity or any other performance attribute of the System, state the basis for your contention.

## RESPONSE:

Okonite objects to this interrogatory on the ground that the phrases "expected working life of the System" and "any other performance attribute of the System" are vague and undefined and the interrogatory itself is incomprehensible in the context of the actual contract between the parties. Okonite warranted the 1996 cable for ten years. Okonite has fully honored that warranty. Okonite also objects to this interrogatory on the ground that it calls for speculation and is premised on conjecture.

Without waiving these objections or any of the general objections, Okonite answers that Okonite knows of no reasons why the replacement of Splices 2, 3, and 4 and the Splice 4 repair or the testing thereof should reduce the quality or lifespan of the 1996 cable. The method used in Okonite's replacement of Splices 2, 3, and 4 and the Splice 4 repair is the standard method of repair in the field, one well known and in fact used by NStar itself in its repairs of its cables elsewhere. Furthermore, Okonite has no information that suggests or indicates that the lifespan or quality of the 1996 cable has been diminished in any way.

INTERROGATORY NO. 4:

Identify each and every third party that you have consulted at any time concerning any of the System Failures, and identify all documents that relate to such consultations, including, but not limited to, reports or summaries of such consultations.

RESPONSE:

Okonite objects to this interrogatory in that it is vague, overbroad, unduly burdensome, and seeks information not reasonably calculated to lead to the discovery of relevant or admissible evidence.

Without waiving these objections or any of the general objections, Okonite answers, in accordance with Rule 33(d) of the Federal Rules of Civil Procedure, that to the extent it consulted any third parties in connection with testing, inspection, or examination of the Splice Failures, the names of those third parties can be ascertained by a review of the documents concerning the testing, inspection, or examination of the Splice Failures that Okonite is producing in response to Plaintiff's First Set of Requests for the Production of Documents and Things.

INTERROGATORY NO. 5:

Identify each person whom you expect to call as an expert witness at trial, and for each such person, state the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion.

RESPONSE:

Okonite objects to this request in that it is premature. Okonite will respond to this interrogatory via its expert disclosure, which is due September 30, 2005.

INTERROGATORY NO. 6:

Identify each person whom you believe to have information concerning any of the System Failures, identifying the subjects of the information.

RESPONSE:

Okonite objects to this interrogatory in that it is vague, overbroad, unduly burdensome, and seeks information not reasonably calculated to lead to the discovery of relevant or admissible evidence.

Without waiving these objections or any of the general objections, Okonite answers, in accordance with Rule 34(d) of the Federal Rules of Civil Procedure, that to the extent that there any people who have information concerning the Splice Failures or Okonite's replacement of the splices beyond those identified in Okonite's Initial Disclosure, the names of those people can be ascertained from the documents concerning the replacement and testing of the splices that Okonite is producing in response to Plaintiff's First Set of Requests for Documents and Things.

INTERROGATORY NO. 7:

Identify each person whom you believe to have information concerning the negotiation of the Contract, identifying the subjects of the information.

RESPONSE:

Okonite objects to this interrogatory on the grounds that it is overbroad and not reasonably calculated to lead to the discovery of relevant or admissible evidence.

Without waiving these objections or any of the general objections, Okonite answers, in accordance with Rule 34(d) of the Federal Rules of Civil Procedure, that to the extent that there any people who have information concerning the negotiation of the Contract or its amendment beyond those identified in Okonite's Initial Disclosure, the names of those people can be ascertained from the documents concerning the negotiation that Okonite is producing in response to Plaintiff's First Set of Requests for Documents and Things.

INTERROGATORY NO. 8:

Identify each person whom you believe to have information concerning the marketing, manufacturing, or installation of the cables in the System, identifying the subjects of the information.

RESPONSE:

Okonite objects to this request on the grounds that it is vague, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence. Information concerning the manufacturing and installation of the 1996 cable is not relevant to this case. Okonite admits that the Splice Failures occurred, and Okonite replaced Splices 2, 3, and 4 and the Splice 4 repair, in accordance with and as anticipated by the Contract. Information concerning all of Okonite's marketing is likewise not relevant. NStar has identified two statements from marketing materials that are the basis of some of their claims.

