# SULLIVAN WEINSTEIN & MCQUAY

A PROFESSIONAL CORPORATION
COUNSELLORS AT LAW

ROBERT E. SULLIVAN
(617) 348-4322
sulli@resq.com

June 3, 2004

Timothy N. Cronin
Assistant General Counsel
NSTAR
800 Boylston Street
Boston, MA  02199

Dear Mr. Cronin:

This will respond on behalf of The Okonite Company, Inc. ("Okonite") to your letter dated May 26, 2004.

From the date of acceptance of the cable to the present, a period of some eight years, the cable has functioned as specified and intended. There have in fact been three failures, and in each instance Okonite responded immediately and at its sole cost replaced the failed sections.

There was a further failure, but that occurred in or about a splice box used in a prior repair. Since the splice boxes used in the prior repairs are at least the equivalent, mechanically and electrically, of the original factory splices, the failure at the splice box was atypical. It may very well have been caused by an anchor, a clamming sled or by some other external insult. Whatever the cause however, none of the other splice boxes from any of the prior repairs have failed, confirming that the March, 2004 incident was atypical, and that it does not reflect in any way on the integrity of the cable.

Of course, as you correctly note, Okonite also made the appropriate replacement in connection with the March, 2004 failure at the splice box. Each replacement of a failed section entails significant expense. In total Okonite has expended in excess of two and one-half million dollars in connection with these replacements. Okonite has incurred these expenses as though they were required by the warranty, without argument and without hesitation. Okonite has done so even though there remain serious questions whether there ever was any defective condition of the factory splices, and whether a warranty obligation was actually triggered.

As against this background Okonite respectfully disagrees with and respectfully rejects the legal conclusions asserted in your letter concerning the Contract in general and

OK01131

the warranty in particular. Before discussing these conclusions, Okonite must first address certain misstatements of fact the May 26, 2004 letter contains.

First, the letter states "Okonite repaired the cable by removing the defective factory splices and making new splices in the cable". Okonite does not concede, and the third party engineering report referenced in your letter does not establish, that the factory splices were "defective".

Next you state that Okonite "has replaced (using similar methods and at Okonite's expense) the two remaining original factory splice sets in the Line". This is not accurate. Acting out of a desire to accommodate NSTAR as a valued customer, and not because of a concern for defect, Okonite had offered to meet with NSTAR to discuss replacement, at Okonite's expense, of the two remaining original factory splice sets. Inexplicably, NSTAR has refused to meet with Okonite even to discuss such a replacement. In the context of this course of conduct by NSTAR, which in the final analysis is against its own interests, NSTAR's assertions of concern about its "ability*** to service customer load on Martha's Vineyard" are dubious. The same is true of NSTAR's stated concern for potential "serious operational and customer service impairments during the upcoming Summer peak demand period". Ever since March, when Okonite's repair efforts were in progress, NSTAR has refused to meet with Okonite to discuss options for allaying any NSTAR concerns about the two remaining factory splices. NSTAR has remained steadfast in this refusal, to the present. We are thus three months closer to the "upcoming Summer peak demand period", and we have lost the meaningful opportunity those three months afforded to remediate what NSTAR believes to be "defects" in the splices. This conduct by NSTAR despite Okonite's willingness to attempt to resolve any issues which NSTAR believes exist with respect to the splices in the cable, belies NSTAR's assertion in its letter of a concern for its distribution system.

The other NSTAR "beliefs", involving "faulty activity", "numerous splices", "the integrity and reliability of this Line" and the "capacity of the fiber optic line" are all without any factual foundation, and ultimately, are invalid.

NSTAR has received the benefit of the bargain it made with Okonite. The contracting parties were aware that submarine cables are inherently subject to potential difficulties. That is the reason the Contract contained a warranty, providing for how potential defects would be addressed. That is why the responsibilities and costs of warranty work were also very carefully allocated between the parties.

Assuming, but only for purposes of argument, and without conceding, that the factory splices were defective, Okonite has scrupulously and strictly honored its warranty obligations under the Contract and has every intention of continuing to do so. In this connection Okonite reiterates its offer, to meet to consider pre-emptive action concerning the remaining original splice sets, even though such action may not be necessary.

Okonite respectfully rejects each and every one of the factual and legal assertions in the second and third paragraphs on the second page of NSTAR's letter. Of course, as

OK01132

an exception to the preceding statement, Okonite has insufficient knowledge to dispute NSTAR's assertion that it incurred costs in the sum of $213,358.48.

However, the cost picture would not be complete without a brief summary of the present situation. The cable Okonite installed in 1995 is present and functioning under half load.    That cable is in effect totally free to NSTAR because Okonite manufactured, supplied and installed the 1996 cable for the original price Commonwealth Electric paid for the 1995 cable.  In addition, the 1996 cable (your "99 Line") is functioning at full load.  The original price paid to Okonite was approximately 2.5 million dollars.  Okonite has spent that much again in the work it has already done in remedying the failures that have occurred to date.  With respect to potential future events, Okonite has no intention of avoiding or minimizing any contractual obligation it may have to NSTAR.

However, Okonite does not have a legal obligation to provide or pay for a new cable, or to pay the costs asserted in NSTAR's letter.  Okonite respectfully declines to do so.

Finally, with respect to the last paragraph on the second page of NSTAR's letter, Okonite notes NSTAR's threat to obtain a new cable from a third party, and then to litigate with Okonite.  Okonite has always believed that litigation is counterproductive, unnecessary and ultimately wasteful.  Nevertheless, NSTAR's assertion that Section 10 of the Contract provides a basis for such litigation is, in Okonite's view, legally incorrect.

In light of the facts, detailed above, that Okonite has more than honored its warranty, and continues to stand ready to do so; Okonite believes that NSTAR has no claim against it whatsoever.  If NSTAR ultimately believes that litigation is in its best interests, Okonite will strenuously oppose it.

Very truly yours,

Robert E. Sullivan

Cc: Alfred C. Coppola
    President, Okonite

OK01134