AO88 (Rev. 1/94) Subpoena in a Civil Case

# Issued by the
# UNITED STATES DISTRICT COURT

DISTRICT OF _____ MASSACHUSETTS

COMMONWEALTH ELECTRIC CO.

V.

THE OKONITE CO.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 04-11681-RCL

TO: Tyco Integrated Cable Systems, Inc.
d/b/a Simplex Wire & Cable Co.
2073 Woodbury Ave.
Portsmouth, N.H. 03801

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Schedule A, attached.

| PLACE | DATE AND TIME |
|---|---|
| Hanify & King, P.C., One Beacon Street, Boston, Mass. 02108 | 3/7/2005 10:00 am |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| /s/ Folkman, Plaintiff's Attorney | 2/7/05 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Theodore J. Folkman, Hanify & King, One Beacon Street, Boston, Mass. 02108, (617) 423-0400

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
|  |  |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
|  |  |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____          _____
                  DATE                                    SIGNATURE OF SERVER

                                                          _____
                                                          ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

  (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

  (2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

  (B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

  (3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

    (i)  fails to allow reasonable time for compliance,
    (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

    (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
    (iv) subjects a person to undue burden.

  (B) If a subpoena

    (i)  requires disclosure of a trade secret or other confidential research, development, or commercial information, or
    (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
    (iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

  (1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

  (2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the mmmdemanding party to contest the claim.

## SCHEDULE A

### Definitions and Instructions

In this schedule:

1. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

2. The term "document" is synonymous and meaning and equal in scope to the usage of the term in Fed.R.Civ.P. 34(a). A draft or non-identical copy is a separate document within the meaning of this term.

3. The term "person" means any natural person or any business, legal, or governmental entity or association.

4. The term "concerning" means referring to, describing, evidencing, or constituting.

5. The term "or" is disjunctive but not exclusive. That is, "A or B" means A, B, or A and B.

6. "NSTAR Electric" means Commonwealth Electric Co., d/b/a NSTAR Electric, its agents, officers, employees, subsidiaries, and parents.

7. "Okonite" means The Okonite Co., its agents, officers, employees, subsidiaries, and parents.

8. "Caldwell" means Caldwell's Diving Co., Inc., its agents, officers, employees, subsidiaries, and parents.

9. "PLC" means Power Line Constructors, its agents, officers, employees, subsidiaries, and parents.

10. "Stolberger" means Stolberger AG, its agents, officers, employees, subsidiaries, and parents.

11. The terms "you," "your," etc. refer to Tyco Integrated Cable Systems, Inc., d/b/a Simplex Wire & Cable Co., its agents, officers, employees, subsidiaries, and parents.

12. "The System" means the Submarine, Land and Optical Fiber Cable System between riser pole termination located on Easteville Ave. on Martha's Vineyard and the Falmouth Substation termination in Falmouth, Mass, installed pursuant to the contract dated August 19, 1994 bewteen NSTAR Electric and Okonite, including all submarine cables installed pursuant to the Contract and all repairs thereto or replacements made thereof.

13. "The System Failures" means the failures in the System that occurred on or about August 15, 1997, November 25, 2000, October 25, 2003, and March 7, 2004.

14. If you withhold any document, or portion thereof, on a claim of privilege or under the work product rule, with respect to each document withheld state: (a) the author and recipients; (b) its date; (c) the subject matter of the document; (d) the nature of the document (e.g., letter, e-mail, etc.); (e) the reason why the document is claimed to be privileged or to constitute work product; and (f) the paragraph of this schedule to which the document is responsive.

## Documents and Things to be Produced

1. All documents concerning contracts or agreements between you and Okonite concerning the System.

2. All documents concerning the design of the System, or proposals, ideas, or alternatives for the design of the System.

3. All documents concerning communications between you and any person, including NSTAR Electric or Okonite, concerning the design of the System, or proposals, ideas, or alternatives for the design of the System.

2

4. All documents concerning any System Failure, including documents concerning the causes or suspected causes of such failures.

5. All documents concerning communications between you and any person, including NSTAR Electric or Okonite, concerning any System Failure, including documents concerning the causes or suspected causes of such failures.

6. All documents concerning environmental, underwater, or seabed conditions in the Vineyard Sound in the location of the System.

7. All documents concerning any repairs or replacements, or proposed repairs or replacements, to the System.

8. All documents concerning communications between you and any person, including NSTAR Electric or Okonite, concerning any repairs or replacements, or proposed repairs or replacements, to the System.

9. All documents concerning any communications between you and Okonite, Caldwell, or PLC concerning the System Failures or payment, indemnification or contribution to the cost of repairing or replacing any or all of the System due to System Failures.

10. All documents that discuss or identify the reasons that Okonite replaced the submarine cable in 1996.

11. All documents concerning communications between you and any person, including NSTAR Electric or Okonite, concerning replacements of part or all of the System, including but not limited to the replacement of a submarine cable in 1996.

12. All documents concerning costs you have incurred in making repairs or replacements to the System.

13. All documents concerning inspections or examinations of the System, of any part thereof, made after a fault or failure.

14. All documents concerning communications between you and any person, including NSTAR Electric or Okonite, concerning inspections or examinations of the System, of any part thereof, made after a fault or failure.

15. All documents concerning the advisability of replacing single-phase factory splices with "coffins" containing three splices.

16. All documents concerning communications between you and any person, including NSTAR Electric or Okonite, concerning the advisability of replacing single-phase factory splices with "coffins" containing three splices.

