UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMONWEALTH ELECTRIC CO., d/b/a NSTAR ELECTRIC,<br><br>   Plaintiff,<br><br>v.<br><br>THE OKONITE CO.,<br><br>   Defendant. | No. 04-11681-RCL |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS AND ANSWERS TO INTERROGATORIES**

INTRODUCTION

  This case arises out of repeated failures of an undersea cable that carries electricity and data from Falmouth to Martha's Vineyard. The cable's buyer, Commonwealth Electric Co. (now known as "NSTAR"), has sued for breach of warranty, misrepresentation, and unfair or deceptive trade practices. The seller, The Okonite Co. ("Okonite") claims it has no knowledge of why the cable fails, or even whether the cable is defective or not. Rather, Okonite's exclusive defense is that NSTAR's claims are all barred by a "repair or replace" clause in the original contract, despite the fact that the putative repairs consist of cable splices that themselves fail to meet essential contract specifications, and that seriously degrade the expected life of the cable.

  NSTAR promptly served document requests and interrogatories on Okonite seeking, *inter alia*, documents and sworn answers relating to the cause of the cable failures and quality control reports and similar documents generated either as a result of the failures at issue in this case or other failures of Okonite cables. Okonite responded with blanket objections, claiming that virtually any and every document discussing the cause of the failures, and any and every

document going to the quality of the cable are completely irrelevant because Okonite's "repair or replace" clause trumps any effort to determine the quality of the cable, or the quality of the putative repairs, or the reasons behind the failures. Okonite's serial objections are spurious, and intended to obfuscate and delay. Failure analysis and product quality are central to both warranty and misrepresentation claims. Moreover, the discovery goes directly to whether Okonite's putative repairs fail of their essential purpose because Okonite unilaterally replaced defective on-size factory splices with off-size field splices that by definition don't meet contract specification.

## THE DISCOVERY CONFERENCE

The parties held a telephonic discovery conference at 4 p.m. on April 20, 2005. The conference had been noticed upon NSTAR's request. The conference lasted for approximately one and three-quarters hours. Daniel J. Lyne and Theodore J. Folkman participated for NSTAR; Andrea C. Kramer participated for Okonite.

The parties reached agreement on certain matters and agreed to consult with their clients further on certain other matters.[1] The parties did not resolve their dispute regarding production of documents relating to the cause of the cable failures, nor did they resolve a dispute over NSTAR Electric's core issue interrogatory asking Okonite to state the basis for its contention that the method used to "repair" the cable (off-size cable field splices) did not shorten the expected working life of the cable or reduce the carrying capacity or any other performance attribute of the cable. The requests for production and the interrogatories that are thus squarely in dispute.

---

[1] A true copy of a letter memorializing the conference and detailing which discovery issues were resolved is attached as Exhibit 1 to the Declaration of Theodore J. Folkman, which is being filed herewith. A true copy of Okonite's Response to Plaitniff's First Request For Production Of Documents And Things is attached to that Declaration as Exhibit 2.

ARGUMENT

A.     Requests Related To Causation of the Failure

Request 7. All documents concerning any System Failure, including documents concerning the causes or suspected causes of such failure(s).

Response. Okonite objects to this request on the grounds that it is vague, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence. The cause of the Splice Failures is not an issue in this case. Okonite admits that the Splice Failures occurred, and Okonite replaced Splices 2, 3, and 4 and the Splice 4 repair, in accordance with and as anticipated by the Contract. Without waiving these objections or any of the general objections, Okonite will permit Nstar (or its representatives or attorneys) to inspect and copy at Okonite's headquarters in Ramsey, New Jersey all communications in its possession, custody, or control between Nstar and Okonite concerning the Splice Failures or Okonite's replacement of Splices 2, 3, and 4 and the Splice 4 repair; all non-privileged documents concerning communications between Nstar and Okonite concerning the Splice Failures or Okonite's replacement of Splices 2, 3, and 4 and the Splice 4 repair; the records in its possession, custody, or control of Okonite's replacement of Splices 2, 3, and 4 and the Splice 4 repair; all non-privileged documents in its possession, custody, or control representing the results of testing, inspection, or examination of removed splices; all communications in its possession, custody, or control between Nstar and Okonite concerning any testing, inspection, or examination of the removed splices; and all non-privileged documents in its possession, custody, or control concerning communications between Nstar and Okonite concerning any testing, inspection, or examination of the removed splices. (Emphasis supplied).

Request 8. All documents concerning communications between you and any person, including NSTAR, concerning any System Failures, including communications concerning the causes or suspected causes of such failure(s).

