UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

COMMONWEALTH ELECTRIC
COMPANY D/B/A NSTAR ELECTRIC,

                    Plaintiff,

    vs.

THE OKONITE COMPANY,

                    Defendant.

Civil Action No. 04-cv-11681-RCL

**THE OKONITE COMPANY'S MEMORANDUM IN
OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
AND IN SUPPORT OF ITS MOTION TO STAY DISCOVERY**

**Introduction**

Defendant The Okonite Company ("Okonite") submits this memorandum in opposition to

the Motion to Compel of Commonwealth Electric Co. d/b/a NStar Electric ("NStar") (the

"Motion to Compel") and in support of its Motion to Stay Discovery (the "Stay Motion").

Okonite opposes NStar's Motion to Compel because NStar has no need for the disputed

discovery, which is unduly invasive and overbroad given its lack of relationship to the elements

of NStar's claims under the circumstances.  NStar seeks to compel the production of documents

responsive to fifteen of the document requests (the "Disputed Requests") propounded in its First

Set of Requests for Production of Documents and Things (the "RFPs").  These Disputed

Requests seek information as to whether a defect caused the failure of several splices in a

submarine (undersea) cable that NStar purchased from Okonite to carry electricity from

Falmouth to Martha's Vineyard (the "Cable").  None of the reasons NStar provides in its

Memorandum in Support of its Motion to Compel ("Motion to Compel Mem.") justify the

discovery it seeks.  At the time that the splice failures occurred and before any litigation, Okonite

took responsibility for all the failures in the splices in the Cable and replaced them such that they

are, without dispute, fully functioning.  And Okonite will not rescind the responsibility it already

assumed for the failures in the splices, whether or not there was a defect in them.  Indeed, as

Okonite explained in its Memorandum in Support of its Motion for Summary Judgment and its

Reply to NStar's Opposition to Okonite's Motion for Summary Judgment (together, the

"Summary Judgment Memoranda"),[1] the parties do not dispute that Okonite immediately

assumed responsibility of remedying such failures without cost to NStar, that Okonite in fact

remedied such failures, that each time after Okonite did so the Cable was again fully functional,

and that the Cable continues to be fully functional to the present.  In other words, regardless of

whether or not the splice failures were caused by a defect,[2] NStar has received the full remedy to

which it was entitled for each failure.  As an even more preliminary matter, although NStar has

advanced a number of speculations for the cause of the failures, NStar's Opposition Mem. at 7-8,

strikingly absent from any of NStar's pleadings and materials is *any factual evidence whatsoever*

suggesting that any of these speculations actually explain the cause of the splice failures or that

---

[1] Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, Okonite incorporates (1) its Motion for Summary Judgment (the "Summary Judgment Motion"), (2) its Memorandum in Support of its Motion for Summary Judgment (the "Summary Judgment Mem."), (3) its Reply to Plaintiff's Opposition to its Motion for Summary Judgment (the "Reply Mem."), (4) the Affidavit of James V. Fitzgerald in Support of The Okonite Company's Motion for Summary Judgment ("Fitzgerald Aff."), (5) the Second Affidavit of James V. Fitzgerald in Support of The Okonite Company's Motion for Summary Judgment ("Fitzgerald Aff. II"), (6) the Affidavit of Andrea C. Kramer in Support of The Okonite Company's Motion for Summary Judgment, and all exhibits thereto ("Kramer Aff."), and (7) NStar's Opposition to the Okonite Company's Motion for Summary Judgment ("NStar's Opposition Mem.").

[2] In the introduction to its Motion to Compel Memorandum, NStar misleadingly states that Okonite claims it has no knowledge of why the Cable "fails" or whether the Cable "*is*" defective or not.  Motion to Compel Mem. at 1.  What Okonite has stated is that it cannot determine why the splices fail*ed*, and it has no information about whether defect caused the splice failures, nor does it believe such information exists.  Fitzgerald Aff. at ¶ 25.  Okonite also has no information or belief that the Cable *is* defective in any respect.  Okonite admits that certain splices in the Cable failed, but those splices have been replaced; therefore, whatever defects there might have been no longer exist in the Cable.

those speculations are in any way related to the elements of NStar's claim, which, essentially, is that the Cable might not last as long as NStar allegedly assumed it would last.[3]

There is good cause, as required by Rule 26(c) of the Federal Rules of Civil Procedure, for the Court to grant a stay of discovery pending the disposition of the Summary Judgment Motion. Most obviously, a decision in Okonite's favor would obviate the need for any discovery, including the discovery that NStar has moved to compel.[4] But even if the Court granted only partial summary judgment for Okonite, the scope of discovery could be greatly limited such that none of the disputed discovery would be necessary, thereby saving unnecessary expense and burden for the parties and the Court. Further, an order staying discovery prejudices no party (provided that the discovery deadline is then extended if the Court denies the Summary Judgment Motion) while promoting efficiency and cost-reduction.

