UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMONWEALTH ENERGY CO., d/b/a NSTAR ELECTRIC,<br><br>Plaintiff,<br><br>vs.<br><br>THE OKONITE CO.,<br><br>Defendant | Civ. A. No. 1:04-CV-11681-RCL |

**PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS**

Pursuant to Fed. R. Civ. P. 34, the plaintiff, Commonwealth Electric Company d/b/a NSTAR Electric ("NSTAR"), requests that the defendant, The Okonite Company ("Okonite"), produce the following documents and things for inspection and copying at the offices of Hanify & King, P.C., One Beacon Street, Boston, Mass., at 10 a.m. on October 13, 2004.

DEFINITIONS AND INSTRUCTIONS

1.  The full text of the definitions set forth in Local Rule 26.5(C) is incorporated into this request.

2.  The term *"communication"* means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise). A request for communications "between you and any person" includes communications between or among your agents, officers, employees, subsidiaries, and parents.

3.  The term *"concerning"* means referring to, describing, evidencing, or constituting. Without limitation, call logs and similar documents are "documents concerning communications."

4. The term "*or*" is disjunctive but not exclusive, i.e., "A or B" means A, B, or A and B.

5. The terms "*you*," "*your*" and the like refer The Okonite Company, it agents, officers, employees, subsidiaries, and parents.

6. The term "*NSTAR*" refers to Commonwealth Electric Company d/b/a NSTAR Electric, its agents, officers, employees, subsidiaries, and parents.

7. The term "*Simplex*" refers to Simplex Technologies, Inc. of Portsmouth, New Hampshire, and its agents, officers, employees, subsidiaries, and parents.

8. The term "*Caldwell*" refers to Caldwell's Diving Company, Inc. and its agents, officers, employees, subsidiaries, and parents.

9. The term "*PLC*" refers to Power Line Constructors, and its agents, officers, employees, subsidiaries, and parents.

10. The term "*the Contract*" means the contract between you and NSTAR Electric dated August 19, 1994.

11. The term "*the System*" means the Submarine, Land and Optical Fiber Cable System between riser pole termination located on Easteville Ave. on Martha's Vineyard and the Falmouth Substation termination in Falmouth, Mass, installed pursuant to the Contract, including all submarine cables installed pursuant to the Contract and all repairs thereto or replacements made thereof.

12. The term "*System Failures*" means the failures in the System that occurred on or about August 15, 1997, November 25, 2000, October 25, 2003, and March 7, 2004.

13. If you withhold any document, or portion thereof, on a claim of privilege or under the work product rule, with respect to each document withheld state: (a) the author and

recipients; (b) its date; (c) the subject matter of the document; (d) the nature of the document (e.g., letter, e-mail, etc.); (e) the reason why the document is claimed to be privileged or to constitute work product; and (f) the paragraph of this request to which the document is responsive.

## REQUESTS FOR DOCUMENTS

1.  The Contract (including attachments and exhibits thereto), and all drafts and amendments thereto.

2.  All documents concerning the negotiation and execution of the Contract, including, but not limited to, all documents concerning the negotiation of the contents of the general terms and conditions and Exhibits A-I to the Contract.

3.  All documents concerning communications between you and any person, including NSTAR, concerning the Contract.

4.  All documents concerning communications between you and any person, including NSTAR, concerning the negotiation of the Contract, including all documents concerning the negotiation of the contents of the general terms and conditions and Exhibits A-I to the Contract.

5.  All documents concerning the design of the System, or proposals, ideas, or alternatives for the design of the System.

6.  All documents concerning communications between you and any person, including NSTAR, concerning the design of the System, or proposals, ideas, or alternatives for the design of the System.

7.  All documents concerning any System Failure, including documents concerning the causes or suspected causes of such failure(s).

8. All documents concerning communications between you and any person, including NSTAR, concerning any System Failures, including communications concerning the causes or suspected causes of such failure(s).

9. All documents concerning environmental, underwater and/or seabed conditions in the Vineyard Sound in the location of the System.

