UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMONWEALTH ELECTRIC COMPANY D/B/A NSTAR ELECTRIC,<br><br>        Plaintiff,<br><br>vs.<br><br>THE OKONITE COMPANY,<br><br>        Defendant. | Civil Action No. 04-cv-11681-RCL |

## OKONITE'S FIRST SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, defendant The Okonite Company ("Okonite") requests that plaintiff Commonwealth Electric Company d/b/a NStar Electric ("NStar") respond to the following interrogatories under oath within thirty days.

## Instructions

NStar should respond to these interrogatories in accordance with Rule 33 of the Federal Rules of Civil Procedure, Rule 33.1 of the Massachusetts District Court Local Rules, and all other applicable rules.

## Definitions

1.      The definitions contained in Local Rule 26.5 apply.

2.      In addition to the definition contained in Local Rule 26.5, "identify" means the following: (a) in the case of a communication, the date of the communication, the place of the communication, the means of the communication (written or oral), the identity of all persons who were parties or witnesses to the communication, and the substance of what was said or written by each party to the communication; and (b) in the case of a business, organization, or

entity, its full name, the address of its principal place of business, a short description of its business, and its affiliation with any of the parties to this case.

3.      "NStar" means the plaintiff and its officers, directors, employees, agents, attorneys, representatives, partners, subsidiaries, affiliates, related companies, and other business entities owned or controlled by NStar, and any other person acting on its behalf or under its control, as well as any predecessors-in-interest, including the Commonwealth Electric Co.

4.      "Okonite" means the defendant and its officers, directors, employees, agents, attorneys, representatives, partners, subsidiaries, affiliates, related companies, and other business entities owned or controlled by Okonite, and any other person acting on its behalf or under its control.

5.      "1995 cable" mean the submarine cable that was energized in May 1995. "1996 cable" means the submarine cable that was energized in December 1996

6.      "Contract" means the written contract between Okonite and Commonwealth Electric Co., dated February 8, 1995, and consists of "Section 1 – Contract" and "Section 2 – General Terms and Conditions" as well as any amendments to these sections.

7.      "Splice Failures" means the incidents to Splices 2, 3, and 4 of the green phase of the submarine cable and the Splice 4 repair that Okonite has not contested and is not contesting required repair or replacement under the warranty.

**Interrogatories**

1.      Identify all documents or statements that you contend comprise the contract between NStar and Okonite concerning the 1996 cable that you contend Okonite breached.

2.      Detail how Okonite purportedly breached its express or implied warranties and/or the Contract or any agreement between NStar and Okonite, setting forth all the facts upon which

you may rely to provide your contention that Okonite breached its express or implied warranties and/or the Contract or any agreement between NStar and Okonite.

3. State the basis for the allegation contained in Paragraph 1 of the Complaint that "[u]nder the terms of the Agreement, Okonite promised, *inter alia*, to provide NSTAR with a cable system 'free of defects,' and to perform all work under the Agreement in a 'good, acceptable and workman like manner.'"

4. State the basis for the allegation contained in Paragraph 6 of the Complaint that "Okonite's proposal repeatedly represented that its cables were of the highest quality."

5. State the basis for the allegation contained in Paragraph 1 of the Complaint that "[e]ach of these failures was caused by cable defects."

6. State the basis for the allegation contained in Paragraph 7 of the Complaint that "Okonite proposed a System that included splices because Okonite lacked the technology to produce a continuous run of cable of the length required for the System."

7. Identify all companies other than Okonite that submitted proposals in response to Commonwealth Electric Co.'s Request for Proposal, dated April 1994.

8. State the basis for the allegation contained in Paragraph 8 of the Complaint that "Okonite represented that the proposed splices would tie the individual cable lengths together flawlessly, and that the splices would not degrade the System or diminish the life expectancy of the System in any material respect."

9. State the basis for the allegation contained in Paragraph 9 of the Complaint that "[t]his representation [that all of the necessary splicing operations be performed at the factory, rather than splicing the cables together during the cable laying operation] was important to NSTAR because factory splices are performed in a controlled and clean environment."

10. Identify all the individuals involved in or in attendance at the August 19, 1994 meeting mentioned in Paragraph 10 of the Complaint.

11. State the basis for the allegation contained in Paragraph 10 of the Complaint that "[p]rior to and during the meeting, Okonite repeatedly represented that field splices would not be required at any location in the System, and that the cable circuit requirement would be supplied in one continuous length tied with factory splices only."

12. State the basis for the allegation contained in Paragraph 11 of the Complaint that "on or about August 19, 1994 NSTAR and Okonite entered into an agreement … for the purchase and installation of a +/- 38,000-foot submarine, land and optical fiber cable system connecting Falmouth, MA and Martha's Vineyard, MA for a purchase price of $3,122,106."

13. State the basis for the allegation contained in Paragraph 12 of the Complaint that "[t]he Agreement obligated Okonite to install the System using state of the art methods, procedures, equipment and specifically trained personnel such that a long period (40 years) of reliable service could be expected."

14. Identify and describe all the "oral and written representations and warranties" by Okonite, as referenced in Paragraph 14 of the Complaint.

15. State the basis for the allegation contained in Paragraph 17 of the Complaint that "[the first three failures occurred in the transition zone between the factory splice and the Cable. The most recent failure occurred within the splicing enclosure and adjacent to a field splice installed by Okonite during the course of a November 2003 repair to a faulty factory splice. Thus, both the nature and location of these failures are indicative of a defect in the design, manufacture and/or installation of both the original factory splices and the replacement field splices."

16. State the basis for the allegation contained in Paragraph 18 of the Complaint that the 1996 cable "originally had 15 factory splices" and "now has 23 splices, of which 8 are original factory splices and 15 are field splices that are bunched in unstaggered pairs of three inside of coffin boxes."

