# HK Hanify&King

**THEODORE J. FOLKMAN**
Direct Dial: 617-226-3451
Direct Fax: 617-305-0651
Email:   tjf@hanify.com

April 20, 2005

<u>BY FACSIMILE AND MAIL</u>

Andrea C. Kramer, Esq.
Sullivan Weinstein & McQuay, P.C.
Two Park Plaza, Suite 610
Boston, Mass. 02116

    Re:    <u>NSTAR Electric v. Okonite</u>

Dear Andrea:

This letter memorializes the discovery conference you, Dan, and I had this afternoon. Please let me know if you believe I have misstated the substance of the conversation.

<u>Okonite's Response to NSTAR Electric's Request for Production.</u>

1.    General Objection 4. We explained that we are interested in obtaining quality control documents, exception reports, and the like with respect to the 1995 cable in order to determine whether there was a systemic quality control problem. Because Okonite is ISO 9000 certified, we believe that it must have detailed exception reports, especially in light of the complete failure of the 1995 cable. You promised to ask your client whether it has such documents and to advise us of its answer.

2.    General Objection 5. We explained that the splice failures may have been caused by failures elsewhere in the system, and therefore we want information on "system failures" as that term was defined in our RFP. You stated that there were no "system failures," so defined. We would like you to confirm this statement in writing.

3.    General Objection 6. We explained that the Contract itself defines the agreement between the parties to include Exhibits A through I. You stated your position that the definition of the boundaries of the contract is a question of law for the court, notwithstanding the parties' agreement on that question.

Professional Corporation
Counsellors at Law

One Beacon Street
Boston, Massachusetts 02108-3107
Tel: 617-423-0400
Fax: 617-423-0498
www.hanify.com

HK        Hanify&King

Andrea C. Kramer, Esq.
April 20, 2005
Page 2

    4.    Request 1. We explained that we are interested in obtaining drafts of Exhibits A through I, since as explained above, we believe they are part of the Contract. You agreed to take this issue up with your client and let us know whether you will be willing to produce them.

    5.    Request 2. We explained that we are interested in obtaining communications between Okonite and Simplex and the other subcontractors and vendors concerning the negotiation of the Contract, including Exhibits A through I, both before and after Okonite submitted its bid to NSTAR Electric. You stated your view that the term "negotiation" limited our request to documents created after Okonite submitted its bid. We stated our position that in any case, the documents we are seeking are within the scope of requests 3 and 4. We intend to move to compel on this issue.

    6.    Requests 5, 6, 7, 8, 9, 10, 11, 12, 13[a], 13[b], 14, 16, 17, 18, 21, 22[a], 22[b], 23[a], 27, 28. Some of these requests elicited the objection that facts concerning the cause of the cable failures are irrelevant and not discoverable. You stated your position that the only issue in the case is whether the warranty failed of its essential purpose. We stated our position that the causes of the cable failures is relevant to the question whether the warranty did fail of its essential purpose. I add that they are also relevant to the actionability of Okonite's representations concerning the reliability of its product, since we will have to prove that the cable failed because of its design, manufacture, installation, etc. in order to prevail on those claims. We intend to move to compel on this issue.

    Other of these requests (there is some overlap) elicited an objection to the scope of the discovery. Okonite's response states that it has produced only communications between Okonite and NSTAR Electric, not internal Okonite documents, and not communications between Okonite and third parties. You agreed to consult with your client about producing such documents.

    7.    Requests 11, 12, and 18. We agreed that you will amend your response to state that Okonite did not consider any methods of repair other than the method it used. You also agreed to consider producing internal and external documents concerning the advisability of Okonite's offer to replace splice sets 1 and 5.

    8.    Request 15. You agreed to identify the documents that are responsive to this request. You also stated that in addition to a summary page, you produced the documents that underlie the summary.

**HK    Hanify&King**

Andrea C. Kramer, Esq.
April 20, 2005
Page 3

    9.    Requests 19, 20. We agreed that we will revise these requests in order to address your objection that the word "advisability" is vague. I add that we will also revise the requests to define the term "coffin."

    10.    Requests 23[b], 24, and 29. You stated that Okonite has no documents responsive to these requests. We would like you to confirm this statement in writing.

    11.    Requests 25 and 26. You stated that Okonite does not have the capacity to produce continuous-run cable. We would like you to confirm this statement in writing.

    12.    Request 30. You stated that you have produced all documents concerning out-of-pocket expenses. We would like you to confirm this statement in writing.

    13.    Requests 31[c], 32[b], and 33[b]. You have the same relevancy objection to these requests as you have to some of the requests noted in ¶ 6, above. We intend to move to compel concerning that objection. We also clarified that "quality assurance exception report," "quality assurance audit," and "corrective action report" are terms of art in ISO 9000 practice, and we thereby resolved the vagueness objection to these requests. You stated your position that the information requested is proprietary, and we agreed to discuss an appropriate confidentiality order if the other objections are overcome.

NSTAR Electric's Response to Okonite's Request for Production

    14.    Request 12.    Our response objected to the phrase "contract or agreement." We believe, and will confirm for you, that we did not withhold any documents on account of this objection.

