## SULLIVAN WEINSTEIN & MCQUAY
A PROFESSIONAL CORPORATION
COUNSELLORS AT LAW

ANDREA C. KRAMER
(617) 348-4380
AKramer@swmlawyers.com

June 23, 2005

**By Hand-Delivery**

Mr. Theodore Folkman
Hanify & King
One Beacon Street
Boston, MA 02108

      **Re:**    **Commonwealth Electric Company d/b/a/ NStar v. The Okonite Company;**
             Civil Action No. 1:04-CV-11681 (RCL)

Dear Ted:

      This is to follow up on our discovery conference in April. Since then you moved to compel the so-called "causation" documents and we opposed that motion, so obviously you understand that we declined your request to provide those documents. This letter is in response to the other issues you raised concerning our responses, as outlined in your letter of April 20, 2005.

Okonite's Response to NStar's Requests for Production

      1.    General Objection 4: We will not revise our objection. Furthermore, as I explained during our conference, to the extent that a different definition leads to a change in our production, that issue should be addressed in the context of a specific request. Your letter does not explain how a change in this objection would lead to production of the documents you list. The objection stands.

      2.    General Objection 5. To the best of Okonite's knowledge, there were no system failures in the cable system, as that term is defined in NStar's RFP. Okonite stands by its definition.

      3.    General Objection 6. Your recounting of what I said is not entirely accurate. What I stated was that despite what the "agreement" states, the determination of what constitutes the "contract" is a question of law, and based on our understanding of the law and the intent of the parties, Okonite does not agree that every statement in the exhibits is a part of the terms of the parties' contract.

      4.    Request 1. Okonite maintains its objection.

Theodore Folkman, Esq.
June 23, 2005
Page 2

     5.     Request 2. You stated that you intend to move to compel; therefore, there does not seem to be an issue to discuss here. If, however, you will agree not to move to compel, Okonite is willing to produce to NStar all communications between Okonite and Simplex or other subcontractors concerning the negotiation of the contract, which Okonite continues to define as the events between the awarding of the bid in August 1994 and the signing of the contract in February 1995.

     6.     Requests 5, 6, 7, 8, 9, 10, 11, 12, 13[a], 13[b], 14, 16, 17, 18, 21, 22[a], 22[b], 23[a], 27, and 28. The first issue (concerning what you have termed Okonite's "relevancy" objection) has already been addressed in NStar's motion to compel and Okonite's opposition. As to second issue (concerning the other objections Okonite interposed to these requests), Okonite still maintains that the requests are vastly overbroad and the other objections stand, but Okonite will nevertheless produce certain internal documents and communications, as identified in Okonite's Amended Response to NStar's First Set of Requests for Production.

     7.     Requests 11, 12, and 18. Upon further reflection, Okonite declines NStar's request to amend its response to the document requests to include affirmative statements about what Okonite did or did not do. Okonite has no obligation in response to a document request to do other than state its objections and indicate what documents it is providing. It has done that. I offered you the opportunity to clarify what NStar meant in these requests. You declined to do so. It appears, then, that the requests and responses stand as they are.

     Your statement that I agreed to consider producing internal and external documents concerning the "advisability" of Okonite's offer to replace splice sets 1 and 5 is misstated. First, none of the three requests you identify in your letter use the word "advisability." Second, I explained to you during our conversation that the word "advisability" was not clear and to Okonite had no meaning and thus Okonite could not respond to any request involving that word. Rather, what I agreed was that I would discuss with my client producing documents concerning Okonite's offer to NStar to replace splice sets 1 and 5 when it did the last repair. I have done that, and Okonite will produce such documents. Okonite's Amended Response to NStar's First Set of Requests for Production has been changed accordingly.

     8.     Request 15. I believe that what I agreed was to amend Okonite's responses to NStar's interrogatories where Okonite relied on Rule 33(d) of the Federal Rules of Civil Procedure. Okonite has amended its responses to interrogatories accordingly, and Rule 33(d) does not apply to document requests. In any event, even though the information is readily ascertainable by NStar since the "cost" documents are clearly grouped together in Okonite's production, Okonite states that the documents it produced in response to Request 15 are those labeled OKO 00559–00706.

     9.     Requests 19 and 20. We are still awaiting your revisions.

     10.     Requests 23[b], 24, and 29. Okonite's response requires no change. It already states that Okonite does not (to the best of its knowledge) have such documents in its possession,

custody, or control. We have not withheld any documents on the basis of the objections; the only document that Okonite has that might be responsive to this request is a printout that NStar provided to Okonite, at OKO 1106-1128.

11. Requests 25 and 26. Okonite's responses are sufficient and will not be amended. Okonite is under no obligation to make affirmative statements in response to document requests. Furthermore, your recounting of what I said is inaccurate. Okonite most certainly has the capacity to produce continuous-run cable. It does not, however, have the manufacturing capacity to produce continuous-run cable of the length required by NStar for the cable that runs from Falmouth to Martha's Vineyard. I hope that statement suffices.

