UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

COMMONWEALTH ELECTRIC
COMPANY D/B/A NSTAR ELECTRIC,

                    Plaintiff,                    Civil Action No. 04-cv-11681-RCL

    vs.

THE OKONITE COMPANY,

                    Defendant.

### THE OKONITE COMPANY'S MEMORANDUM IN
### SUPPORT OF ITS MOTION TO COMPEL ANSWERS TO INTERROGATORIES

Defendant The Okonite Company ("Okonite") submits this memorandum in support of its Motion to Compel Answers to Interrogatories. Okonite has moved, pursuant to Rule 37(a) of the Federal Rules of Civil Procedure, to compel the Plaintiff Commonwealth Electric Company d/b/a NStar Electric ("NStar") to respond fully to interrogatories numbered 5, 8, 11, 14, 15, 17, 18, 21, 22, 23, 24, 25, 26, 31, 32, and 36 in Okonite's First Set of Interrogatories.

### Introduction and Background

This case concerns a 37,000-foot, rubber-insulated submarine cable that runs from Falmouth to Martha's Vineyard (the "Cable") that Okonite manufactured and installed for NStar in 1996, pursuant to a Contract (the "Contract"). Three times since the Cable was energized in December 1996, there has been a failure in one of the original fourteen factory splices in the Cable. Each time, Okonite has promptly, willingly, and successfully replaced the failed factory splice with a field splice at no cost to NStar, and after each replacement, the Cable has again carried its intended electrical load, as it has for the vast majority of time since energization.

1

There was also a failure in one of the repair splices, which Okonite likewise repaired promptly, willingly, and successfully at no cost to NStar.

Based on these four splice failures, NStar claims that the Cable is defective and, therefore, it is entitled to an entirely new cable, despite NStar's use of the Cable for the vast majority of time since it was energized.  As NStar knows, however, its contract and warranty claims cannot survive the exclusive remedy provision of the Contract if all that it alleges is that the Cable contains a defect because the Contract provides that the exclusive remedy for a defect in workmanship or materials is repair or replacement, at Okonite's choice.  Because Okonite undisputedly readily, willingly, and successfully repaired the Cable each time and NStar has had substantial use of the Cable, that exclusive remedy provision applies and has been satisfied.

To avoid the clear application of the exclusive remedy provision, which under the Uniform Commercial Code is valid unless it fails of its essential purpose, NStar has concocted two theories: (1) that the industry-standard replacement splices, which NStar itself purchased for repairs of the Cable as part of the Contract, diminished the quality or the life of the Cable and (2) that the testing and repair process, which NStar participated in and which is common in the industry, somehow harmed the Cable.  Without these theories, NStar's claims clearly fail.  NStar has, however, refused to provide the factual evidence supporting these theories, instead hiding behind the Court's expert disclosure timeline, thus forcing Okonite to undergo cumbersome, expensive, and time-consuming discovery based simply on NStar's bald conjecture.  Rule 11 requires that NStar have *factual* support for its allegations.  NStar should be required to provide that factual support during the fact discovery phase of this litigation or its claims should be dismissed for failure to have such factual support – for in the absence of such factual support its theory is mere conjecture, and mere conjecture cannot be the basis for maintaining a lawsuit.

More than a year after NStar initiated this lawsuit, it is time – or long past time – for NStar back up its bald allegations or have its case dismissed.

With respect to the interrogatories at issue in this Motion, NStar objected to or failed to answer thirteen interrogatories that seek to discover the facts forming the basis of certain allegations NStar made in its Complaint, which can grouped into four categories: (1) those that concern NStar's allegations that Okonite's repairs have diminished, and any future repairs will diminish, the life or quality of the Cable (Nos. 5, 15, 21, 22, 23, 24, 25, 26); (2) one that concerns NStar's allegations that the field splices that Okonite used to replace the failed factory splices are inherently inferior to the factory splices (No.17); (3) those that concern NStar's allegations that Okonite made certain representations about the quality and nature of the Cable that allegedly were false (Nos. 8, 11, 32); and (4) one that concerns the effect of system failures on NStar and its customers (No. 18). The remaining three interrogatories at issue in this Motion are ones for which NStar agreed to revise its answer but to date has failed to do so, despite reminders (Nos. 14, 31, and 36). Okonite requests that NStar be compelled to answer these sixteen interrogatories immediately because the information they seek is discoverable, NStar's objections are unfounded and/or nonresponsive, and disclosure of such information at this time is necessary for the preparation of Okonite's defense.

Okonite also requests that the Court award its costs and attorneys' fees associated with the filing of this Motion because NStar had no substantial justification to refuse to answer.