7

To the extent necessary, those statements can be evaluated on their own without further discovery concerning marketing.

### INTERROGATORY NO. 9:

Identify each submarine cable of the same or similar type as the cable used in the System from 1995 to the present (i.e., a cable with factory splices rather than a continuous cable), stating for each cable the name of the person for whom the cable was installed, the location of the cable, the date of installation, and whether or not the cable was buried.

### RESPONSE:

Okonite objects to this request on the grounds that it is vague as to whether it means all submarine cables, or just rubber submarine cables. To the extent that the interrogatory seeks information on anything other than rubber submarine cables, Okonite objects to this request on the ground that it is overbroad and not reasonably calculated to lead to the discovery of relevant or admissible evidence. Okonite further objects on the ground the request is not reasonably calculated to lead to the discovery of relevant or admissible evidence in that the circumstances of and information concerning other cables manufactured by Okonite for other customers for other physical locations are not relevant to this action. Okonite further objects on the ground that the names of Okonite's customers are irrelevant and proprietary and the request for such names is not reasonably calculated to lead to the discovery of relevant or admissible evidence. Okonite also objects to this interrogatory on the ground that the issue of whether the 1996 cable was buried or not is irrelevant to any issues in this case.

Without waiving these objections or the general objections, and with defining a similar cable as a spliced, rubber, underwater cable and preserving the identity of Okonite's customers, Okonite answers as follows:

| Customer | Splices | Location | Installation Date | Buried? |
|---|---|---|---|---|
| NStar | 21 | Martha's Vineyard Sound | 1990 | No |
| A | 37 | Lake Michigan | 1999 | No |
| B | 8 (splice boxes) | | 1999 | No |
| C | 5-6 in each of 3 legs | Long Island Sound | 2003 | No |

### INTERROGATORY NO. 10:

Identify each and every instance in which an Okonite underwater (submarine) cable has failed due to its design, fabrication or installation, and for each such failure, please provide the following information:

   a.   The identity of the cable by cable name and number, cable owner and cable location;

   b.   The date of failure; and

   c.   The cause of failure.

### RESPONSE:

Okonite objects to this request on the grounds that it is overbroad and not reasonably calculated to lead to the discovery of relevant or admissible evidence.

Without waiving these objections or the general objections, Okonite answers that no rubber submarine cable manufactured by Okonite has ever failed due to its design, fabrication, or installation other than the cable that Okonite installed for NStar in 1995.

## INTERROGATORY NO. 11:

If you have asserted or threatened to assert claims against any insurer or third party concerning the System or the System Failures, identify the insurer or third party, state in general terms the nature of the claim, identify any court proceeding or arbitration proceeding by venue and civil action/arbitration number and state the basis for the claim.

## RESPONSE:

Not applicable.

## INTERROGATORY NO. 12:

Please identify each and every test and/or quality assurance procedure performed in the course of repairing a System Failure, and in particular, the tests and procedures performed to insure the integrity of any field splices, including, but not limited to, high voltage and radiographic tests.

## RESPONSE:

To assist in locating the fault, a capacitor releases a charge into the cable, and the wave shape of the charge is monitored until there is a disruption, which indicates the location of the failure. After divers enter the water in the area of the failure, the capacitor again places a charge down the cable so that the diver can hear where the actual fault has occurred.

Eventually in the process one end of the cable is hi pot tested at 65 kV DC; then the other end of the cable is similarly tested. The final test done is a circuit test end to end at 65 kv DC.

As to answers:

_____
Ettore Bartolucci

As to objections:

THE OKONITE COMPANY
By its attorney,

*Andrea Kramer*
_____
Robert E. Sullivan, BBO # 487820
   sulli@swmlawyers.com
Andrea C. Kramer, BBO #632584
   akramer@swmlawyers.com
Sullivan Weinstein & McQuay, P.C.
Two Park Plaza, Suite 610
Boston, MA  02116-3902
617-348-4300

Dated:   November 24, 2004