17. All factory splice quality control records for the System cable.

18. All field splice quality control records for the System cable.

19. All documents concerning the advisability of laying the System cable on the sea floor rather than beneath the sea floor.

20. All documents concerning communications between you and any person, including NSTAR Electric or Okonite, concerning the advisability of laying the System cable on the sea floor rather than beneath the sea floor.

21. All documents concerning the decision to use cable with splices rather than a continuous run cable in the System.

22. All documents concerning communications between you and any person, including NSTAR Electric or Okonite, concerning the decision to use cable with splices rather than a continuous run cable in the System.

23. All documents concerning errors or defects in the design, materials, workmanship or installation of the System.

24. All documents concerning communications between you and any person, including NSTAR Electric or Okonite, concerning errors or defects in the design, materials, workmanship or installation of the System.

25. All documents concerning any warranties you provided to Okonite or NSTAR Electric concerning any piece, portion, or component of the System.

26. All documents concerning claims you have made under any insurance agreement concerning the System Failures.

27. All quality assurance exception reports, or similar documents, for the manufacturing facility or facilities that manufactured the submarine cable used in the System from 1994 to the present.

28. All quality assurance audits, or similar documents, prepared for the manufacturing facility or facilities that manufactured the submarine cable used in the System from 1994 to the present.

29. All corrective action reports, or similar documents, prepared for the manufacturing facility or facilities that manufactured the submarine cable used in the System from 1994 to the present.

30. All pieces or portions of the System that have been removed for repair, replacement, testing, or any other purpose that are within your possession, custody, or control.

31. All test results and analyses of test results concerning pieces or portions of the System.

32. The patent application for the "improved electro-mechanical splice" (hereinafter the "Improved Splice") referenced on the document bates-numbered NST005442 attached to this Schedule as Exhibit 1, all amendments thereto, all communications between you or your attorneys and the U.S. Patent and Trademark Office concerning the patent application for the Improved Splice and all of the documents constituting the file wrapper.

33. All documents concerning reports by persons other than NSTAR Electric of design or operational faults or failure in or around an Improved Splice.

34. All documents concerning claims (whether or not made in a civil action or other legal, equitable, or administrative proceeding) made against you concerning design or operational faults or failure in or around an Improved Splice.

35. All documents concerning the potential for design or operational faults or failure in or around an Improved Splice, including but not limited to documents authored by engineers or others who assisted in the invention and development of the Improved Splice.

36. All documents concerning settlements of claims (whether or not made in a civil action or other legal, equitable, or administrative proceeding) made against you concerning design or operational faults or failure in or around an Improved Splice.

37. All reliability analyses, failure analyses, or similar documents concerning the Improved Splice.

38. All documents concerning reports by persons other than NSTAR Electric of design or operational faults or failures of the "Panzer 1" caterpillar, referenced on the document bates-numbered NST005442 attached to this Schedule as Exhibit 1.

39.  All documents concerning claims (whether or not made in a civil action or other legal, equitable, or administrative proceeding) made against you concerning design or operational faults or failure of the "Panzer 1" caterpillar.

40.  All documents concerning communications between you and Stolberger concerning (1) the potential for design or operational faults or failure of the "Panzer 1" caterpillar; (2) actual design or operational faults or failures of the "Panzer 1" caterpillar; or (3) claims or allegations concerning design or operational faults or failures of the "Panzer 1" caterpillar.

41.  All documents concerning settlements of claims (whether or not made in a civil action or other legal, equitable, or administrative proceeding) made against you or Stolberger concerning faults or failure of the "Panzer 1" caterpillar.

42.  All pieces or portions of the System that have been removed for repair, replacement, testing, or any other purpose that are within your possession, custody, or control.

422703



# Martha's Vineyard's Growing Need for Power is Now Being Met.

The winter population on the island of Martha's Vineyard is 10,000 people. In the summertime, 70,000 people live there...and more are coming everyday. Even the most basic needs of the island are affected—especially the need for safe, reliable power. Can you imagine flipping the lightswitch to find yourself still in the dark?

That's why when the Commonwealth Electric Company recognized this growing need, they relied on Simplex, a company that has been manufacturing and installing power cables for over 100 years. Simplex's expertise in the assembly, armoring and installation of long length underwater cable systems, together with the Okonite Company's excellence in the design and fabrication of insulated power cables, provided a complete, cost-effective solution.

The result is 25,000 feet of three conductor, 37 kV undersea power transmission cable which provides the primary source of power to the island.

Several technological advances contributed to the smooth manufacture and installation of this cable system. Simplex engineers designed an improved electro-mechanical splice, for which a patent is pending, enabling the cable to be installed under tension at sea. Additionally, a new state-of-the-art caterpillar, named "Panzer 1", was built by Stolberger A.G., of Germany, to Simplex's design specifications, to control the tension and pay-out speed of the cable as it passed from storage in the laying barge to its final resting place on the bottom of Vineyard Sound. This unique hydraulic machine is fully articulated, capable of accommodating cables or pipes up to 17 inches in diameter, and providing precisely controlled tensions up to ten tons.

A complete success, the growing need for power on Martha's Vineyard is now being met. Thanks to the Simplex-Okonite team, this summer, and for the summers of the future, no one will be left in the dark.

SIMPLEX WIRE AND CABLE COMPANY
Portsmouth, New Hampshire 03801
Telephone (603) 436-6100



# SIMPLEX
# OKONITE

THE OKONITE COMPANY
Ramsey, New Jersey 07446
Telephone (201) 825-0300

NST005442