Response. [Copy from No. 7 once approved] (sic).[2]

Request 13[a]. All documents concerning any communications with Simplex, Caldwell or PLC concerning the System Failures or payment, indemnification or contribution to the cost of repairing or replacing any or all of the System due to System Failures.

Response. Okonite objects to this request on the grounds that it is vague, overbroad, unduly burdensome, and not reasonably calculated to lead to discovery or relevant or admissible evidence. Whether or not Okonite seeks or receives payment, indemnification, or contribution for the cost of replacing Splices 2, 3, and 4 and the Splice 4 repair is irrelevant to any issue in this case. Likewise, the cause of the Splice Failures is not an issue in this case. Okonite admits that the Splice Failures occurred, and Okonite replaced Splices 2, 3, and 4 and the Splice 4 repair, in accordance with and as anticipated by the Contract. (Emphasis supplied).

---

[2] NSTAR Electric understands that Okonite inadvertently served an earlier version of the discovery responses that included bracketed text such as the text quoted here. Okonite's counsel has agreed to provide an updated response.

Request 16. All documents concerning inspections or examination of the System, or of any part thereof, made after a fault or failure.

Response. Okonite objects to this request on the grounds that it is vague, overbroad, and <u>not reasonably calculated to lead to the discovery of relevant or admissible evidence.</u> Without waiving these objections or any of the general objections, Okonite will permit NStar (or its representatives or attorneys) to inspect and copy at Okonite's headquarters in Ramsey, New Jersey all non-privileged documents in its possession, custody, or control representing the results of inspections or eaminations of the removed splices; all communications in its possession, custody, or control between NStar and Okonite concerning any inspections or examinations of the removed splices; and all non-privileged documents in its possession, custody, or control concerning communications between NStar and Okonite concerning any inspections or examinations of the removed splices. (Emphasis supplied).

Request 17. All documents concerning communications between you and any person, including NSTAR, concerning inspections or examinations of the System, or of any part thereof, made after a fault or failure.

Response. [Copy from No. 16, once approved] (sic).

Request 27. All documents concerning errors or defects in the design, materials, workmanship or installation of the System.

Response. Okonite objects to this request on the grounds that it is vague, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence. <u>The cause of the Splice Failures is not an issue in this case.</u> Okonite admits that the Splice Failures occurred, and Okonite replaced Splices 2, 3, 4, and the Splice 4 repair, in accordance with and as anticipated by the Contract.

Request 28. All documents concerning communications between you and any person, including, but not limited to, NSTAR, concerning errors or defects in the design, materials, workmanship, or installation of the System.

Response. [Copy from No. 27, once approved] (sic).

Okonite begins its objection to these requests with boilerplate complaints of vagueness, overbreadth, and undue burden, which it does not explicate further. Okonite's real objection is relevance. It argues that the cause of the failures is not an issue in the case. In the discovery conference, Okonite outlined the basis for its position, namely, that because the only issue is whether the warranty failed of its essential purpose, causation is irrelevant. This argument fails for two reasons. First, contrary to Okonite's argument, causation is directly relevant to NSTAR

4

Electric's claims. Second, even taking at face value Okonite's assertion that failure of essential purpose is the only issue in the case, causation is directly relevant to failure of essential purpose.

       1.      <u>Evidence of Causation Is Directly Relevant To The Claims In This Case.</u>

Even taking at face value Okonite's argument that documents concerning causation are irrelevant because the only issue in the case is failure of essential purpose, Okonite's objections fail. Causation is directly relevant to NSTAR Electric's claims. First, it is relevant to the claim for breach of express warranty (counts one and four). In the warranty Okonite breached in this case, Okonited warranted that the System "will be free from defects in material and workmanship" for a period of ten years. (Compl. ¶13; Ans. ¶ 13). If such defects did not cause the cable failures that are the basis for NSTAR Electric's case, then NSTAR Electric will be unable to prove that Okonite breached the warranty.

Second, causation is relevant to NSTAR Electric's claims for breach of implied warranties of merchantability and fitness for a particular purpose (counts two and three). In order to make the link between the cable failures and the cable's ability to "pass without objection in the trade," G.L. c. 106, § 2-314(2)(a), or the cable's "fit[ness] for the ordinary purposes for which such goods are used," G.L. c. 106, § 2-314(2)(c), NSTAR Electric again will have to prove that a defect in the cable caused the failures. The same point applies to NSTAR Electric's claim that the cable was not fit for the particular purpose for which NSTAR Electric purchased it, <u>see</u> G.L. c. 106, § 2-315.