## Background

This case concerns an electrical cable that runs undersea from Falmouth to Martha's Vineyard that Okonite manufactured and installed for NStar in 1996, pursuant to a 1994 contract between the parties, as amended in 1996 (the "Contract"). Fitzgerald Aff. at ¶¶ 5-7, 14, 16-17. Under that Contract, the Cable is subject to a warranty that (i) warrants for a ten year period that

---

[3] Although not part of its Motion to Compel, NStar also, gratuitously, suggests that Okonite has "refused" to answer NStar's "core interrogatory" to state the basis for Okonite's supposed contention that the method used to repair the Cable did not shorten the so-called expected working life of the Cable or reduce its carrying capacity or other performance attributes. Motion to Compel Mem. at 2. That is not in fact what Okonite has said, nor a correct statement of the parties' burdens. Okonite *denies* NStar's contention that the replacements shortened the expected working life of the Cable or affected any of its performance attributes. NStar, as the plaintiff, has the burden of proving its allegation by putting forth evidence. Okonite, as defendant, can refute that evidence without putting forth any evidence of its own. In any event, what Okonite said is that it has no evidence that the field splices adversely affected the Cable – because no such evidence exists. Fitzgerald Aff. at ¶ 25. The field splices are standard in the industry and were done with NStar's full knowledge and participation. *See id.* at ¶ 27. Indeed, NStar itself was the owner of the field splice kits that Okonite used to do the field splices. Exh. J. to Fitzgerald Aff. II. at ¶ 4. Thus, Okonite has not "refused" to answer the interrogatory – it has answered it, whether or not NStar approves of that answer.

[4] Nor is it true that NStar requires discovery to defend against the Summary Judgment Motion, as Okonite explained in its Reply Memorandum.

the cable will be "free from defects in material and workmanship," (ii) requires Okonite as its

sole responsibility under the warranty, "to repair or replace any and all defects within the [cable]

due to material and workmanship, without charge" to NStar during the ten year warranty period,

and (iii) which absolves Okonite from any "incidental or consequential damages whatsoever,

either direct or indirect, resulting for a failure" of the cable.  Exh. E to Kramer Aff. at OK00558.

Although three of the splices in the Cable and one of the repairs of a splice failed, Okonite

replaced the splices and the splice repair at its expense, and the Cable has been fully operational

over 91% of the time since its installation over eight years ago.  Fitzgerald Aff. at ¶¶ 23-24, 30.

There is no dispute that Okonite willingly, promptly, and at no charge to NStar replaced the

splices such that after each repair the Cable was again fully capable of carrying the electricity it

was intended to carry and that today the Cable continues to function as contemplated in the

Contract.

## ARGUMENT

## I.    NStar is Not Entitled to the Discovery It Seeks.

The Court should deny the Motion to Compel because NStar, the plaintiff, has failed to

set forth *any* factual basis for the various speculations it offers and because it has presented no

good reasons for why it needs the discovery it seeks.

The reality of the case before the Court is embodied in a few, undisputed facts.  NStar

purchased an underwater electrical cable from Okonite with five sets of factory splices.  Splices

2, 3, and 4 on one phase failed.  Fitzgerald Aff. at ¶ 23.  Okonite, at its expense, replaced those

splices.  *Id*. at ¶ 24.  Except for those failures, and one aberrational failure in a replacement

splice, which Okonite also replaced, the Cable has functioned without incident and continues *to*

*the present time* to function precisely as it was intended by the Contract.  *Id*. at ¶ 30.  When the

splice failures occurred, Okonite assumed responsibility and undertook all the activities required

4

to replace the failed splices without intervention of any court and without the need for legal proceedings of any kind. *Id.* at ¶¶ 23, 24. The fundamental question exists, then, why on these undisputed facts NStar even brought this litigation. More importantly for this Motion is the question of why NStar seeks to subject Okonite to discovery about issues that do not change anything.

Okonite and NStar have long had a commercial relationship. Okonite values that relationship and NStar as its customer. Okonite reflected its view in willingly replacing the first cable and the failed splices in the Cable. Yet inexplicably, NStar insists on maintaining this litigation and pursing wasteful, needless discovery. It is difficult, if not impossible, to understand NStar's motivation in imposing the travail and expense of this meritless litigation on the parties' relationship. Whatever may be NStar's motivation, though, in the final analysis, the discovery that NStar seeks in its Motion to Compel is unnecessary and unrelated to any claims in the case.