10. All documents concerning communications between you and any person, including NSTAR, concerning environmental, underwater and/or seabed conditions in the Vineyard Sound in the location of the System.

11. All documents concerning any repairs or replacements, or proposed repairs or replacements, to the System.

12. All documents concerning communications between you and any person, including NSTAR, concerning repairs or replacements, or proposed repairs or replacements, to the System.

13. All documents concerning any communications with Simplex, Caldwell or PLC concerning the System Failures or payment, indemnification or contribution to the cost of repairing or replacing any or all of the System due to System Failures.

13. All documents that discuss or identify the reason(s) that Okonite replaced the submarine cable in 1996.

14. All documents concerning communications between you and any person, including NSTAR, concerning replacements of part or all of the System, including but not limited to the replacement of a submarine cable in 1996.

15. All documents concerning costs you have incurred in making repairs or replacements to the System.

4

16. All documents concerning inspections or examinations of the System, or of any part thereof, made after a fault or failure.

17. All documents concerning communications between you and any person, including NSTAR, concerning inspections or examinations of the System, or of any part thereof, made after a fault or failure.

18. All documents concerning offers by you to NSTAR to repair or replace any portion of the System, including factory splices.

19. All documents concerning the advisability of replacing single-phase factory splices with "coffins" containing three splices.

20. All documents concerning communications between you and any person, including NSTAR, concerning the decision to replace single-phase factory splices with "coffins" containing three splices.

21. All factory splice quality control records for the System cable.

22. All field splice quality control records for the System cable.

23. All documents concerning the advisability of laying the System cable on the sea floor rather than beneath the sea floor.

22. All documents concerning communications between you and any person, including NSTAR, concerning the advisability of laying System cable on the sea floor rather than beneath the sea floor.

23. All documents concerning occasions on which the current running through the System has exceeded the System's designed tolerance.

5

24. All documents concerning communications between you and any person, including NSTAR, concerning occasions on which the current running through the System has exceeded the System's designed tolerance.

25. All documents concerning the decision to use cable with splices rather than a continuous run cable in the System.

26. All documents concerning communications between you and any person, including NSTAR, concerning the decision to use a cable with splices rather than a continuous run cable in the System.

27. All documents concerning errors or defects in the design, materials, workmanship or installation of the System.

28. All documents concerning communications between you and any person, including, but not limited to, NSTAR, concerning errors or defects in the design, materials, workmanship, or installation of the System.

29. All documents concerning any errors or defects in the maintenance of the System.

30. All documents concerning the costs you incurred to repair the System Failures.

31. All documents concerning the estimated costs of future repairs of the System or of replacement of the System cable.

32. All documents concerning any warranties provided to you by any third party for any piece, portion or component of the System.

33. All documents concerning claims you have made under any insurance agreement concerning the System Failures.

30. All documents concerning any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment that may be

6

entered in this action or to indemnify or reimburse for payments made to satisfy such a judgment.

31.  All quality assurance exception reports, or similar documents, for the manufacturing facility or facilities that manufactured the submarine cable used in the System from 1994 through the present date.

32.  All quality assurance audits prepared for the manufacturing facility or facilities that manufactured the submarine cable used in the System from 1994 through the present date.

33.  All corrective action reports, or similar documents, prepared for the manufacturing facility or facilities that manufactured the submarine cable used in the System from 1994 through the present date.

## REQUESTS FOR PRODUCTION OF THINGS

34.  All pieces or portions of the System that have been removed for repair, replacement, testing, or for any other purpose, within your possession, custody or control.

Respectfully submitted,

COMMONWEALTH ENERGY CO. d/b/a
NSTAR ELECTRIC

By its attorneys:

_____
Daniel J. Lyne (BBO No. 309290)
Theodore J. Folkman (BBO No. 647642)
HANIFY & KING, P.C.
One Beacon Street
Boston, Mass. 02108
(617) 423-0400

Dated: September 13, 2004

409976