17. If you contend that the field splices are inferior in any way to the factory splices, state the basis for your contention.

18. State the basis for the allegation contained in Paragraph 19 of the Complaint that "[t]he System failures have resulted in significant interruptions of service to NSTAR's customers, and caused NSTAR and its customers to incur extraordinary expenses associated with responding to these failures, and in purchasing replacement power."

19. Describe (including dates and length and number of customers affected) all outages or interruptions in service experienced as result of the Splice Failures, including what alternative means of delivering electricity, if any, were used during the outages or interruptions in service.

20. Describe and identify all the testing referenced in Paragraph 20 of the Complaint.

21. State the basis for the allegations contained in Paragraph 20 of the Complaint that "[t]he testing required NSTAR to run high voltages through the Cable lessening the Cable's useful life." In responding to this interrogatory, state the basis for both parts of the allegation: (1) that the testing required NStar to run high voltages through the Cable and (2) that such testing allegedly lessened the Cable's useful life.

22. State the basis for the allegation contained in Paragraph 1 of the Complaint that "additional repairs would not provide NSTAR with an as-warranted cable system."

23. State the basis for the allegation contained in Paragraph 1 of the Complaint that "NSTAR is left with a defective cable system that cannot be relied upon to provide critical electric and data transmission capacity to Martha's Vineyard."

24. State the basis for the allegation contained in Paragraph 1 of the Complaint that "[r]epeated repair work has weakened the cable and diminished its life expectancy."

25. State the basis for the allegation contained in Paragraph 21 of the Complaint that "continued testing, cable raising, and field splicing will inevitably result in further damage and loss of useful life to an already defective System."

26. State the basis for the allegation contained in Paragraph 23 of the Complaint that "[i]nstead of a System that was reasonably expected to remain in operation for forty or more years, NSTAR is left with a defective System that cannot be adequately repaired."

27. State the basis for NStar's contention that the 1996 cable was reasonably expected to remain in operation for forty or more years, as alleged in Paragraph 23.

28.     State the basis for the allegation contained in Paragraph 32 of the Complaint that "[t]he goods Okonite sold to NSTAR pursuant to the Agreement were not of merchantable quality insofar as they would not pass without objection in the trade under the contract description."

29.     State the basis for the allegation contained in Paragraph 33 of the Complaint that "[t]he goods Okonite sold to NSTAR pursuant to the Agreement were not merchantable insofar as they were not fit for the ordinary purposes for which such goods are used." (¶33)

30.     State the basis for the allegation contained in Paragraph 37 of the Complaint that "NSTAR was relying on [Okonite's] skill or judgment to select or furnish suitable goods."

31.     Identify every statement or representation that NStar claims that Okonite made to NStar in connection with the 1996 cable that is false.

32.     State the basis for the allegation in Paragraph 46 of the Complaint that the alleged representations that "[t]he Okonite [insulation] system has performed flawlessly in a multiplicity of applications and in various types of installations, i.e., submarine cables..." and that "[w]ith over twenty-five years of service life experience in submarine applications, Okoguard provides a balance of properties that include reliability, flexibility, high ampacity rating and retained dielectric strength" were false.

33.     State the basis for the allegation in Paragraph 47 of the Complaint that the representations that "[t]he Okonite [insulation] system has performed flawlessly in a multiplicity of applications and in various types of installations, i.e., submarine cables..." and that "[w]ith over twenty-five years of service life experience in submarine applications, Okoguard provides a balance of properties that include reliability, flexibility, high ampacity

rating and retained dielectric strength" were "material to NStar's decision to accept Okonite's proposal."

34.     State the basis for the allegation in Paragraph 48 of the Complaint that "Okonite made the representations [that '[t]he Okonite [insulation] system has performed flawlessly in a multiplicity of applications and in various types of installations, i.e., submarine cables..." and that "[w]ith over twenty-five years of service life experience in submarine applications, Okoguard provides a balance of properties that include reliability, flexibility, high ampacity rating and retained dielectric strength'] with knowledge of their falsity for the purpose of inducing NSTAR to enter into the Agreement."

35.     State the basis for the allegation in Paragraph 49 of the Complaint that "NStar relied" on the representations that "[t]he Okonite [insulation] system has performed flawlessly in a multiplicity of applications and in various types of installations, i.e., submarine cables..." and that "[w]ith over twenty-five years of service life experience in submarine applications, Okoguard provides a balance of properties that include reliability, flexibility, high ampacity rating and retained dielectric strength" "to its detriment."

36.     Identify every third party that you have consulted at any time concerning any of the Splice Failures or the quality or life expectancy of the 1996 cable, and identify all documents that relate to such consultations, including, but not limited to, reports or summaries of such consultations.

37.     Identify your ten largest customers each year since 1994.

8

38.     Provide a detailed accounting and description of the damages you allege NStar suffered as a result of the Splice Failures or any of the purported wrongful acts and omissions of Okonite as described in the Complaint, including but not limited to its alleged breach of warranty (express or implied), breach of contract, misrepresentation (negligent or intentional), or unfair or deceptive trade acts or practices.

                                      THE OKONITE COMPANY
                                      By its attorney,

                                      /s/ Andrea C. Kramer
                                      Robert E. Sullivan, BBO # 487820
                                          sulli@swmlawyers.com
                                      Andrea C. Kramer, BBO #632584
                                          akramer@swmlawyers.com
                                      Sullivan Weinstein & McQuay, P.C.
                                      Two Park Plaza, Suite 610
                                      Boston, MA  02116-3902
Dated:  December 7, 2004           617-348-4300