    15.    Request 13.    You will add the phrase "splices in the" after the word "concerning" in the second line of this request. We believe, and will confirm for you, that there are no documents responsive to the amended request that we have not already produced.

    16.    Requests 20 and 22. We objected to the term "power dispatcher." We believe, and will confirm for you, that we did not withhold any documents on account of this objection.

**HK    Hanify&King**

Andrea C. Kramer, Esq.
April 20, 2005
Page 4

 17. Request 50. We objected to the term "quality." You stated that "quality" means durability, reliability, longevity, etc. We believe, and will confirm for you, that we did not withhold any documents on account of this objection.

 18. Request 51. We requested that you restate your request in writing, and we will attempt to respond to the restated request.

 19. Requests 66 and 67. You stated your position that these requests are relevant to NSTAR Electric's claim for damages. We will confirm with our client whether we are seeking damages for lost revenue for failure of the cable and will advise you.

 20. Requests 69 and 70. These requests present the same issue as requests 66 and 67. My notes indicate you said you would move to compel. It seems to me that we should treat number 69 and 70 as we will treat 66 and 67. That is, we will confirm with our client whether we are seeking damages for lost revenue for failure of the cable and will advise you. Of course, you are free to move to compel if you wish.

 21. Request 71. You stated that we had made the same relevancy objection that you had made in Okonite's response to our client's RFP. We offered to drop our objection if you would drop yours, and you demurred. You will file a cross-motion to compel on this issue if we are successful on our motion to compel.

 22. Request 77. We believe, and will confirm for you, that we did not withhold any documents on account of our vagueness objection.

<u>NSTAR Electric's Interrogatories to Okonite</u>

 23. Interrogatory 1. You stated that Okonite's response to this interrogatory has not changed. We would like you to confirm this statement in writing.

 24. Interrogatory 2. You stated that Okonite will amend its response to indicate that has no evidence that a defect contributed to the system failures. You also stated that Okonite has no opinion concerning the existence of defects. We asked you to consult with your client and to serve a response stating, in substance: "Okonite doe not know whether there was a defect that contributed to the system failures." You agreed to consult with your client about this.

HK   Hanify&King

Andrea C. Kramer, Esq.
April 20, 2005
Page 5

  25. Interrogatory 3. We stated that we were interested in knowing whether Okonite had performed any studies on diminishment of the lifespan or quality of the 1996 cable. We intend to move to compel on this issue.

  26. Interrogatories 4, 6, and 7. Okonite's responses referred to Rule 33(d). You agreed that you will supplement your responses to provide the information requested in the interrogatories.

  27. Interrogatory 8. You stated your position that the interrogatory is unduly burdensome. We offered to strike the word "marketing" from the interrogatory if you would identify the persons principally responsible for manufacturing and installation. You agreed to consult with your client on this issue.

  28. Interrogatory 9. You stated that you intend to supplement your response to this interrogatory. You also stated that paper cables are entirely different than EPR cables. We agreed to consult our client to determine whether we are interested in obtaining information concerning paper cables. You also agreed to consult with your client concerning our request that you identify customers A, B, and C by name and that you provide location information concerning customer B. You also stated that "rubber" is synonymous in your response with "EPR."

  29. Interrogatory 10. Again, you stated that "rubber" is synonymous in your response with "EPR."

  30. Interrogatory 12. You stated that you would supplement Okonite's response and identify the tests responsive to the interrogatory.

Okonite's Interrogatories to NSTAR Electric

  31. Interrogatories 5, 15, 17, 21, 22, 23, 24, 25, 26, and 32. NSTAR Electric objected to these interrogatories on the grounds they call for expert opinion evidence. You stated that you are seeking the factual basis for contentions, not expert opinion. We agreed to consider your position.

  32. Interrogatories 8, 9, and 11. You stated your position that NSTAR Electric has not met the requirements of the Local Rules with regard to "stating the basis" for contentions set out in the interrogatories. We agreed to consider your position.

**HK    Hanify&King**

Andrea C. Kramer, Esq.
April 20, 2005
Page 6

33.   Interrogatory 18. We agreed to provide you a date by which we will supplement sections A and B of our response to the interrogatory. We also agreed to consider your request to state the basis for NSTAR Electric's allegations concerning costs incurred by NSTAR Electric's customers.

34.   Interrogatory 19. We agreed to consult with our client and confirm for you whether the on-Island power was generated by NSTAR Electric or by another company.

General Issues

35.   You agreed to provide a signed version of the interrogatory responses.

36.   You agreed to provide the final version responses to NSTAR Electric's discovery requests, rather than responses with bracketed material suggesting the responses were not yet complete.

37.   You stated that you had no responsive privileged documents, and that you had been unable to locate the single potentially privileged document, which may have concerned failure causation, that you mentioned to me in our earlier telephone conversation. I request that you ask your client to send an e-mail or memorandum to all relevant employees instructing them to review their files and computers for the document and that you inform me of the steps you have taken to locate it.

Sincerely,

Theodore J. Folkman

427624
cc:   Daniel J. Lyne, Esq.