12. Request 30. Again, your statement of what I said is not accurate. I stated, as is stated in Okonite's response, that Okonite produced documents sufficient to identify and quantify the dollar amounts that Okonite paid in out-of-pocket expenses for the repairs of splice sets 2, 3, and 4. To be clear, Okonite has not produced all documents concerning its out-of-pocket expenses; it has produced all the invoices for those expenses as well as a summary sheet. As indicated in paragraph 8 above, these documents can be found at OKO 00559–00706.

13. Request 31[c], 32[b], and 33[b]. There does not appear to be any further action required on these requests at this time. Moreover, despite your clarification of the various terms, Okonite maintains its "relevancy" objections and the position set forth in its opposition to NStar's motion to compel.

Okonite's Amended Responses to NStar's Requests for Production and the additional documents Okonite is producing will be sent under separate cover.

NStar's Responses to Okonite's Requests for Production

14. Request 12. No further action required.

15. Request 13. No further action required.

16. Requests 20 and 22. No further action required.

17. Request 50. No further action required.

18. Request 51. The restated request is as follows:

> All documents concerning any alleged diminution in the useful life, longevity, quality, reliability, or durability of the 1996 Cable due to the Splice Failures, the testing before or after the Splice Failures, the repairs or replacements to the 1996 Cable, and/or the use of splice boxes (a.k.a. field splices) on the 1996 Cable.

Theodore Folkman, Esq.
June 23, 2005
Page 4

    19.    Requests 66 and 67. No further action required.

    20.    Requests 69 and 70. As I mentioned to you during our conversation, these requests are not the same nor do they have the same purpose as Requests 66 and 67. Under the case law concerning failure of essential purpose, one of the issues is whether the buyer has had substantial use of the product. NStar has generated significant revenues from its use of both cables. These revenues are relevant to Okonite's defense that the exclusive remedy provision did not fail of its essential purpose. We reserve our right to move to preclude, for sanctions, or to compel if you continue to refuse to provide these documents.

    21.    Request 71. This is in abeyance pending the resolution of NStar's motion to compel.

    22.    Request 77. No further action required.

Okonite's Response to NStar's Interrogatories

    23.    Interrogatory 1. Okonite's response has not changed.

    24.    Interrogatory 2. Okonite has amended its response.

    25.    Interrogatory 3. No response is required.

    26.    Interrogatories 4, 6, and 7. The interrogatories have been amended accordingly.

    27.    Interrogatory 8. We have amended our response accordingly such that it now identifies the persons principally responsible for manufacturing and installing the 1996 cable.

    28.    Interrogatory 9. We have amended our response, as I indicated we would. We are still awaiting your consultation with your client about whether you want information about PILC (so-called paper) cables.

    29.    Interrogatory 10. No response is needed.

    30.    Interrogatory 12. We have amended our response accordingly.

Okonite's Amended Responses to NStar's Interrogatories are enclosed.

NStar's Responses to Okonite's Interrogatories

    31.    Interrogatories 5, 15, 17, 21, 22, 23, 24, 25, 26, and 32. Per your letter of May 18, 2005, you have declined to amend these responses. We continue to believe that they are insufficient and that you are misreading the Local Rules definition of "state the basis," which has four parts, not three as you indicated in your letter (paragraph 4), the last one of which requires

Theodore Folkman, Esq.
June 23, 2005
Page 5

you to "state separately any other **fact** which forms the basis of the party's information regarding the alleged facts or conclusions." Whatever facts NStar has it must state, regardless of whether it subsequently communicated those facts to counsel. Moreover, insofar as the communications of NStar to counsel in and of themselves cannot form the basis of NStar's factual allegations, the facts communicated to NStar's counsel must be divulged to Okonite. We can only assume, as we have stated, that there is no factual basis for NStar's allegations since you have continued to provide any.

32. Interrogatories 8, 9, and 11. You responded that you continue to believe that NStar's response to Interrogatory 9 is sufficient. For the reasons outlined above, we likewise maintain our position. You have failed, however, to respond to whether you intend to amend your response to Interrogatories 8 and 11. On May 20, 2005, you stated in your letter that you are preparing a response. We have yet to hear anything. We reserve our right to move to preclude, for sanctions, or to compel if we do not have a response by Monday, June 27.

33. Interrogatory 18. You agreed in April to provide a date by which you would supplement sections A and B of NStar's response. To date, you have failed to provide that date or provide a response. We reserve our right to move to preclude, for sanctions, or to compel if you do not amend the response by Monday, June 27.

34. Interrogatory 19. You agreed to consult with your client to confirm whether on-Island power was generated by NStar or another company. Please send your response by Monday, June 27.

General Issues

35. Okonite's interrogatory responses are now signed. The enclosed Amended Responses include a faxed signature. We will send the original signature once we receive it.

36. What I agreed was to send you the final version of Okonite's responses to the document requests because the next-to-last version was erroneously sent to you. I suppose in that respect they were not complete, but the only difference was that the responses were not copied as indicated on the draft responses.

37. We decline your invitation.

Sincerely,

*Andrea Kramer*

Andrea C. Kramer