Counsel for Okonite has conferred on a number of occasions with counsel for NStar regarding these interrogatories, but have been unable to reach agreement.[1]

---

[1] On April 20, 2005, counsel for both parties conferred by telephone conference, which lasted over an hour and a half. The parties continued their attempts to confer and reach agreement by letters dated April 20, 2005, May 18, 2005, June 23, 2005, and July 8, 2005 (attached to the Motion to Compel as Exhibits C-F, respectively). The parties were able to reach agreement with respect to a number of discovery requests. However, the parties have been

**Argument**

I.    **THE COURT SHOULD COMPEL NSTAR TO PROVIDE FULL AND COMPLETE ANSWERS TO ALL THE DISPUTED INTERROGATORIES.**

    A.    **Okonite is Entitled to the Complete Factual Basis of NStar's Allegations That The Cable is Defective and That the Repair Process or the Replacement Splices Have Diminished or Will Diminish the Quality or Life of the Cable (Interrogatories 5, 15, 21, 22, 23, 24, 25, and 26).**

Eight of the disputed interrogatories concern NStar's allegations that the Cable is

defective or that the repair process or replacement of the failed splices has caused damage to the

Cable.[2]  These interrogatories and NStar's responses are as follows:

5.    State the basis for the allegation contained in Paragraph 1 of the Complaint that "[e]ach of these failures was caused by cable defects."

    <u>Response.</u>  Objection.  This interrogatory calls for expert opinion evidence.  NSTAR Electric has not yet identified a testifying expert.  NSTAR Electric will provide an expert report stating the basis for its allegations that the failures were caused by cable defects in accordance with the applicable Rules of Civil Procedure and the case management schedule in this action.

15.    State the basis for the allegation contained in Paragraph 17 of the Complaint that "[the first three failures occurred in the transition zone between the factory splice and the Cable. The most recent failure occurred within the splicing enclosure and adjacent to a field splice installed by Okonite during the course of a November 2003 repair to a faulty factory splice. Thus, both the nature and location of these failures are indicative of a defect in the design, manufacture and/or installation of both the original factory splices and the replacement field splices."

---

unable to reach agreement with respect to the interrogatories that are the subject of this Motion.  More precisely, the parties were unable to reach agreement on Interrogatories 5, 17, 21, 22, 23, 24, 25, 26, 32, and 36.  For Interrogatories 8,  11, 14, 18, 31, and 36, counsel for NStar agreed to provide complete responses.  Some were agreed to by letter dated May 18, 2005, Ex. D, and others were agreed to during a telephone conference on July 20, 2005.  Regardless, by agreement the responses were finally due by Friday, July 29, 2005.  Counsel for Okonite verbally agreed to extend that deadline one week.  To date, NStar has continued to fail to provide responses.

[2] Okonite took the position in its responses to NStar's discovery and in its Opposition to NStar's Motion to Compel that discovery as to causation is unnecessary because Okonite treated each splice failure as if it were responsible under the Contract for repair or replacement and in fact promptly, willingly, and successfully replaced each failed splice at no cost to NStar and, as such, the only relevant question is whether the exclusive remedy provision failed of its essential purpose.  If the Court denies NStar's Motion to Compel, Okonite then waives its Motion Compel as to Interrogatories 5 and 15 as well as to Interrogatory 23 to the extent that the answer to that interrogatory concerns "original" defects unrelated to the repair procedures or replacement splices.

4

Response.  Objection.  This interrogatory calls for expert opinion evidence insofar as it seeks information concerning the inferences to be drawn from the nature and location of the failures.  NSTAR Electric has not yet identified a testifying expert.  NSTAR Electric will provide an expert report stating the basis for its allegations in accordance with the applicable Rules of Civil Procedure and the case management schedule in this action.  Subject to this objection, NSTAR Electric states that tests and investigations conducted after each failure show that the failures occurred in the areas alleged in Paragraph 17 of the Complaint.

21. State the basis for the allegations contained in Paragraph 20 of the Complaint that "[t]he testing required NSTAR to run high voltages through the Cable lessening the Cable's useful life."  In responding to this interrogatory, state the basis for both parts of the allegation: (1) that the testing required NStar to run high voltages through the Cable and (2) that such testing allegedly lessened the Cable's useful life.

Response.  Objection.  The second sub-part of this interrogatory calls for expert opinion evidence.  NSTAR Electric has not yet identified a testifying expert.  NSTAR Electric will provide an expert report stating the basis for its allegation that the thumper test lessened the cable's useful life in accordance with the applicable Rules of Civil Procedure and the case management schedule in this action.

Subject to this objection, NSTAR Electric answers the first subpart of the interrogatory as follows.  NSTAR Electric localized the faults in the cable by having performed a "thumper" test.  In this test, which was performed with Okonite's knowledge and acquiescence, high-voltage direct current was run through the cable.  The test caused an arc of electricity to travel from the location of the fault into the earth.  The voltage was required to be high enough both to cause an arc and to cause such a strong arc that a loud sound would result.  This sound allowed personnel, including drivers, to localize the fault.