Third, causation is relevant to NSTAR Electric's claims of misrepresentation (counts five and six). The gist of these claims is that Okonite fraudulently or negligently misrepresented the reliability of the cable in order to induce NSTAR Electric to buy it. Proof of these claims of course requires proof that the represetnations of reliability were false. The existence of defects in

5

the cable, and the occurrence of cable failures as a result of these defects, is obviously relevant to deterimining whether or not Okonite's cable was reliable, as it represented. Moreover, information concerning Okonite's quality control, other cable failures for similar cables, quality exception reports, and the like, are directly relevant both to the truth of Okonite's representations that its cables were reliable and to Okonite's state of mind with respect to the reliability of its product.

    2.    <u>Causation Is Relevant To Failure Of Essential Purpose.</u>

Okonite argues that under the warranty clause of its contract with NSTAR Electric, it has the option to continue to repair the cable, as it says it has done each time the cable has failed. In general, limitation of remedy clauses such as the clause in the contract at stake here are enforceable. <u>See</u> G.L. c. 106, § 2-719(1). However, they are <u>not</u> enforceable when "circumstances cause [the] exclusive or limited remedy to fail of its essential purpose ..." G.L. c. 106, § 2-719(2).

It is clear that unless the buyer can demonstrate a breach of warranty, it cannot demonstrate a failure of essential purpose. In <u>H.B. Fuller Co. v. Kinetic Sys., Inc.</u>, 932 F.2d 681, 688 (7th Cir. 1991), for example, the buyer argued that an exclusive remedies clause failed of its essential purpose, and the seller responded that the buyer had failed to show a defect in the goods. After a bench trial, the district court agreed with the seller that the buyer had failed to prove a defect, and accordingly it entered judgment in favor of the seller. On appeal, the Seventh Circuit affirmed:

> We agree with [the seller]. The plain language of UCC § 2-719(2) speaks of circumstances that "cause an exclusive or limited remedy to fail of its essential purpose." The word "remedy" in § 2-719(2) presupposes the existence of a breach of contract that calls the remedial terms of the warranty, limited though they may be, into play. ... Here, however, the district court found that the cause of [the buyer's] palletizing problems was not a defect in material or workmanship but rather the absence of a bag flattener. We cannot say that this factual finding is clearly erroneous, so we must accept its correctness on appeal. Because [the buyer] has not identified a breach of the contract, it cannot

6

> establish that the remedies [the seller] provided for such a breach were so limited as to deprive [the buyer] of the substantial value of the bargain.

Id. at 688 (citations and internal quotation marks omitted).

As argued above, NSTAR Electric will have to prove causation in order to prove that Okonite breached its express and implied warranties. It follows that causation is not relevant to NSTAR Electric's claims alone; it is also highly relevant to the failure of essential purpose analysis. Thus even if Okonite were correct to argue that the only issue in the case is failure of essential purpose, discovery on causation would still be necessary.

      3.      Discovery Should Not Be Limited Here.

The above argument is dispositive. Since causation is directly relevant not only to NSTAR Electric's claims but to the failure of essential purpose argument that Okonite argues is the only issue in the case, discovery directed at causation must be allowed even granting Okonite's point arguendo. It is true that discovery should sometimes be limited until a preliminary threshold issue is resolved. For example, discovery sometimes should be limited to jurisdictional facts when the court's jurisdiction is in doubt. See Bandag, Inc. v. Michelin Retread Techs., Inc., 202 F.R.D. 597, 598 (S.D. Iowa 2001). Discovery sometimes should be limited to facts relevant to liability where liability and damages are to be tried separately. See Jabra v. Kelley, 75 F.R.D. 475, 495 (E.D. Mich. 1977). Courts sometimes limit the scope of discovery to particular issues in other contexts as well.

Here, there is no basis for such a limitation. Failure of essential purpose is not in any sense a threshold or preliminary question or logically prior to causation. If anything, causation should be considered the threshold question in this case, since as shown above, the failure of essential purpose analysis presupposes a breach of warranty, and there is no breach in this case unless there is causation.

Moreover, if the Court were to limit discovery here, it would be difficult or impossible for NSTAR Electric to comply with the discovery schedule the Court established on November 3, 2004. The deadline for fact discovery is July 31, 2005. If Okonite prevails on its discovery objections, NSTAR Electric will not even be able to begin discovery concerning causation until the Court decides Okonite's summary judgment motion. Okonite's objections have already made time short. If NSTAR Electric is to have a fair opportunity to depose the necessary witnesses after review of Okonite's documents, it must have those documents available for its review shortly.