For the following reasons, NStar requests that the Court deny NStar's Motion to Compel and not lend its aid to NStar's conduct.

A.    **<u>NStar Has Failed to Put Forth Any Factual Basis that Would Justify Its Sweeping, Invasive Discovery.</u>**

In the Motion to Compel Memorandum, NStar claims it needs discovery as to the cause of the failures in the splices, but in fact NStar has already had the most effective discovery it could have: even before it brought this litigation, NStar had its experts examine and test the failed splices, and it witnessed, at Okonite's invitation, a dissection by Okonite of the failed splices. NStar thus already has all the information that Okonite has from these procedures. (And, in any event, Okonite has produced this information in this litigation.) In this respect, NStar's apparent portrayal of itself as unknowledgeable is disingenuous: from the very beginning, NStar

5

participated in the design of the cables, the installation of the cables, all the repairs in both cables, and the testing of the cable and the failed splices. Fitzgerald Aff. at ¶¶ 22, 26-28. Despite all this information, NStar has failed to put forth any factual basis for its claims. More to the point, despite the ample information NStar already has in its possession, it has failed to make even a minimal showing that it requires the requested discovery.[5] For example, as explained in more detail in the Summary Judgment Memorandum, at pages 1 through 2 and 2 n.1, and the Reply Memorandum, at pages 5-6 and 6 n.6, NStar has failed to put forth even a single piece of admissible *factual* evidence to show that the repairs themselves or the fault location or repair processes diminished the life of the Cable, which are the basis for NStar's claims. Litigants will be denied an opportunity for discovery if their complaints and affidavits have "not made even a minimal showing warranting the requested discovery." *MacKnight v. Leonard Morse Hosp.*, 828 F.2d 48, 51 (1st Cir. 1987).

Therefore, NStar is not entitled to discovery on its own unsupported, shot-in-the-dark speculations.

### B. NStar Has Failed to Make a Showing that It Requires The Disputed Discovery.

The crux of NStar's argument is that it requires discovery as to the cause of the splice failures because (i) it must prove defect to prove its claims, (ii) whether there is a defect is relevant to failure of essential purpose, and (iii) discovery should not be limited. None of these is a valid reason for requiring Okonite to produce discovery on these issues.

---

[5] Specifically, the crux of NStar's claims seems to be that it deserves an entirely new cable despite substantial use of the Cable for over eight years because (1) the testing of the Cable incident to the splice failures has diminished some hypothetical life expectancy of the Cable and (2) the field splices are non-conforming. Complaint, at ¶ 1, 20, 21; NStar's Opposition Mem. at 5-6, 14-16, and 18-19. Not only has NStar failed to put forth any facts supporting these speculations, *see* Summary Judgment Mem. at 9-10; Reply Mem. at 5-7, but nowhere has NStar explained how the Disputed Requests address these issues.

1.     <u>The Cause of the Splice Failures is Not Relevant to Any of NStar's Claims.</u>

a.     <u>*Breach of Contract and Express Warranty Claims.*</u>

NStar argues that it cannot establish Okonite's liability under the contract without showing that the splice failures were caused by a defect for which Okonite is responsible. Motion to Compel Mem. at 5 ("If such defects did not cause the cable failures that are the basis for NSTAR Electric's case, then NSTAR Electric will be unable to prove that Okonite breached the warranty."). That argument ignores the undisputed and very real fact that Okonite has never denied responsibility for the splice failures but instead assumed full responsibility for them by replacing the failed splices at no cost to NStar. As such, and as explained in detail in the Summary Judgment Memoranda, *even if* NStar can prove defect, NStar's claims still fail because Okonite has done all it is required to do under the exclusive remedy provision. To put this another way, since Okonite has repaired the Cable each time a splice has failed and did not contest its responsibility to do so, NStar's claims turn solely on whether the exclusive remedy provision that Okonite satisfied failed of its essential purpose. Because that issue does not involve the question of whether there is a defect, as explained below and in the Summary Judgment Memoranda, NStar requires no discovery as to the cause of the failures to prove its breach of contract and breach of warranty claims.

b.     <u>*Implied Warranty Claims.*</u>

NStar fails to offer even a single case in support of its argument that it has to prove that a defect caused the splice failures in order to show that the Cable could not pass without objection in the trade and that it was not fit for the ordinary purposes for which such goods are used. Motion to Compel Mem. at 5. Moreover, the Contract, through its exclusive remedy provision and detailed repair procedure, clearly contemplated that there might be failures in the Cable and

expressly provided how the failures would be remedied: by Okonite at Okonite's expense. Even

assuming there was a defect in the splices, the splices were taken out and any defects that might

have existed are gone. Therefore, because Okonite did not contest responsibility, as discussed

above, the *only* issue in this case concerns whether the exclusive remedy provision failed of its

essential purpose. Accordingly, NStar needs no discovery as to the cause of the splice failures

for its breach of implied warranty claims.