22. State the basis for the allegation contained in Paragraph 1 of the Complaint that "additional repairs would not provide NSTAR with an as-warranted cable system."

Response.  Objection.  This interrogatory calls for expert opinion evidence.  NSTAR Electric has not yet identified a testifying expert.  NSTAR Electric will provide an expert report stating the basis for its allegation that the additional repairs would not provide NSTAR Electric with an as-warranted cable system in accordance with the applicable Rules of Civil Procedure and the case management schedule in this action.

23. State the basis for the allegation contained in Paragraph 1 of the Complaint that "NSTAR is left with a defective cable system that cannot be relied upon to provide critical electric and data transmission capacity to Martha's Vineyard."

Response.  Objection.  This interrogatory calls for expert opinion evidence.  NSTAR Electric has not yet identified a testifying expert.  NSTAR Electric will provide an expert report stating the basis for its allegation in accordance with the applicable Rules of Civil

Procedure and the case management schedule in this action. Subject to this objection, NSTAR Electric states that given the history of cable failures, and given NSTAR Electric's obligations to regulators and customers to provide an uninterrupted supply of electricity to Martha's Vineyard, NSTAR Electric cannot reasonably rely on the cable, particularly in times of peak demand.

24. State the basis for the allegation contained in Paragraph 1 of the Complaint that "[r]epeated repair work has weakened the cable and diminished its life expectancy."

Response. Objection. This interrogatory calls for expert opinion evidence. NSTAR Electric has not yet identified a testifying expert. NSTAR Electric will provide an expert report stating the basis for its allegation that the failures were caused by cable defects in accordance with the applicable Rules of Civil Procedure and the case management schedule in this action.

25. State the basis for the allegation contained in Paragraph 21 of the Complaint that "continued testing, cable raising, and field splicing will inevitably result in further damage and loss of useful life to an already defective System."

Response. Objection. This interrogatory calls for expert opinion evidence. NSTAR Electric has not yet identified a testifying expert. NSTAR Electric will provide an expert report stating the basis for its allegation that the failures were caused by cable defects in accordance with the applicable Rules of Civil Procedure and the case management schedule in this action.

26. State the basis for the allegation contained in Paragraph 23 of the Complaint that "[i]nstead of a System that was reasonably expected to remain in operation for forty or more years, NSTAR is left with a defective System that cannot be adequately repaired."

Response. Objection. This interrogatory calls for expert opinion evidence. NSTAR Electric has not yet identified a testifying expert. NSTAR Electric will provide an expert report stating the basis for its allegation that the failures were caused by cable defects in accordance with the applicable Rules of Civil Procedure and the case management schedule in this action.

Each of these disputed interrogatories requests that NStar "state the basis" for certain allegations contained in NStar's Complaint. These allegations lie at the heart of NStar's claim. Indeed, without a factual basis to these claims, Okonite would clearly be entitled to summary judgment. Yet, to date, NStar has refused to provide the factual basis of these interrogatories. Specifically, NStar objected to and refused to answer these "state the basis" interrogatories solely on the

ground that they allegedly "call for" "expert opinion evidence"[3] that it is not yet required to provide. This objection is unfounded. Furthermore, for several of these interrogatories, NStar's objection is not even applicable.

### 1.    NStar's "Expert Opinion Evidence" Objections are Unfounded.

Okonite defined "state the basis" in its interrogatories by express reference to the definition contained in Local Rule 26.5.[4] In accordance with this definition, Okonite's interrogatories seek the *factual basis* for NStar's allegations, and *not an expert opinion*, as Counsel for Okonite explained to NStar's counsel a few times, *see, e.g.,* Ex. C.

Courts have often held that "expert opinion" objections to contention interrogatories are not justified. For example, in *Bohannon v. Honda Motor Co. Ltd.*, 127 F.R.D. 536, 538 (D. Kan. 1989), the plaintiff claimed that he was injured as a result of a defect in a Honda ATV vehicle that he alleged caused his injuries. The defendant's interrogatory asked the plaintiff to "describe with particularity the alleged defect in the Honda ATV." The plaintiff responded that he would

---

[3] It is unclear whether "expert opinion evidence" is something more than an "expert opinion." Evidence in support of an expert opinion would include the facts on which the expert relied in reaching his or her opinion. The facts, in and of themselves, are not the opinion of the expert, and, as explained below, if they are known to NStar, should be disclosed at this time. Such facts might include various types of objective, factual evidence, such as the results of a standard "aging" tests, *i.e.* an AC breakdown test or a tensile and elongation test on the parts removed from the Cable during all repairs subsequent to the first one, all of which NStar should have possessed before bringing this action.