B.       Requests Related To Undersea Conditions

Request 9. All documents concerning environmental, underwater and/or seabed conditions in the Vineyard Sound in the location of the System.

Response. Okonite objects to this request on the grounds that it is vague, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence.

Request 10. All documents concerning communications between you and any person, including NSTAR, concerning environmental, underwater and/or seabed conditions in the Vineyard Sound in the location of the System.

Response. Okonite objects to this request on the grounds that it is vague, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence.

Request 23[a]. All documents concerning the advisability of laying the System cable on the sea floor rather than beneath the sea floor.

Response. Okonite objects to this request on the grounds that it is vague as to what is meant by "advisability," overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence. Whether the 1996 cable was buried or not is irrelevant to any issues in this case. Without waiving these objections or any of the general objections, Okonite will produce all communications in its possession, custody, and control between Nstar and Okonite concerning the burial of the 1996 cable, all non-privileged documents in its possession, custody, or control concerning communications between Nstar and Okonite concerning the burial of the 1996 cable, and documents sufficient to show that Okonite paid for the burial.

Request 22[b]. All documents concerning communications between you and any person, including NSTAR, concerning the advisability of laying the System cable on the sea floor rather than beneath the sea floor.

Response. [Copy from No. 23[a] once approved] (sic).

      1.      <u>Evidence Concerning The Environment Is Relevant To Causation.</u>

In these requests for production, NSTAR Electric is attempting to eliminate a potential theory of causation that Okonite may suggest, namely, that the environmental conditions in the Vineyard Sound caused one or more of the cable failures. Positioning and laying the submarine cable was Okonite's responsibility. The Contract expressly stated that any information provided to Okonite regarding underwater conditions in Vineyard Sound was only "to assist the Contractor." See Agreement, Section 2, Para. 4.0.[3] The Agreement otherwise obligated the Okonite to perform all installation ("The installation of the submarine cable shall be accomplished by state of the art methods, procedures, equipment and specifically trained personnel so that a long period (40 years) of reliable service can be expected." (Agreement, Exhibit B, Section 4.1). Okonite retained Caldwell Diving Company as its installation contractor, and touted Caldwell's expertise ("The unique cable installation expertise and equipment of the Caldwell Diving Company permit any one of the options to be accomplished in a sound professional manner.")(<u>See</u> Agreement, Exhibit E, Response to Question #4). To the extent that the failures are associated with installing the cable improperly, or with recurring seabed conditions, than all of the alleged "repairs" to date would fail to address the problem, and NStar would be denied an effective remedy under the contract. Okonite has no right to fence off the entire area of inquiry.

C.      <u>Documents Relating To Quality Control Records</u>

---

[3] The portions of the Contract referenced in this paragraph are attached to the Declaration of Theodore J. Folkman as Exhibit 5.

<u>Request 21.</u> All factory splice quality control records for the System cable.

<u>Response.</u> Okonite objects to this request on the grounds that it is overbroad, unduly burdensome, and <u>not reasonably calculated to lead to the discovery of relevant or admissible evidence.</u> Okonite admits that the Splice Failures occurred, and Okonite replaced Splices 2, 3, and 4 and the Splice 4 repair, in accordance with and as anticipated by the Contract. (Emphasis supplied).

<u>Request 22[a].</u> All field splice quality control records for the System cable.

<u>Response.</u> Okonite objects to this request on the grounds that it is vague, potentially overbroad, and <u>not reasonably calculated to lead to the discovery of relevant or admissible evidence.</u> Without waiving these objections or any of the general objections, Okonite will permit Nstar (or its representatives or attorneys) to inspect and copy at Okonite's headquarters in Ramsey, New Jersey the records in its possession, custody, or control of the testing of the replacements of Splices 2, 3, and 4 and the Splice 4 repair and the records in its possession, custody, or control of Okonite's replacement of Splices 2, 3, and 4 and the Splice 4 repair.

Okonite's manufacturing facilities have reportedly been ISO 9000 compliant since 1994. (Folkman Decl., Ex. 3). In particular, its headquarters and two laboratories have been compliant with ISO 9001-1994, and its manufacturing plants have been compliant with ISO 9002-1994. ISO certification requires internal quality audit procedures to test and validate manufacturing processes and procedures and to document the result of such tests. An example of an ISO 9001 audit concerning Simplex Wire & Cable Co., one of Okonite's subcontractors on the cable project at issue here, is attached as Exhibit 4 to the declaration that is being filed herewith. ISO requires the preparation of a Quality Manual that controls the manufacturing quality control process. In instances where a problem is reported, ISO requires the facility to investigate and prepare a written exception report describing the problem, the cause and the resolution. ISO certification requires periodic audits by third-party ISO auditors to insure continuing compliance with ISO standards, including the above reports.