<em>c.    The Misrepresentation Claims.</em>

Lastly, NStar claims, again without any citation to law, that its misrepresentation claims

require proof that Okonite's pre-manufacture representations concerning the reliability of the

Cable were false. Motion to Compel Mem. at 5. Here, NStar seems to misapprehend its own

claims. NStar seems to argue that it could prove misrepresentation by proving the falsity of

alleged "representations" by Okonite that the Cable itself *would be* reliable. Indeed, NStar flat-

out states that the gist of its misrepresentation claims is that Okonite "misrepresented the

reliability of the cable in order to induce NSTAR Electric to buy it." *Id.* This is wrong. Given

that the Cable did not exist at the time that the purportedly false statements were made (i.e.,

during the bidding process in 1994), what NStar is essentially saying is that its misrepresentation

claim is premised on Okonite's promises of future performance. Promises (even if characterized

as representations) concerning the future quality of a product that has not yet been manufactured

cannot, however, be the basis of a misrepresentation claim. To sustain its claim of

misrepresentation, NStar must prove, among other things, that Okonite "made a false

representation of a material fact." *Barrett Assoc., Inc. v. Aronson,* 346 Mass. 150, 152 (1963).

The allegedly false statement of a material fact must be of ascertainable or knowable *fact*, not an

expression of intention or a promise about future performance. *Zimmerman v. Kent,* 31 Mass.

App. Ct. 72, 79 (1991)( "A statement on which liability for misrepresentation may be based must

8

be one of fact, not of expectation, estimate, opinion, or judgment. … A fact is something 'susceptible of knowledge." (citation omitted)); *see also Bishop Logging Co.*, 317 S.C. 520, 526-27 (App. Ct. 1995). Thus, "false statements of opinion, of conditions to exist in the future, or *of matters promissory in nature* are not actionable." *Yerid v. Mason,* 341 Mass. 527, 530 (1960)(emphasis added). The fraudulent representation must relate to a present or pre-existing fact, and it cannot ordinarily be based upon an unfulfilled promise to perform in the future or statements as to future events. Actionable statements of fact are generally characterized by what is susceptible of exact knowledge when the statement is made. *Bishop Logging Co.*, 317 S.C. at 527. Therefore, evidence concerning the cause of the failure, which at best could that prove that Okonite did not fulfill its future promises of reliability, can never prove the misrepresentation claims.

Accordingly, NStar has no need for any discovery as to the cause of the splice failures to prove its misrepresentation claims.[6]

---

[6] Insofar as NStar also argues in this part of the brief that it is entitled to documents concerning "Okonite's quality control, other cable failures for similar cables, quality exception reports, and the like," Motion to Compel Mem. at 6, those requests are not listed in this section of the brief and therefore are inapplicable. In any event, as Okonite indicated in its Responses to NStar's Interrogatories, there have been no other cable failures for similar cables due to defect, and therefore, not only does Okonite have nothing to produce in that respect, but any documents about those cables would only prove the truth, not falsity, of Okonite's statements about the historic reliability of its product.

Furthermore, for some of the requests, Okonite produced all relevant documents, to the best it could determine what the request sought. Thus, for Request No. 16, as the quoted response indicates, Okonite has produced all records representing the results of inspections or examinations of the removed splices, and to the extent Okonite has any communications between itself and any third party concerning the results of the testing of the removed splices that it has not yet produced, it will produce such documents. Likewise, for Request 7, Okonite produced, among other things, all non-privileged documents in its possession, custody, or control representing the results of testing, inspection, or examination of removed splices and all records in its possession, custody, or control of Okonite's replacement of the failed splices. Thus, it is not clear what else NStar thinks it needs. And it is telling that in all of that NStar found no factual support for its claims, as explained in the Reply Memoranda.