[4] Local Rule 26.5 provides:

      (8) *State the Basis.* When an interrogatory calls upon a party to "state the basis" of or for a particular claim, assertion, allegation, or contention, the party shall

          (a) identify each and every document (and, where pertinent, the section, article, or subparagraph thereof), which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory;

          (b) identify each and every communication which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory;

          (c) state separately the acts or omissions to act on the part of any person (identifying the acts or omissions to act by stating their nature, time, and place and identifying the persons involved) which form any part of the party's information regarding the alleged facts or legal conclusions referred to in the interrogatory; and

          (d) state separately any other fact which forms the basis of the party's information regarding the alleged facts or conclusions referred to in the interrogatory.

answer when further discovery was complete since he had to obtain design, testing, and safety

information from Honda so that his expert could evaluate the material before he described the

defects. The court found the plaintiff's objection insufficient to resist discovery and held that the

"Plaintiff is not entitled to withhold discovery information until he has obtained to his own

satisfaction all discovery from Honda. Plaintiff must be aware of some defect in the vehicle,

which forms the basis of his own complaint. Accordingly, he has a duty to answer the

interrogatory with whatever information he has. Fed.R.Civ.P. 26(e) provides ample procedure

for supplementing a response, if necessary." *Id.* Likewise, in *King v. E.F. Hutton & Co., Inc.*,

117 F.R.D. 2 (D.D.C. 1987), the plaintiff objected to the defendant's interrogatories requesting

detailed and specific information as to the plaintiff's business losses on the grounds that it called

for expert opinion and was premature in that the plaintiff needed more discovery from the

defendant to be able to answer. The court rejected the plaintiff's position, explaining:

> It is no answer for plaintiffs to assert that they will need discovery or to consult
> with an expert to determine their losses. They should have answered the
> interrogatories with such information as they then possessed, and pursuant to Rule
> 26(e), F.R.Civ.P. the plaintiffs have the option, indeed even the duty, to
> supplement their answers to these interrogatories to reflect refinements or
> corrections to the factual representations as to their asserted losses up to the time
> of the final pretrial conference under Rule 16, F.R.Civ.P.

*Id.* at 5. The court further explained that while the plaintiffs might find an expert to be helpful,

the expert's opinion "will depend upon the facts upon which his opinions are predicated. For

this reason, it is important to have the facts upon which the plaintiffs personally rely in claiming

they had losses in order to test the factual basis for the expert's opinions." *Id.* at n.4. Numerous

other cases have compelled discovery after rejecting a party's refusal to answer a "state the

basis" interrogatory on the grounds that it calls for expert opinion evidence, making clear that

consultations with experts do not shield discoverable facts and that the underlying factual basis is

discoverable.  *See, e.g., St. Paul Fire and Marine Ins. Co. v. Birch, Stewart, Kolasch, & Birch LLP,* 217 F.R.D. 288, 289 (D. Mass. 2003) (Collings, M.J.) (compelling plaintiff to answer contention interrogatories within 30 days despite plaintiff's argument that plaintiff's expert report will contain much of the information sought by the contention interrogatories); *Cook v. Rockwell Int'l Corp.*, 161 F.R.D. 103, 106 (D. Colo. 1995) ("[E]ven if complete answers to discovery requests may require the answering party to consult with experts, such considerations do not transform permissible factual discovery into 'expert discovery.'"); *Geer v. Cox*, 2003 WL 21254731 (D. Kan.) (stating that plaintiff could not point to the scheduling order's time frame for designating an expert as a shield to refuse to respond to contention interrogatories); *Wieboldt Stores, Inc. v. Schottenstein*, 1990 WL 251727 (N.D. Ill.) (stating that there is no blanket protection for facts known by experts).  Similarly, here, Okonite is seeking the *facts* on which NStar bases its allegations that there were defects in the Cable and that the repair process or replacement splices diminished the quality or life of the Cable.  While an expert's opinion may be helpful to NStar – that is, if NStar is able to retain an expert who can even credibly lend support to its wild allegations concerning the effect of the repair process and replacement splices – that is separate and apart from NStar's duty to provide Okonite *now* with the facts that it has to support its allegations.

That courts disfavor "expert opinion" objections in this context should not be surprising. The strictures imposed by Rule 11 require that a party make an "inquiry reasonable under the circumstances" and certify that "the allegations and other factual contentions have evidentiary support."  One court compelled discovery in the face of plaintiffs' objection that an interrogatory called for expert opinion evidence because

the plaintiffs must have had some factual basis for [their allegation] at the time the complaint was filed. Rule 11, F.R.Civ.P., requires no less. Rule 11 is designed to insure that allegations in a complaint, drafted by a member of the Bar, are supported by sufficient factual information at the time the claims are initially asserted.

*King*, 117 F.R.D. at 5.

NStar's continued refusal to provide any facts in support of the allegations that lie at the heart of its concocted theory suggests that NStar has no factual basis for its claims but instead is simply seeking to manufacture a way to get around the limitations set forth in the Contract so that it can extort concessions from Okonite to which it is not entitled. The Court should not permit NStar to continue to hide behind the case management schedule to obfuscate the apparent fact that NStar has no factual support for its claims in this case. NStar should be compelled to provide the factual basis for its contentions or to state that it does not have any.