Internal quality control documents, whether expressly prepared under ISO 9000 standards or not, are plainly relevant both to causation and to Okonite's state of mind when it made

representations to NSTAR Electric concerning the reliability of its product. For the reasons given above, these documents are subject to discovery.

D.    <u>Documents Relating To Replacement of the Cable</u>

<u>Request 13[b].</u> All documents that discuss or identify the reason(s) that Okonite replaced the submarine cable in 1996.

<u>Response.</u> Okonite objects to this request on the grounds that it is vague, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence. The replacement of the 1995 cable is irrelevant to this case. The reasons why Okonite replaced the 1995 cable, which have nothing to do with the splices, are unrelated to the Splice Failures in the 1996 cable. Moreover, Okonite repaired the failure in the 1995 cable, NStar still uses the 1995 cable, Okonite fully replaced the 1995 cable with the 1996 cable at its own expense, and the parties negotiated and agreed to apply the original Contract, including the ten-year warranty, to the 1996 cable. Without waiving these objections or any of the general objections, Okonite will produce all communications in its possession, custody, or control between NStar and Okonite concerning the 1995 cable, including the failure and replacement of the 1995 cable and all non-privileged documents in its possession, custody, or control concerning communications between NStar and Okonite concerning the 1995 cable, including the failure and replacement of the 1995 cable.

<u>Request 14.</u> All documents concerning communications between you and any person, including NSTAR, concerning replacements of part or all of the System, including but not limited to the replacement of a submarine cable in 1996.

<u>Response.</u> Okonite objects to this request on the grounds that it is vague, overbroad, duplicative of other requests, and not reasonably calculated to lead to the discovery of relevant or admissible evidence. The replacement of the 1995 cable is irrelevant to this case. The reasons why Okonite replaced the 1995 cable, which have nothing to do with the splices, are unrelated to the Splice Failures in the 1996 cable. Moreover, Okonite repaired the failure in the 1995 cable, NStar still uses the 1995 cable, Okonite fully replaced the 1995 cable with the 19956 cable at its own expense, and the parties negotiated and agreed to apply the original Contract, including the ten-year warranty, to the 1996 cable. Without waiving these objections or any of the general objections, Okonite will produce all communications in its possession, custody, or control between NStar and Okonite concerning replacement of the 1995 cableand all non-privileged documents in its possession, custody, or control concerning communications between NStar and Okonite concerning replacement of the 1995 cable. In addition, Okonite will permit NStar (or its representatives or attorneys) to inspect and copy at Okonite's headquarters in Ramsey, New Jersey all communications in its possession, custody, or control between NStar and Okonite concerning the Splice Failures or Okonite's replacement of Splices 2, 3, and 4 and the Splice 4 repair; all non-privileged documents in its possession, custody, and control concerning communications between NStar and Okonite concerning the Splice Failures or Okonite's replacement of Splices 2, 3, and 4 and the Splice 4 repair; and the records in its possession, custody, or control of Okonite's replacement of Splices 2, 3, and 4 and the Splice 4 repair.

It is not disputed that the cable Okonite initially installed failed, and that Okonite replaced it with the cable that subsequently failed on several occasions and that is at issue in this case. There is also no dispute that the cables are of the same type. The causes of the first cable's failure is relevant to determination of the causes of the second cable's failures. NSTAR Electric cannot simply take Okonite at its word when it asserts, as it does, that there is no relationship between the 1995 failure and the subsequent failures though 2003.

## CONCLUSION

For the foregoing reasons, NSTAR Electric requests that the Court grant its motion to compel and that it order Okonite to produce all documents responsive to the requests set out above and that it award NSTAR Electric its costs incurred in making this motion.

    Respectfully submitted,

    COMMONWEALTH ELECTRIC CO.,
    d/b/a NSTAR Electric
    By its attorneys:

    /s/ Daniel J. Lyne
    Daniel J. Lyne (BBO No. 309290)
    Theodore J. Folkman (BBO No. 647642)
    HANIFY & KING
    Professional Corporation
    One Beacon Street
    Boston, Mass. 02108
    (617) 423-0400

Dated: May 2, 2005
428690