      2.      <u>Whether There Was a Defect in the Failed Splices That Were Replaced is
Not Relevant to the Issue of Whether the Exclusive Remedy Provision
Failed of Its Essential Purpose.</u>

NStar's *sole* support for its argument that the cause of the splice failures is relevant to the
issue of whether the exclusive remedy provision failed of its essential purpose is a case in which
the defendant denied any defect and, therefore, the plaintiff obtained no remedy.  Motion to
Compel Mem. at 7.  Unlike Okonite in this case, the defendant in that case refused to take
responsibility for the problem in its product.  *See H.B. Fuller Co. v. Kinetic Sys., Inc.*, 932 F.2d
681, 688 (7th Cir. 1991).  As such, the court *never* addressed the issue of whether the exclusive
remedy provision failed of its essential purpose because it found as a preliminary matter that the
problem in the product was unrelated to defect, and thus held that the remedy provision was not
even applicable.  That case, therefore, does *not* stand for the proposition that a buyer must prove
failure of essential purpose in order to prove breach of warranty, as NStar suggests, Motion to
Compel Mem. at 6; it stands for the proposition that where a defendant fails or refuses to remedy
a problem in its product, the plaintiff must show as a preliminary matter that the defendant is
responsible under the warranty and then must show failure of essential purposes.  In this case,
Okonite has never contested responsibility under the warranty and has in fact remedied the
problem in the Cable by fully replacing the failed splices.  Okonite has never required or even
asked NStar to prove a defect in the splices.  Okonite simply undertook replacement of the failed
splices *as if* there were a defect.  Therefore, the sole case cited by NStar is wholly inapplicable to
this case.

      Overall, NStar has failed to cite even a single case in which the cause of the product's
failure is a relevant inquiry for the issue of whether there has been a failure of the essential
purpose of the exclusive remedy provision, just as it failed to do in its Opposition Memorandum.
This is not surprising, for there is no such case.  As the Seventh Circuit made clear in the case

cited by NStar in its Motion to Compel Memorandum, the issue of remedy "presupposes the existence of breach of contract." *H.B. Fuller*, 932 F.2d at 681. Thus, the only questions for determining whether the exclusive remedy provision failed are (1) whether the seller repaired the product within a reasonable time and (2) whether the product actually worked after repair. *See* cases cited in the Summary Judgment Memorandum, at 8. Neither of these issues concern whether there is a defect in the product. In other words, the cause of the failure of the product and the failure of the essential purpose of the remedy are two separate inquiries. In this case, Okonite admits that certain splices in the Cable failed, and it willingly took responsibility for those splice failures by promptly replacing each failed splice in accordance with and as anticipated by the Contract. Okonite's Response to the RFPs, Nos. 7, 8, 13(a), 27, 28. As such, NStar's contract and breach of warranty claims depend *only* the second inquiry, whether the exclusive remedy provision failed of its essential purpose despite Okonite's replacement of the failed splices and the continued functionality of the Cable. Accordingly, NStar requires no discovery into the cause of the failures because even if the cause were a defect, it is irrelevant to the only pertinent question, which is whether the exclusive remedy provision failed of its essential purpose.

        3.      <u>There is No Basis for Requiring Okonite to Furnish the Remaining Disputed Discovery.</u>

        a.      *<u>Undersea Conditions.</u>*

NStar claims that it requires discovery as to undersea conditions in Vineyard Sound because it is "attempting to eliminate a potential theory of causation that Okonite may suggest, namely, that the environmental conditions in the Vineyard Sound caused one or more of the cable failures." Motion to Compel Mem. at 9. That might be true *if* Okonite ever contested responsibility for the splice failures. But for the reasons stated above, it does not matter one way

or the other whether environmental conditions in Vineyard Sound are the true cause of the splice

failures.  Okonite assumed responsibility under the warranty and replaced the failed splices.

Moreover, there is no basis for NStar to speculate that Okonite *might* put forth

environmental conditions as a reason for the splice failures.  Okonite has not suggested *any*

theory as to why the splices failed because Okonite believes that the cause of those failures is not

relevant and in any event cannot be determined, Fitzgerald Aff. ¶ 25.  Therefore, this argument is

nothing more than another example of NStar's throwing its fishing net broadly and randomly

without any recourse to the actual claims of the case.

Furthermore, NStar's sentence that "[t]o the extent that the failures are associated with

installing the cable improperly, or with recurring seabed conditions, than [sic] all of the alleged

'repairs' to date would fail to address the problem," Motion to Compel Mem. at 9, is nothing but

folly.  NStar has not advanced a single fact or made a single allegation concerning faulty cable

installation relating to the environmental conditions in Vineyard Sound (whatever that vague

phrase means) or concerning recurring seabed conditions.  Indeed, NStar nowhere even claims

what purported "fault" there was in the installation of the Cable.  Even the speculations put forth

by NStar itself as to the cause of the splice failures *nowhere* mention *anything* related to faulty

cable installation or recurring seabed conditions.  NStar's Opposition Mem. at 7-8.[7]  Once again,

then, the Court is presented with nothing more than bald assertions, which NStar is trying to use

to force Okonite to disprove liability.  This is backwards.  NStar is the plaintiff and is required to

have a factual basis for its claims before bringing them.  Okonite is the defendant and should not

be required to disprove every theory NStar might conjure.