### 2.    *Several of NStar's Responses are Completely Nonresponsive.*

Not only are NStar's expert opinion objections to these interrogatories invalid, but for Interrogatories 24, 25, and 26 they are plainly nonresponsive. These interrogatories ask for the basis of NStar's allegations concerning the effect of repeated repair work and continued testing, cable raising, and field splicing on the quality and life expectancy of the Cable and the allegation that the Cable cannot be adequately repaired. It is, simply, a *non sequitur* to state, as NStar did in its responses to these three interrogatories, that it will provide an expert report "stating the basis for its allegation that the failures were caused by cable defects." An expert opinion that states the basis for NStar's allegation that the failures were caused by cable defects, if one is produced, will offer a theory as to why the three factory splices and one replacement failed, but by definition will not explain why the repair work *after* each failure or the *continued* testing, cable raising, and field splicing *will* harm the Cable or why the Cable will be irreparable *in the future* given that it is working as it should now.

Accordingly, the Court should reject NStar's objections to these three interrogatories and require NStar to provide the full factual bases for its contentions or state that it has none.

**B.     Okonite is Entitled to the Full, Factual Basis of NStar's Allegations That Field Splices Are Inferior to Factory Splices (Interrogatory 17).**

As explained above, the second way that NStar seeks to avoid the clear exclusive remedy provision of the Contract is by baldly alleging that the repairs themselves are inferior such that the Cable in its repaired state is not as good as it was in its original state. Because of the importance of this contention, Okonite sought to discover its factual basis through interrogatories. NStar refused, however, to provide such information, again based on its "expert opinion" objection. Okonite's interrogatory and NStar's response are as follows:

17. If you contend that the field splices are inferior in any way to the factory splices, state the basis for your contention.

   Response.  Objection. This interrogatory calls for expert opinion evidence. NSTAR Electric has not yet identified a testifying expert. NSTAR Electric will provide an expert report stating the basis for its allegation that the failures were caused by cable defects in accordance with the applicable Rules of Civil Procedure and the case management schedule in this action.

This objection is invalid for the same reasons discussed above. First, the interrogatory does not seek "expert opinion evidence" – it seeks the *factual* basis for one of NStar's key allegations – and saying that the information "calls for expert opinion evidence" is no reason not to provide the underlying factual basis. Second, the objection is nonresponsive. An expert report on the cause of the failures, which were failures of the *factory* splices, has no bearing whatsoever on the relative quality or reliability of the *field* splices used to replace the failed factory splices. Both the invalidity of the objection and its inapplicability to the specific interrogatory suggest NStar's bad faith or complete lack of support for its allegation. NStar should be required to provide the factual basis for its contention that the field splices are inferior or admit that it has no such basis.

11

## C.    NStar Should be Required to Complete Its Responses to Interrogatories Concerning The Representations It Claims are False (Interrogatories 8, 11, and 32).

In addition to concocting bald "theories" to enable its various breach of contract and warranty claims, NStar also manufactured misrepresentation claims against Okonite to avoid the consequences of the clear exclusive remedy provision. One set of these alleged misrepresentations concern whether the Cable might ever have field splices, and the other set concerns statements made by Okonite during the bid process in 1994 (i.e. prior to manufacture of the Cable) generally concerning the quality of its cables. Once again, Okonite sought to discover the factual basis for NStar's allegations. Once again, NStar avoided answering, though this time it relied on its "expert opinion" objection only with regard to the second set of representations. For the first set, NStar interposed *no* objection but only provided answers that are woefully inadequate under the Rules. These interrogatories and NStar's objections are as follows:

8.    State the basis for the allegation contained in Paragraph 8 of the Complaint that "Okonite represented that the proposed splices would tie the individual cable lengths together flawlessly, and that the splices would not degrade the System or diminish the life expectancy of the System in any material respect."

Response. During the course of contract negotiations, representatives of Okonite represented to NSTAR Electric that the proposed factory splices that it would use to assemble the cable would have no adverse effect on the life expectancy or performance of the cable.

11.    State the basis for the allegation contained in Paragraph 10 of the Complaint that "[p]rior to and during the meeting, Okonite repeatedly represented that field splices would not be required at any location in the System, and that the cable circuit requirement would be supplied in one continuous length tied with factory splices only."

Response. At no time during this project did Okonite propose using field splices or a continuous-run cable with no splices. Both Okonite and NSTAR Electric have always understood that only a limited number of factory splices would be used, and that no field spices would be required. Indeed, in the contract itself (Ex. G, p. 14), Okonite represented that "the submarine cable will be furnished manhole to manhole without field splices."