---

[7] NStar's position also tries to make it seem like this litigation is occurring on a blank slate in which Okonite has lots
of information that NStar does not have.  Nothing could be further from the truth.  NStar representatives were
present at each and every splice replacement and at the subsequent testing of the failed splices.  Fitzgerald Aff. at ¶¶
26-27.

Accordingly, NStar does not require any of the requested discovery into the undersea conditions.

                           *b.*       *Quality Control Records.*

There are two distinct requests under this category, and they must be addressed separately. The first concerns the quality control records for the actual factory splices in the Cable, and the second concerns quality control records for the field splices that were made to repair the splice failures.

As to the second request, despite its objections, Okonite has produced to NStar all documents in its possession, custody, or control that would constitute "quality control" records concerning the field splices, at least as Okonite understands that vague and undefined term. That is to say, Okonite has produced all the records it has concerning the quality of the field splices: its testing of the replacement splices (i.e. the field splices) and any other records it has concerning the replacement of the splices. The dispute about this request is, therefore, moot.

As to the first request, NStar baldly asserts that the records it hypothesizes exist[8] "are plainly relevant both to causation and to Okonite's 'state of mind' when it made representations to NSTAR Electric concerning the reliability of its product." Motion to Compel Mem. at 11. This makes no sense. For the contract and warranty claims, the quality control records concerning the actual factory splices are not relevant to any of NStar's claims in this case for the reasons set forth above, namely that insofar as NStar argues that it requires the records to show

---

[8] NStar spends a lot of time arguing about what it believes ISO 9000 requires. Not only does this argument not show *why* NStar would be entitled to the hypothesized reports even if they existed, but many of NStar's statements in its argument are wrong. First, and significantly, Okonite did not self-certify as ISO compliant until 1997, as Exh. 3 to the Declaration of Theodore J. Folkman clearly states, not 1994 as NStar wrongly claims. This is significant because the Cable was manufactured in 1996, one year earlier. Second, though NStar claims that ISO requires "exception reports" be created "where a problem is reported," the ISO 9000-1994 standard to which Okonite complies does not require any specific reports to be done with regard to a post-delivery failure, as NStar seems to suggest. In this regard, it is telling that NStar lacks citation to the specific requirement it alleges.

defect, the issue of defect is not relevant to any claim in this case because Okonite assumed

responsibility for replacing the failed splices and did in fact replace the failed splices at its

expense and the Cable is fully operational.  For the misrepresentation claims, information

concerning quality control of the splices manufactured *in 1996* cannot possibly evidence

Okonite's state of mind *in 1994* when it made the specific statements that NStar claims are false.

Moreover, presuming that what NStar means by the "state of mind" element of its

misrepresentation claim is knowledge of the falsity of the statements at the time they were made,

such state of mind has nothing to do with the quality of the splices and everything to do with

Okonite's knowledge as to Okonite's products generally, specific sample testing, and the historic

performance of Okoguard, which is what the subject is of the statements that NStar claims are

false.

      Accordingly, NStar has no need for Okonite's quality control records concerning the

factory splices and has already received all of Okonite's records concerning the quality of the

field splices.

c.     <u>Replacement of the First Cable.</u>

      NStar claims it needs discovery into the cause of the failure in the first cable (the "1995

Cable") to prove defect in the second cable (i.e., the Cable or "the 1996 Cable").  Motion to

Compel Mem. at 12.  Not only does this argument fail for the reasons set forth above (that defect

is not relevant to any issue in this case because Okonite assumed responsibility for replacing and

in fact replaced the failed splices), but NStar's apparent attempt to portray itself as having no

knowledge concerning the two cables and their failures is beyond disingenuous.

      Okonite immediately admitted that the 1995 Cable was defective and needed to be

replaced.  Okonite did so – without litigation and at its cost.  Fitzgerald Aff. at ¶¶ 11-13.  NStar

knows that.  NStar also has always been fully conversant with the problems in the 1995 Cable,

14

and it knows fully well that the failures in the 1995 Cable, which failed somewhere other than a splice and could never carry its full electrical load, are unrelated to the failures in the splices in the 1996 Cable, which failed only in certain splices and can and does carry its full electrical load. *See* Fitzgerald Aff. II, at ¶ 3. Moreover, NStar knows that although both cables are rubber-insulated, underwater cables that contain splices and have armoring, the 1995 Cable had an overall jacket layer made from polyethylene that the 1996 Cable did not have, a significant difference, particularly in the manufacturing of the Cable. In these respects, NStar does not have to "simply take Okonite at its word," Motion to Compel Mem. at 12; it simply has to speak to its own engineers.