32.    State the basis for the allegation Paragraph 46 of the Complaint that the alleged representations that "[t]he Okonite [insulation] system has performed flawlessly in a

multiplicity of applications and in various types of installations, i.e., submarine cables..." and that "[w]ith over twenty-five years of service life experience in submarine applications, Okoguard provides a balance of properties that include reliability, flexibility, high ampacity rating and retained dielectric strength" were false.

Response. Objection. This interrogatory calls for expert opinion evidence. NSTAR Electric has not yet identified a testifying expert. NSTAR Electric will provide an expert report stating the basis for its allegation in accordance with the applicable Rules of Civil Procedure and the case management schedule in this action.

3.  **The Definition of "State the Basis" Requires More than the Minimal Information NStar Provided in Response.**

NStar's responses to Interrogatories 8 and 11 fail to provide the full information sought by the interrogatories. As set forth above, Local Rule 26.5 specifically defines "state the basis" as having four parts. Despite the explicit definition contained in the rules, and NStar's counsel's apparent understanding of it,[5] NStar has failed to respond fully to Interrogatories 8 and 11.

For Interrogatory 8, which seeks the basis for NStar's allegation that "Okonite represented that the proposed splices would tie the individual cable lengths together flawlessly, and that the splices would not degrade the System or diminish the life expectancy of the System in any material respect," NStar answered with a vague reference to unnamed "representatives" of Okonite who allegedly made some unspecified representation at some undated time "during the course of negotiations," which occurred over a few-month period. Contrary to the express requirements of the definition in Local Rule 26.5, this answer does not identify (as that term is defined in the Local Rules) the alleged communications, and it fails to identify any documents that form the basis of its allegation. Since NStar couches the representation as being made by "representatives" in plural, it should, at a minimum, cull out and "state separately" the alleged

---

[5]  Not only did counsel for Okonite bring the four-part definition for "state the basis" to the attention of counsel for NStar during the discovery conference on April 20, but NStar's counsel evidenced its understanding of what the "state the basis" requests called for by subsequently responding to Interrogatory No. 9 with information corresponding to at least three of the four parts of the Local Rules. *See* Ex. D. The discontinuity between its answer to Interrogatory No. 9 and its answers to Interrogatories 8 and 11 suggests that NStar's disingenuousness in answering the latter interrogatories and a willful disregard of the discovery rules.

communication by each of the "representatives," who the "representative was," and when the specific communication was made and to whom.

Similarly, for Interrogatory 11, in response to Okonite's request for the factual basis for the incredible allegation that "Okonite repeatedly represented that field splices would not be required at any location in the System,"[6] NStar answered only that "[b]oth Okonite and NSTAR Electric have always understood that only a limited number of factory splices would be used, and that no field spices would be required."  This is a conclusion, not a fact.  Other than a nonapplicable reference to the Contract, NStar fails even to state that Okonite made any actual representations concerning the use of field splices and, therefore, wholly fails to provide factual information such as the substance of the representations, the communicator of the representations, the receiver of the representations, or the time and place of the representations. Essentially, NStar answered a contention with another contention, but at no point provided the requisite factual information required by the interrogatory.

NStar must identify the communications forming the basis of its allegation with specificity: it must state who said what to whom and when.  *See* F.R.C.P. 33(b)(1) ("[E]ach interrogatory shall be answered separately and fully …."); Local Rule 26.5 (defining what it means to "identify" a communication); *Bailey v. General Sea Foods, Inc.*, 26 F. Supp. 391 (D. Mass. 1939) (finding the plaintiff's answers to interrogatories insufficient where he did not answer responsively or with particularity); *Mangenelli v. Lahage*, 27 F. Supp. 7 (D. Mass. 1939) (holding that plaintiff, who answered only that he was injured at work, must supply the nature, place, and date of the injury).  It is well established that a party is entitled to discover the basis of the contentions of the opposing party.  *See, e.g.,* F.R.C.P. 33(b); *In re San Juan DuPont Plaza*

---

[6] It is incredible because, among other reasons, NStar purchased repair splices for the Cable as part of its purchase, indisputably with the understanding that they might someday be used.

*Hotel Fire*, 859 F.2d 1007, 1016 (1st Cir. 1988).  Further, "the spirit of the Civil Rules requires that a party be responsive, complete, and forthcoming in its answer."  *Steir v. Girl Scouts of America*, 383 F.3d 7 (1st Cir. 2004) (criticizing the responding party for its literally true but artful interrogatory answer).  In *Harlem River Consumers Coop., Inc. v. Associated Grocers of Harlem, Inc.*, the defendants' interrogatories asked for "identification of each act performed by each defendant concerning any conspiracy in which it was involved and the facts upon which plaintiff will rely to support its claims."  64 F.R.D. 459, 463 (S.D.N.Y. 1974).  The court sanctioned the plaintiff because it failed to answer the interrogatory to give the defendant "specific information – names, dates, times, places, and documents – which each [defendant] requires to know precisely what it is charged with having done."  *Id.*