Therefore, NStar does not require discovery as to the cause of the failure in the 1995 Cable.

### B.     NStar's Motion Completely Ignores Okonite's Other Grounds for Objection.

NStar's Motion to Compel Memorandum completely ignores the other valid, justifiable grounds on which Okonite objected to the RFPs and instead relies on false and meaningless accusations as to Okonite's intentions and speculates that "Okonite's real objection is relevance." Motion to Compel Mem. at 4. Though Okonite's primary objection is that the requests do not seek information that is relevant to or likely to produce evidence admissible for any issues relevant to a determination in this case, Okonite's objections based on vagueness and undue burden are very real. NStar's requests are breathtakingly broad and ill-defined. The more vague NStar's requests are, the more difficult, expensive, time consuming, and oppressive it is for Okonite to determine and search for documents responsive to the myriad meanings of the requests. Unlike NStar, Okonite will not speculate. Because of its concerns about vagueness and the undue burden on Okonite of responding to the Disputed Requests as written, Okonite

took a good faith stab at narrowing NStar's requests to provide an accurate and reasonable response.

**II.    There is Good Cause to Grant An Order Staying Discovery In this Case Pending Disposition of the Summary Judgment Motion.**

This Court should issue an order staying discovery pending its disposition of the Summary Judgment Motion because (1) the Summary Judgment Motion may lead to dismissal of NStar's complaint in its entirety or at least to a narrowing of the issues that will obviate the need for certain discovery, (2) the stay will spare all parties the expense of undergoing burdensome and potentially unnecessary discovery and the Court from having to rule upon discovery disputes that may be immaterial, (3) granting a stay falls well within this Court's discretion under Rule 26(c) to control the timing of discovery, and (4) there is no prejudice from such a stay in that there is no reason to believe that witnesses or documents will not be available if discovery is delayed.

Federal Rule of Civil Procedure 26(c) grants the court authority to make any order staying or limiting discovery "which justice requires to protect a party … from annoyance, embarrassment, oppression, or undue burden or expense."  The First Circuit has stated that "[t]rial courts have broad discretion in determining the timing of pretrial discovery." *Dynamic Image Tech., Inc. v. U.S.*, 221 F. 3d 34 (1st Cir. 2000)(citing *Mack v. Great Atl. & Pac. Tea Co.*, 871 F. 2d 179, 186 (1st Cir. 1989)).  The Supreme Judicial Court held that it was not error for a trial judge to find that "any discovery entails 'annoyance, embarrassment, oppression, or undue burden or expense' to a party who, as a matter of law, is entitled to summary judgment." *E.A. Miller, Inc. v. South Shore Bank*, 405 Mass. 95, 100 (1989).

The Court has good cause to exercise its authority to stay discovery in the instant case. First, the Summary Judgment Motion is a dispositive motion on which Okonite may prevail.  If it

does, obviously no discovery is necessary.  Even if Okonite does not prevail in full, though, the

Court's decision on the Summary Judgment Motion very well may narrow or focus the issues in

the case, thus obviating the need for certain areas of discovery.  In this respect, the Summary

Judgment Motion addresses issues that should be dealt with preliminary to other issues in the

case.[9]  More specifically, as Okonite explained in its Summary Judgment Memoranda and above,

because it has fully replaced the failed splices and the Cable indisputably has worked thereafter,

regardless of the cause of the failures, NStar is not entitled to any of the relief it seeks as long as

the exclusive "repair or replace" remedy provision did not fail of its essential purpose.  If the

Court agrees that the undisputed facts are that the remedy provision did not fail of its essential

purpose, then there does not need to be any discovery in this case.  Even if the Court decides that

there are certain factual issues that must be decided to determine whether the exclusive remedy

provision failed of its essential purpose, the identification of those specific issues could narrow

the discovery.

Second, a stay is especially necessary where, as here, the party moving to compel has not

provided any facts to justify the discovery it seeks.  Despite having ample information

concerning the splice failures before commencement of this suit, NStar has not put forth *any*

*factual basis* for its speculations as to the cause of the splice failures.  In its Opposition

Memorandum, NStar offered speculation as to the cause of the failures, NStar's Opposition

Mem. at 7-8, but nowhere has it offered *any* factual basis for those speculations.  In a similar

situation, a District Court judge allowed the defendant's motion to stay discovery because the

defendant had a pending motion for summary judgment that concerned the "perhaps decisive

issue" of the matter.  *See Lunkenheimer Co. v. F.D.I.C.,* 1992 WL 142033 (D. Mass. 1992)

---

[9] NStar itself acknowledges that discovery must sometimes be limited until a preliminary issue is resolved.  Motion to Compel Mem. at 7.