The Court should, therefore, require NStar to provide a complete response to these interrogatories.  Furthermore, if NStar has no other facts (or if these bare facts are the entire basis of its claims), then NStar should be required to state that clearly and in writing.  *Harlem River Consumer's Coop.* 64 F.R.D. at 463 ("If plaintiff knows of no further information it is required to so state.  If it can only answer partially it should state that its answers reflect all the information it has."); *see also Cohn v. Dart Industries, Inc.,* 1976 WL 44045 (D. Mass.) (stating that if a party has within its means the ability to obtain information to provide a straightforward answer to an interrogatory, he should do so; but if the party is unable to answer, he should so state and explain in detail the procedure he followed to attempt to find out the information); *F.M. Skirt Co., Inc. v. A. Wimpfheimer*, 25 F. Supp. 898 (D. Mass. 1939) (party's answer insufficient where it provided only one of the terms of the order for cloth in response to a request to state the terms of the order; the responding party did not state any other terms or whether no other terms

existed). It is axiomatic that NStar may not simply ignore the requests, in whole or in part.

F.R.C.P. 33(b)(1); s*ee Pilling v. General Motors Corp.*, 45 F.R.D. 366, 369 (D. Utah 1968).

### 4. *Expert Opinion is Not Required to Answer the Factual Basis for the Allegation That Okonite's Statements about Its Products Is False.*

For Interrogatory 32, which seeks the factual basis for NStar's bald allegation that

Okonite made false statements during the bidding process in 1994 concerning the historic

performance of Okonite's cables, NStar again sought to rely on its "expert opinion" objection.

This objection is invalid for the reasons explained above (that a party cannot refuse to provide

the *factual* basis for its allegations by deferring to a later expert *opinion*). Moreover, this

objection is not even applicable here. There is no need for an expert to opine on the historical

performance of Okonite's cables. Either NStar has factual information that Okonite's products

did not perform well before Okonite made its claims in 1994, or it does not. NStar should be

required to state one or the other.

### D. NStar Should Be Required to Complete the Information on the Effect of System Failures on NStar and its Customers (Interrogatory 18).

NStar gratuitously alleges in its Complaint that its customers suffered from "significant

interruptions" and that NStar incurred "extraordinary expenses" when the factory splices failed.[7]

NStar interposed an interrogatory regarding this allegation, and NStar responded as follows:

> 18.    State the basis for the allegation contained in Paragraph 19 of the Complaint that "[t]he System failures have resulted in significant interruptions of service to NSTAR's customers, and caused NSTAR and its customers to incur extraordinary expenses associated with responding to these failures, and in purchasing replacement power."

> Response. Objection. NSTAR Electric objects to this interrogatory insofar as it calls for information concerning expenses incurred by NSTAR Electric's customers. NSTAR Electric expects to obtain such information in the course of pre-trial discovery and will supplement its response as required. Subject to this objection, NSTAR Electric responds as follows.

---

[7] The allegation is gratuitous because NStar has waived any damages claim to itself or its customers due to outages.

A. <u>August 16, 1997 Failure</u>. 5,177 customers lost services for approximately 83 minutes. The incident caused 7,162 customer outage hours. NSTAR Electric reserves the right to supplement this response with additional information about its costs.

B. <u>November 25, 1999 Failure</u>. 5,375 customers lost service for approximately 35 minutes. The incident caused 3,135 customer outage hours. NSTAR Electric reserves the right to supplement this response with information about its costs.

C. <u>October 26, 2003 Failure</u>. 3,988 customers lost service for approximately 91 minutes. The incident caused 4,429.4 customer outage hours. NSTAR Electric incurred out-of-pocket expenses for labor, materials, third-party contracts, and generation totaling $144,735.59.

D. <u>March 7, 2004 Failure</u>.  3,834 customers lost service for approximately 70 minutes. The incident caused 4,473 customer outage hours.  NSTAR Electric incurred out-of-pocket expenses for labor, materials, third-party contracts, and generating totaling $48,623.01.

Although NStar provided some information regarding the most recent two failures, it refused to provide any information pertaining to its customers, it did not provide any specific information as to the costs NStar incurred as a result of two failures, and then, amazingly, it stated that it expects to obtain this information during discovery.

NStar's objection fails because NStar itself made its customers' alleged losses an issue by including them in its allegations.  It, therefore, should be required to provide this information or state that it has no such information.  Furthermore, its insufficient response concerning its own costs is inexcusable.  NStar has in its sole possession, custody, or control (and should have had before it made its allegation) information concerning its own expenses. A plaintiff that claims that it has lost business income because of the wrongful conduct of the defendant can be assumed to be in a position to furnish the details of its business loss.  *See, e.g., Harlem River Consumer's Coop. Inc.*, 64 F.R.D. at 464.  This information must include not just bald numbers, but also the underlying details.  Therefore, the Court should require NStar to provide complete information responsive to this interrogatory.[8]

---

[8] NStar's counsel, in fact, agreed on May 18, 2005 and again on July 20, 2005 to provide this information, but to date has failed to do so.