("*Lunkenheimer I*"). In that case, the plaintiffs sought discovery to support their claims (i) that a written release existed, thereby absolving them from certain loan covenants and (ii) that a written agreement required that the defendant use certain funds to pay vendors. *Id.*; *Lunkenheimer Co. v. F.D.I.C.*, 1993 WL 207750, 5, 7 (D. Mass. 1993) ("*Lunkenheimer II*"). In its memorandum staying discovery, and in its later memorandum granting summary judgment on several counts to the defendant, the court noted that the only evidence supporting the discovery sought by the plaintiff was an affidavit asserting one of the plaintiff's "beliefs" that such written side agreements existed. *Id.* at 5, 7. The court held that evidence concerning no more than a "belief" was "too frail even to support plaintiff's discovery request." *Id.* at 7; *see Lunkenheimer I*, 1992 WL at 1. *See also E.A. Miller, Inc. v.* 405 Mass. at 99 (no error in staying discovery on issue of whether defendant acted in bad faith pending determination of defendant's summary judgment motion; plaintiffs did not meet "the threshold requirement of showing that they had some factual basis to support their claim" that the defendant acted in bad faith). Here, since NStar has not identified a shred of competent factual evidence to support any of its speculation, its factual basis is "too frail" to support its discovery request.[10] This fact alone more than justifies an order granting Okonite's motion to stay, as it did in *Lunkenheimer I* and *E.A. Miller*. To allow a party to obtain discovery without a minimal factual showing in support would reward mudslinging in the hopes that some of it sticks. *Cf. E.A. Miller, Inc.*, 405 Mass. at 100 (no error staying discovery where plaintiff did not meet threshold requirement of proffering some factual basis to support its claim that the defendant acted in bad faith).

---

[10] In this respect, any argument by NStar that it needs discovery from Okonite on these issues to make a factual showing is circular and puts the cart before the horse. NStar is the plaintiff and had the obligation to have a factual basis for its allegations before bringing its claims. Its failure to do so suggests that it is using the discovery process as a pretext for litigation it should never have brought. In this sense, allowing NStar discovery before it makes a factual showing to support its speculation will reward it for circumventing Rule 11's requirements.

Finally, a stay of discovery prejudices no parties in this case.  Rather, Okonite will experience oppression, undue burden, and expense if it is compelled to provide information that ultimately becomes moot as a result of its Summary Judgment Motion.  This harm to Okonite is irremediable, while NStar cannot show that it will suffer harm by a stay of discovery.  There is no reason to believe that documents or witnesses will not be available if a stay is granted, and to the extent that NStar expresses concern about its ability to conduct discovery within the window of the Court's case management order, Motion to Compel Mem. at 8, Okonite will not oppose a request for a revision of such order to allow discovery for an additional period of time.[11]

Therefore, Okonite respectfully requests that the Court stay all discovery (and therefore hold the Motion to Compel in abeyance) pending resolution of the Summary Judgment Motion.

## III.    NStar is Not Entitled to An Award of Costs.

Even if the Court grants NStar's Motion to Compel, NStar is still not entitled to be awarded its costs in bringing the Motion because Okonite's objections were reasonable and made in good faith.  Despite NStar's bald and unfounded accusations, Motion to Compel Mem. at 2, Okonite's purpose for interposing objections to NStar's broad, sweeping, and unnecessary discovery was, as it should be, to protect itself from unnecessary, invasive, harassing, and unduly burdensome discovery that is not focused on anything relevant to the case and/or that is so imprecise as to leave Okonite vulnerable to charges of failure to produce.  The arguments set forth above show that Okonite had a reasonable and good faith basis for objecting to the Disputed Requests and therefore an award of costs is not warranted.

## CONCLUSION

---

[11] In this regard, it is worth noting that the Cable, which is the subject of this lawsuit, is functional and functioning.

For the foregoing reasons, Okonite requests that the Court deny NStar's Motion to Compel and request for costs and grant its Motion to Stay Discovery pending resolution of its Summary Judgment Motion.

                                        Respectfully submitted,

                                        THE OKONITE COMPANY
                                        By their attorneys,

                                        /s/ Andrea C. Kramer
                                        Robert E. Sullivan, BBO # 487820
                                          sulli@swmlawyers.com
                                        Andrea C. Kramer, BBO #632584
                                          akramer@swmlawyers.com
                                        Rachel J. Valente, BBO #655239
                                          rvalente@swmlawyers.com
                                        Sullivan Weinstein & McQuay, P.C.
                                        Two Park Plaza, Suite 610
                                        Boston, MA  02116-3902
Dated:  May 19, 2005                      617-348-4300