E.    **NStar Should Be Required to Complete Unfinished Responses.**

For three interrogatories NStar stated in its original answer that it did not have all the information and intended to provide the information once it finished internal investigation. To date, however, it has failed to do so, despite agreeing to do so. These interrogatories and NStar's response are as follows:

14. Identify and describe all the "oral and written representations and warranties" by Okonite, as referenced in Paragraph 14 of the Complaint.

    Response. Objection. NSTAR Electric objects to this objection [sic] on the grounds that it is overly broad and unduly burdensome. Okonite may have made oral representations or warranties to NSTAR Electric or its employees or agents that NSTAR Electric has not yet discovered in the course of its internal investigation. … Subject to these objections, NSTAR Electric responds as follows. [Reference to written warranties and 33(c) for written representations omitted.]

31. Identify every statement or representation that NStar claims that Okonite made to NStar in connection with the 1996 cable that is false.

    Response. Objection. NSTAR Electric objects to this objection [sic] on the grounds that it is overly broad and unduly burdensome. Okonite may have made oral representations or warranties to NSTAR Electric or its employees or agents that NSTAR Electric has not yet discovered in the course of its internal investigation. Subject to these objections, NSTAR Electric responds as follows. [List of representations from bid documents omitted.]

36. Identify every third party that you have consulted at any time concerning any of the Splice Failures or the quality or life expectancy of the 1996 cable, and identify all documents that relate to such consultations, including, but not limited to, reports or summaries of such consultations.

    Response (Part B). NSTAR Electric is in the process of determining whether it consulted with other third parties and will supplement this response as required.

These responses are unsatisfactory. It is now over eight months since NStar served its responses to Okonite's interrogatories, which is a sufficiently long enough period to have undertaken the internal investigations required to answer these interrogatories. For each of these interrogatories, NStar admitted in its response that the information was in its possession, custody, or control but that it failed to complete that investigation. NStar had an affirmative obligation to investigate

fully its responses to these interrogatories. Indeed, it should have had this information before making its claims. In any event, the internal investigation certainly should be complete by now. It is simply unconscionable at this point for Okonite to be forced to defend itself against vague allegations when NStar has refused to complete its own internal investigation or to provide the results of it as promised. NStar should be forced to put forth all its internal information now or state that it has no more and be barred from introducing into evidence anything else in support of its claims. NStar should not be allowed to leave its options open and then sandbag Okonite after discovery ends. That is exactly the type of game-playing that the federal rules are designed to prevent. Okonite has an absolute right to know *during* the discovery period what statements NStar claims it relied on and what consultations NStar undertook or NStar should be forced to rely solely on the information it has provided.

## II.  NSTAR HAS VIOLATED THE FEDERAL RULES OF CIVIL PROCEDURE AND THE COURT SHOULD AWARD OKONITE ITS COSTS AND ATTORNEYS' FEES ASSOCIATED WITH BRINGING THIS MOTION.

By refusing to answer Okonite's "state the basis" interrogatories, NStar has plainly violated Federal Rule of Civil Procedure 26(g), which requires the signer to certify that "to the best of the signer's knowledge, information and belief, formed after a reasonable inquiry, the disclosure is compete and correct as of the time it is made." Either NStar can put forth a factual basis for its allegations, or it cannot. If it can, its disclosure is not complete, NStar has not supplemented its answer, and it has violated F.R.C.P 26 (requiring complete disclosure) and 33 (requiring that "[e]ach interrogatory shall be answered …fully in writing"). On the other hand, if NStar cannot put forth a factual basis for its allegations, it has violated Rule 11, which requires it to have a factual basis for its allegations before filing the Complaint. In either case, it offends the principles of the adversary process to require Okonite to bear the costs associated with NStar's rule violations.

As explained above, most of NStar's objections and refusals to answer and to answer fully are not substantially justified.  Its failure to supplement and revise its answers after agreeing to do so is likewise unjustified.  Therefore, under F.R.C.P. 37, "the court shall … require the party … whose conduct necessitated the motion … to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees."

**Conclusion**

For the foregoing reasons, this Court should Compel the discovery identified and award the costs and attorneys' fees Okonite incurred in the bringing of the Motion.

THE OKONITE COMPANY
By their attorneys,

/s/ Andrea C. Kramer_____
Robert E. Sullivan, BBO # 487820
    sulli@swmlawyers.com
Andrea C. Kramer, BBO #632584
    akramer@swmlawyers.com
Rachel J. Valente, BBO #655239
    rvalente@swmlawyers.com
Sullivan Weinstein & McQuay, P.C.
Two Park Plaza, Suite 610
Boston, MA  02116-3902
Dated:  August 17, 2005                    617-348-4300